UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOBIL CERRO NEGRO, LTD.<br>Shirley House,<br>50 Shirley St.,<br>Nassau, New Providence,<br>Commonwealth of the Bahamas<br><br><br>                    Plaintiff,<br><br>       v.<br><br>PDVSA CERRO NEGRO S.A.<br>Avenida Veracruz con Calle Cali,<br>Edificio Pawa, Las Mercedes, Ciudad,<br>Venezuela<br><br><br><br>                 Defendant. | **JUDGE BATTS**<br>**07 CV 11590**<br>Civil Action No. _____<br><br><br>2007 DEC 27 AM 11:37<br>U.S. DISTRICT COURT<br>FILED<br>S.D. OF N.Y. |

**COMPLAINT FOR ORDER OF ATTACHMENT
IN AID OF INTERNATIONAL ARBITRATION**

For its Complaint in this action, Plaintiff Mobil Cerro Negro, Ltd. ("Mobil CN") states as follows:

**NATURE OF ACTION**

1.     This is an action for an order of attachment pursuant to New York law and in aid of a multi-billion dollar international arbitration that Mobil CN will commence in the Southern District of New York within thirty (30) days after the Order of Attachment is issued to recover damages from Defendant PDVSA Cerro Negro S.A. ("PDVSA CN") for PDVSA CN's breach of its contractual obligation to indemnify Mobil CN for part of the damages resulting from the

- 2 -

expropriation without compensation of Mobil CN's investment in the Bolivarian Republic of Venezuela ("Venezuela"). Article 18.2 of the Cerro Negro Association Agreement (the "Association Agreement") provides that "[a]ny dispute arising out of or concerning this [Association] Agreement shall be settled exclusively and finally by arbitration. . . . Unless otherwise agreed by all parties to the arbitration, all arbitration proceedings under this Agreement shall be conducted in New York City . . . ." The arbitration will be commenced pursuant to the Arbitration Rules of the International Chamber of Commerce ("ICC"). By this action, Mobil CN seeks to preserve, pending arbitration, the only known assets within the United States of PDVSA CN, a Venezuelan corporation. Without the requested provisional relief, any award to which Mobil CN may be entitled will be rendered ineffectual.

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically Chapter Two of the Federal Arbitration Act ("Convention on the Recognition and Enforcement of Foreign Arbitral Awards"), *see* 9 U.S.C. § 203 (2000).

3.     Defendant is subject to personal jurisdiction in this Court because PDVSA CN agreed to submit to arbitration in New York, New York.

4.     There is within the jurisdiction of this Court debt or property belonging to PDVSA CN.

5.     Venue is appropriate in this district pursuant to 9 U.S.C. § 204 because this district embraces the place designated in the agreement as the place of arbitration. In addition, this district is one in which, save for the arbitration agreement between the parties, an action or proceeding with respect to the controversy between the parties could have been brought. The

action could have been brought in this district because, pursuant to 28 U.S.C. § 1391(d), an alien may be sued in any district.

## THE PARTIES

6.      Plaintiff Mobil CN is a corporation organized and existing under the laws of the Commonwealth of the Bahamas with a principal place of business at Shirley House, 50 Shirley St., Nassau, New Providence, Commonwealth of the Bahamas.  Mobil CN is a wholly-owned indirect subsidiary of Exxon Mobil Corporation.

7.      Defendant PDVSA CN (formerly known as Lagoven Cerro Negro, S.A.) is a corporation organized and existing under the laws of Venezuela with its principal place of business at Avenida Veracruz con Calle Cali, Edificio Pawa, Las Mercedes, Ciudad, Venezuela. PDVSA CN's only known commercial interest is in the Cerro Negro Joint Venture.  PDVSA CN is a wholly-owned subsidiary of PDVSA Petróleo, S.A., which in turn is a wholly-owned subsidiary of Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of Venezuela, which itself is wholly-owned by the Government of Venezuela.  PDVSA CN thus is a third-tier, indirectly owned subsidiary of the Government of Venezuela.  PDVSA CN was created as an ordinary Venezuelan "sociedad anónima" (corporation) to engage in a commercial joint venture with Mobil and Veba Oil, a subsidiary of BP, two multi-national oil companies.  PDVSA CN is a foreign corporation not qualified to do business within the state of New York.

## FACTUAL BACKGROUND

### The Genesis of the Cerro Negro Joint Venture

8.      In 1991, PDVSA, along with its wholly-owned operating subsidiary Lagoven, S.A. ("Lagoven"), identified Mobil Corporation ("Mobil") as a candidate possessing both the

expertise and financial capacity to participate in a potential joint venture to develop extra-heavy crude oil fields in the Orinoco Oil Belt in Venezuela.

9.      To induce foreign oil companies to participate in Orinoco Oil Belt ventures, such as the Cerro Negro Joint Venture, PDVSA and Venezuela designed a series of financial incentives meant to make the projects more attractive to potential investors.

10.     Those financial incentives included:  (i) reduction of the applicable income-tax rate, which was granted by statute and incorporated in a "Framework of Conditions" approved by the Venezuelan Congress for the Cerro Negro Joint Venture; (ii) reduction of the applicable royalty, which was granted by means of a Royalty Reduction Agreement; and (iii) the right to expand the project, by individual decision or jointly with other participants, which was expressly incorporated in the Association Agreement.

### The Association Agreement

11.     On October 28, 1997, Lagoven Cerro Negro, S.A. ("Lagoven CN"), a Lagoven subsidiary, Mobil Producción e Industrialización de Venezuela, S.A. ("Mobil PIV"), and Veba Oel Venezuela Orinoco, GmbH ("Veba Orinoco") signed the Association Agreement, which established the Cerro Negro Association as an unincorporated joint venture (the "Cerro Negro Joint Venture") for a term of thirty-five years.

12.     On October 29, 1997, Mobil PIV assigned its rights in the Association Agreement to Mobil CN.

13.     On May 11, 1998, Lagoven CN changed its name to PDVSA CN.  Until the expropriation described below, the parties' percentage interests in the Cerro Negro Joint Venture were:  PDVSA CN – 41 2/3 %; Mobil CN – 41 2/3 %; and Veba Orinoco – 16 2/3 %.

14.    Under the Association Agreement and the companion Reservation and Dedication Agreement, Lagoven (which Venezuela entrusted with development of the Cerro Negro area), authorized PDVSA CN, Mobil CN, and Veba Orinoco to exploit the oil fields located in the Cerro Negro area during the 35-year life of the venture.

## PDVSA CN's Obligation to Indemnify Mobil CN

15.    In the Association Agreement, PDVSA CN undertook to indemnify Mobil CN, in an amount provided under the Agreement, for damages suffered by Mobil CN as a consequence of any Discriminatory Action that causes a Material Adverse Impact, as these terms are defined in the Association Agreement. Discriminatory Actions causing a Material Adverse Impact include the expropriation of Mobil CN's interests in the Cerro Negro Joint Venture as well as other adverse governmental measures that do not apply to corporations in general and that curtail Mobil CN's cash flows. *See* Baratz Decl., Ex. 1, Art. 15.1(b) (Association Agreement); Ex. 16, (Accounting Procedures Agreement).

16.    The Accounting Procedures Agreement, which is annexed to the Association Agreement, provides a formula to calculate the amount of indemnification owing by PDVSA CN for any Discriminatory Actions that have caused a Material Adverse Impact.

17.    According to Article 7.4 of the Accounting Procedures Agreement, to calculate the indemnification payable by PDVSA CN one must determine, first, the difference between the Net Cash Flow for a given fiscal year, taking into account the impact of the Discriminatory Action(s), and the Net Cash Flow for the same period without taking into account the impact of that (those) measure(s). The obligation to indemnify arises whenever that difference exceeds 5% of the participant's Net Cash Flow for that fiscal year.

18.    The indemnification so calculated is limited by a cap: PDVSA CN's obligation to indemnify may not exceed the difference between the Threshold Cash Flow and the Adjusted Net Cash Flow, as these terms are defined in the Association Agreement.

19.    The Association Agreement provides that certain procedural steps be taken before PDVSA CN's obligation to indemnify becomes due. Those steps have been taken.

20.    PDVSA CN is required to discharge its obligations under the Association Agreement in good faith.

### The Discriminatory Actions of the Venezuelan Government

21.    Since October 2004, Venezuela has taken a series of adverse measures against Mobil CN that constitute Discriminatory Actions under the Association Agreement because these measures are Governmental Actions, as defined in the Association Agreement, or changes in Venezuelan law that either do not apply to all companies in Venezuela or violate the Framework of Conditions.

22.    Those Discriminatory Actions include: (i) direct expropriation of Mobil CN's interests in the Association Agreement and the Cerro Negro Joint Venture without compensation; (ii) repudiation of the Royalty Reduction Agreement and imposition of the so-called extraction tax (a disguised royalty); (iii) refusal to allow the expansion of the Cerro Negro Project under previously agreed terms and conditions; (iv) income-tax increases to participants in Orinoco Oil Belt ventures in violation of the Framework of Conditions; and (v) imposition of production and export curtailments to the Cerro Negro Joint Venture in violation of the Association Agreement.

23.    On February 26, 2007, President Chávez of Venezuela issued Decree No. 5200 on the Migration to Mixed Companies of the Association Agreements of the Orinoco Oil Belt, as well as of the Shared-Risk-and-Profit Exploration Agreements (the "Nationalization Decree").

- 7 -

24.    The Nationalization Decree ordered, among other things, that the strategic associations located in the Orinoco Oil Belt, including Cerro Negro, be transformed ("migrated") into new mixed companies under the Organic Law on Hydrocarbons, in which PDVSA or one of its subsidiaries would hold at least a 60% participation interest.

25.    According to Article 4 of the Nationalization Decree, participants in so-called strategic associations located in the Orinoco Oil Belt, such as Mobil CN, had four (4) months (until June 26, 2007) to accept non-negotiable terms under which they could participate in the new mixed companies.

26.    The mixed companies would be established and would operate under a different statutory framework (the Organic Law on Hydrocarbons) and new contractual arrangements that would replace the previous association agreements.  The new statutory and contractual regime not only substantially reduced the equity but also radically curtailed the rights of private companies, such as Mobil CN, participating in such projects.

27.    Further, under Article 3 of the Nationalization Decree, the operator of the Cerro Negro Project was required to surrender control of all activities and operations related to the project to Corporación Venezolana del Petróleo, S.A. ("CVP"), a wholly owned subsidiary of PDVSA, (or another affiliate of PDVSA) no later than April 30, 2007.

28.    On that date, under compulsion of the Nationalization Decree and with full reservation of rights, Operadora Cerro Negro, S.A., a wholly-owned subsidiary of Mobil that operated the Cerro Negro Project, surrendered to PDVSA Petróleo S.A., a subsidiary of PDVSA, the operations and control of all activities related to the Cerro Negro Project.

29.     To comply with the Nationalization Decree, Mobil CN discussed with Venezuela terms and conditions for Mobil CN's potential participation in the new mixed company seizing control of the Cerro Negro Project.

30.     As of June 26, 2007, Mobil CN refused to accept the non-negotiable terms and conditions that Venezuela proffered, which failed to provide compensation for the taking of Mobil CN's rights under the Association Agreement as required by applicable law.

31.     Article 5 of the Nationalization Decree provides that, if participants in strategic associations, such as the Mobil CN, refused to accept the terms for new mixed companies by the end of the four-month period contemplated in Article 4 (which expired on June 26, 2007), "the Republic, through Petróleos de Venezuela S.A. or any of its subsidiaries that may be designated for the purpose, shall directly assume the activities of the associations."

32.     As of June 27, 2007, Mobil CN was deprived of its participation in the activities and production of the Cerro Negro Joint Venture.  Accordingly, as of that date, Venezuela expropriated, without compensation, the interests of Mobil CN in the Cerro Negro Joint Venture, including Mobil CN's interests in the Association Agreement.  This expropriation was ratified by the National Assembly in October 2007.

### PDVSA CN's Breach of the Cerro Negro Association Agreement

33.     On June 22, 2007, Mobil CN notified both PDVSA CN and PDVSA in writing, pursuant to the Association Agreement, that the measures described above constitute Discriminatory Actions that may result in a Material Adverse Impact in fiscal years 2007 and future fiscal years.

34.     On June 25 and June 27, 2007, Mobil CN notified both PDVSA CN and PDVSA in writing, pursuant to the Association Agreement, that the measures described above constitute

Discriminatory Actions that have caused a Material Adverse Impact in fiscal years 2007 and future fiscal years, and demanded prompt payment of indemnification under the terms of the Association Agreement.

35.    On September 6, 2006, in an effort to mitigate damages as required by the Association Agreement, Mobil CN, and other related entities, filed a Request for Arbitration with the International Centre for Settlement of Investment Disputes seeking compensation from Venezuela for, among other things, the measures described above, including the expropriation of Mobil CN's interests in the Cerro Negro Joint Venture.

36.    PDVSA CN has acknowledged that the Nationalization Decree has effected an expropriation of Mobil CN's interest in the Cerro Negro Joint Venture.

37.    PDVSA CN has an obligation to indemnify Mobil CN for any Discriminatory Action that causes a Material Adverse Impact.

38.    As a result of Venezuela's expropriation of Mobil CN's interest in the Cerro Negro Joint Venture, Mobil CN has suffered a severe impairment in its Net Cash Flow for Fiscal Year 2007 and has been deprived of any Net Cash Flow for the remaining 28 fiscal years of the agreed term for the Cerro Negro Project.

39.    As a result of Discriminatory Actions, Mobil CN's Net Cash Flow will bear no reasonable relationship to the Threshold Cash Flow for fiscal year 2007 or for any of the 28 future fiscal years of the agreed term of the Association Agreement.

40.    In spite of acknowledging the expropriation of Mobil CN's interests in the Cerro Negro Joint Venture, and contrary to the duty to perform its contractual obligations in good faith, PDVSA CN has failed to take the steps contemplated in Article 15.1, paragraphs (a) and (b) of the Association Agreement.

## The Assets Within This Jurisdiction -- The Cash Waterfall

41.    The Cerro Negro Joint Venture was financed, in part, through a $600,000,000 bond financing issued by Cerro Negro Finance, Ltd. in 1998.

42.    Cerro Negro Finance, Ltd. is a special purpose vehicle incorporated under the laws of the Cayman Islands for the sole purpose of issuing bonds to finance a portion of the Cerro Negro Joint Venture.

43.    The original bond issued in 1998 was for $600,000,000.

44.    The amount currently outstanding on the bonds is estimated to be $538,000,000.

45.    The proceeds of the bonds were divided equally between Mobil CN and PDVSA CN to finance the Cerro Negro Joint Venture.

46.    The bondholders' interests were protected by a Common Security Agreement, which mandated several security interests as collateral as well as other restrictions on the right to use and dispose of certain assets.

47.    The security and other assets relevant to this action was a series of designated accounts established and maintained at banks in New York, New York.  Mobil CN and PDVSA CN were required to establish and maintain in New York (i) a segregated Disbursement Account, (ii) a segregated Operating Revenues Account, (iii) a segregated Distribution Account, (iv) a segregated Casualty Proceeds Account, (v) a segregated O&M Account, and (vi) a segregated Debt Service Account.  Additionally, Mobil CN was required to establish a Debt Service Reserve Account.

48.    These accounts, as well as other segregated accounts not maintained in New York, were collectively referred to as the Project Accounts.

49.    The Common Security Agreement established the "cash waterfall."

50.    Under the cash waterfall, proceeds from the Project Accounts were distributed in a particular order and for particular purposes. In general, distributions first went to fund the project and then, to repay the debt holders.

51.    As part of the collateral to guarantee the repayment of the bonds issued by Cerro Negro Finance, Ltd., Mobil CN pledged its rights in the cash waterfall as a security interest.

52.    PDVSA CN provided assurances to the bondholders in a different way; it issued irrevocable instructions to the Bank of New York, as security trustee, restricting the use of the funds to the terms of the Common Security Agreement.

53.    After the bondholders are paid off, however, the restrictions placed on the cash waterfall, including the irrevocable instructions, will be released.

54.    Consequently, PDVSA CN and Mobil CN will have unrestricted access to their respective portions of the cash waterfall.

55.    PDVSA has made an Offer to Purchase all of the outstanding bonds of Cerro Negro Finance, Ltd. on or before December 31, 2007.

56.    Once PDVSA purchases the outstanding bonds, the amounts remaining in the cash waterfall will be free of any restraints. PDVSA CN's share of the cash waterfall (currently approximately $300,000,000) is likely PDVSA CN's sole asset available to satisfy any eventual arbitral award.

57.    Upon PDVSA's purchase of the outstanding bonds, the irrevocable instructions will terminate and PDVSA CN will be free to transfer its share of the cash waterfall from New York and to dissipate the funds or to take other action to make the funds inaccessible for satisfying any arbitral award.

58.     The purpose of this action is to attach PDVSA CN's interest in the cash waterfall, to secure, at least partially, payment of the award that Mobil CN is likely to obtain in the ICC arbitration.

59.     Under the terms of the Offer to Purchase, consummation of the offer requires the valid tender of the bonds from bondholders representing seventy five percent (75%) of the aggregate principal amount of all outstanding bonds and receipt of the bondholders' consent to eliminate the security interest in the cash waterfall and to terminate the irrevocable instructions. Over ninety percent (90%) of the bondholders have tendered their bonds pursuant to the terms of the Offer to Purchase.

60.     On or around December 28, 2007, Venezuela or PDVSA will transfer to the Chase Manhattan Bank monies required to finance the purchase of any outstanding bonds of Cerro Negro Finance, Ltd. that are tendered in accordance with the terms of the Offer to Purchase.

61.     The total amount of funds required to purchase all of the outstanding bonds pursuant to the offer is estimated to be $538,000,000.

62.     On or after December 28, 2007, but before or by December 31, 2007, PDVSA will purchase any outstanding bonds of Cerro Negro Finance, Ltd. that are tendered in accordance with the terms of the Offer to Purchase.

63.     According to the Offer to Purchase, PDVSA CN's only assets are those relating to the Cerro Negro Project. After PDVSA purchases the bonds, the assets currently utilized in the operation of the Cerro Negro Project and the rights to develop the related oil reserves are being transferred to a new "Empresa Mixta" or mixed company, with which Mobil CN has no privity. The new Empresa Mixta will be owned 83% by CVP and 16 % by British Petroleum plc, through

Veba. Consequently, following the closing of PDVSA's Offer to Purchase the outstanding

bonds, the cash waterfall will be PDVSA CN's sole asset

64.    Once PDVSA purchases the bonds, the cash waterfall, which had been securing

repayment of the bonds, will be released and PDVSA CN's share of the cash waterfall will most

likely be transferred outside the reach of Mobil CN between December 28 and December 31,

2007.

## COUNT I
## FOR ORDER OF ATTACHMENT
## PURSUANT TO N.Y. C.P.L.R. § 7502(c) AND N.Y. C.P.L.R. ART. 62

65.    Mobil CN realleges and incorporates Paragraphs 1-64 of the Complaint as if set

forth fully herein.

66.    Mobil CN will commence the ICC arbitration within 30 days of the granting of

the Order of Attachment, unless this deadline is extended by the Court.

67.    Mobil CN has a cause of action against PDVSA CN in the form of the claims to

be asserted in the ICC arbitration and those claims are ones in which Mobil CN is entitled to a

money judgment entered on a final arbitral award.

68.    It is probable that Mobil CN will succeed on the merits of its arbitration claims

because PDVSA CN's breach of the agreements is clear.

69.    Without an order of attachment, the arbitral award will be rendered ineffectual in

that, among other reasons, (1) the cash waterfall is the only viable source of funds to satisfy an

award in the ICC arbitration; (2) PDVSA CN's financial condition makes recovery unlikely

because PDVSA CN's interests in the Cerro Negro project are being transferred to the new

mixed company; (3) PDVSA CN's share of the cash waterfall easily can be — and most likely

- 14 -

will be — transferred out of the reach of creditors; and (4) Mobil CN will have difficulty enforcing the award outside of this jurisdiction against PDVSA CN.

70.    The amount demanded from PDVSA CN exceeds all counterclaims known to Mobil CN.

## PRAYER FOR RELIEF

WHEREFORE, the Court should enter judgment in Mobil CN's favor and against Defendant:

      a.      Issuing an Order of Attachment to levy within this Court's jurisdiction, at any time before the final arbitral award, upon such property in which the PDVSA CN has an interest and upon such debts owing to PDVSA CN as will satisfy the amount specified in the Order of Attachment;

      b.      Ordering Defendants to pay Mobil CN's attorneys fees and costs associated with this action; and

      c.      Awarding all such other relief as may be just under the circumstances.

Dated:  New York, New York
       December 27, 2007

Respectfully submitted,

Michael C. Miller (MM-4632)
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
tel: (212) 506-3900
fax: (212) 506-3950

Howard H. Stahl (*pro hac vice* application pending)
Steven K. Davidson (*pro hac vice* application pending)
Mark A. Moran (*pro hac vice* application pending)
Michael J. Baratz (*pro hac vice* application pending)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
tel: (202) 429-3000
fax: (202) 429-3902

*Counsel for Plaintiff*

- 15 -

Of Counsel:

Toni D. Hennike
Luis Marulanda del Valle
Law Department
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas 77002
713-656-6716 (telephone)
713-656-3496 (telefax)

Charles A. Beach (CB-6791)
Law Department
EXXON MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas 75039-2298
972-444-1466 (telephone)
972-444-1435 (telefax)

- 16 -