**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOBIL CERRO NEGRO, LTD.,<br><br><br>Plaintiff,<br><br>v.<br><br>PDVSA CERRO NEGRO S.A.,<br><br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 07 Civ. 11590 (DAB)

**DECLARATION OF STEVEN K.**
**DAVIDSON IN SUPPORT OF**
**MOTION TO CONFIRM ORDER**
**OF ATTACHMENT**

I, Steven K. Davidson, hereby declare as follows:

1.  I am an attorney with Steptoe & Johnson LLP, one of the attorneys for Plaintiff

Mobil Cerro Negro, Ltd. ("Mobil CN") in the above-captioned action. I am providing this

Declaration, pursuant to Local Rule 6.1(d) and the requirements of N.Y. C.P.L.R. 6211 and

6212(a), in support of Plaintiff's Motion to Confirm Order of Attachment, which was entered by

this Court on December 27, 2007, and served upon Defendants on December 28, 2007. I am

authorized by Mobil CN to make this Declaration, and do so from personal knowledge of the

facts described herein.

2.  The facts supporting the motion are set forth in: (a) the Complaint; and (b) the

Declaration of Michael J. Baratz (the "Baratz Declaration"), dated December 26, 2007, and the

accompanying exhibits, previously submitted in support of Plaintiff's original application for the attachment order.[1]

3.      A copy of the December 27, 2007 Order of Attachment is annexed hereto as Exhibit 1. That Order of Attachment was served on December 28, 2007.

4.      Mobil CN intends to commence an International Chamber of Commerce ("ICC") arbitration for a claim of multiple billion dollars in New York, New York within thirty (30) days after the issuance of an Order of Attachment, unless this time period is otherwise extended by the Court.

5.      The ICC arbitration will be based on PDVSA CN's breach of its agreement to indemnify Mobil CN and others for the discriminatory actions taken against the Cerro Negro Project.

6.      Mobil CN seeks confirmation of the Order of Attachment in aid of this arbitration, in order to prevent any arbitral award to which Mobil CN may be entitled from being rendered ineffectual.

7.      It is respectfully submitted that, upon the statement of facts in the complaint and the annexed declarations, it is probable that Plaintiff will succeed on the merits of this action.

8.      This claim, for multiple billions of dollars, is over and above all counterclaims that are known to me.

9.      I have been informed and believe that the transaction in which PDVSA purchased the outstanding Cerro Negro Project bonds closed. It is my understanding that the transaction

---

[1] The Baratz Declaration, with accompanying exhibits, was filed on December 27, 2007, in support of Mobil CN's original application. We incorporate by reference, and refer to, the Baratz Declaration herein, and in our moving papers.

proceeded, in accordance with the Omnibus Termination Agreement (copy attached hereto as Ex. 2), and the Flow of Funds Memorandum (copy attached hereto as Ex. 3),[2] as follows:

a.      PDVSA delivered the following payments, by wire transfer of immediately available funds, on Friday, December 28, 2007, in the amount of approximately $538,000,000, to Depository Trust Company's account at Chase Manhattan Bank.

b.      The Bank of New York, as Security Trustee, on Friday, December 28, 2007, released any restrictions on the cash waterfall, including PDVSA CN's irrevocable instructions.

10.      Anticipating this release of the restrictions on the funds, on December 27, 2007, Mobil CN sought an *ex parte* Order of Attachment of the funds available to PDVSA CN from the cash waterfall, which this Court granted on that same day.  Mobil CN sought the order without notice because notice, or service prior to the closing of the Offer to Purchase, could have interfered with completion of PDVSA's purchase of the bonds and could have prevented the release of the funds in the Project Accounts.

11.      On December 28, 2007, after the Offer to Purchase closed and the bonds had been purchased, Mobil CN served the Order of Attachment on the Bank of New York.

12.      Pursuant to the Court's direction during the December 27, 2007 hearing on Mobil CN's motion for an order of attachment without notice, New York counsel for PDVSA CN, Curtis, Mallet-Prevost, Colt and Mosle LLP, was served with all papers within 24 hours.  On Friday, December 28, beginning at 6:50 PM and continuing through approximately 7:15 PM, Evan Borenstein of Curtis, Mallet-Prevost, Colt and Mosle LLP was served with all papers by

---

[2] The Omnibus Termination Agreement and the Flow of Funds Memorandum, attached as Exhibits 2 and 3 to this Declaration, are more recent versions of those which were originally provided as Exhibits 19 and 20 to the Baratz Declaration.

electronic transmission. At approximately 11:30 AM on December 28, 2007, I was contacted by Joseph Pizzurro of Curtis, Mallet-Prevost, Colt and Mosle LLP. Mr. Pizzurro identified himself as counsel for PDVSA CN and requested a copy of all papers in this action. At approximately 1:00 PM, Mr. Pizzurro was served with all papers by electronic transmission.

13.    Mobil CN moves this Court to confirm the Order of Attachment as required by CPLR § 6211. Since a motion to confirm must be made by a certain time under Rule 64 of the Federal Rules of Civil Procedure and CPLR § 6211, a pre-motion conference is not required under the Individual Practices of Judge Deborah A. Batts, *see* II.B.1. Regardless, I contacted Mr. Pizzurro on the morning of January 2, 2008, to inform him of our intent to file the motion to confirm. Mr. Pizzurro, on behalf of PDVSA CN, did not consent to the relief sought herein.

14.    No provisional remedy, other than the Order of Attachment, has been secured or sought in this action against this Defendant.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed on January 2, 2008.

_____
Steven K. Davidson

# <u>Exhibit 1:</u>

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOBIL CERRO NEGRO, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>PDVSA CERRO NEGRO S.A.<br><br>Defendant. | Civil Action No. *07 CV 11590*<br>*(DB)*<br><br>**ORDER OF ATTACHMENT** |

Plaintiff has moved the Court for an Order of Attachment pursuant to Rule 64 of the Federal Rules of Civil Procedure and Articles 62 and 75 of the New York Civil Practice Law and Rules ("CPLR"). Plaintiff has shown that it has a cause of action in the form of an arbitration, that it is probable that it will succeed on the merits, that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.

Therefore, for these reasons, as supported by the showings made in plaintiff's motion for an order of attachment, the Declaration of Steven K. Davidson, dated December 27, 2007, and the Declaration of Michael J. Baratz, Dated December 26, 2007, and the exhibits thereto, it is hereby ORDERED, that:

1.    Plaintiff's motion for an order of attachment is granted.

2.    The amount to be secured by this Order is Three Hundred Million Dollars ($300,000,000).

3.    The United States Marshal for the Southern District of New York, or any person appointed to act in his place and stead, shall levy within his jurisdiction upon such monies, property, and/or interest in property of defendant PDVSA CERRO NEGRO S.A. ("PDVSA CN"), ~~including but not limited to any assigns, affiliates or related companies of PDVSA CN~~, as *PKC* are on deposit with, or held by The Bank of New York Mellon Corporation and shall pay or deliver all such funds, monies, property, and/or interests in property to the Clerk of this Court for the purpose of satisfying any arbitral award that may be obtained against the defendant.

4.    Upon plaintiff's application, the Court hereby appoints the following persons to act in the place and stead of the U.S. Marshal for the purpose of serving this Order and effecting the levy ordered hereby:  Lenor Marquis and Kimberlyn Brzozowski, both of whom are employed by counsel for plaintiff.

5.    Service of a copy of this Order upon The Bank of New York Mellon Corporation, via facsimile, electronic transmission, overnight courier, or personal delivery, shall be deemed sufficient service thereof.

6.    The statement required by CPLR § 6219 shall be served by the garnishee upon the U.S. Marshall, and a copy served on plaintiff's counsel, within five (5) days after service of this Order.

7.    Pursuant to CPLR § 6211, plaintiff shall move within a period not to exceed five days after levy, for an order confirming the order of attachment with notice to defendants and garnishee, and serve on defendants all papers upon which this Order is based. *within five (5) business days.*

8.    Plaintiff shall post a bond in the amount of $ 8,000,000.00 as security. SO ORDERED.

Dated: New York, New York
December 27, 2007

UNITED STATES DISTRICT JUDGE
*P. KEVIN CASTEL, USDJ*
*PART I*

- 2 -

# <u>Exhibit 2:</u>

## OMNIBUS TERMINATION AGREEMENT

This OMNIBUS TERMINATION AGREEMENT (this "Agreement"), dated as of December 28, 2007, is entered into by and among:

MOBIL CORPORATION., a corporation incorporated under the laws of the State of Delaware ("Mobil");

MOBIL CERRO NEGRO HOLDING, LTD., a Delaware corporation (the "Mobil Shareholder");

MOBIL CERRO NEGRO, LTD., a Bahamas corporation (the "Mobil Borrower");

EXXONMOBIL SALES & SUPPLY LLC, a Delaware limited liability company, as successor-in-interest to Mobil Sales & Supply Corporation ("Mobil Marketing");

PETRÓLEOS DE VENEZUELA, S.A., a *sociedad anónima* organized under the laws of the Bolivarian Republic of Venezuela ("PDVSA");

PDVSA PETRÓLEO, S.A. (formerly known as PDVSA Petróleo y Gas, S.A.), a *sociedad anónima* organized under the laws of the Bolivarian Republic of Venezuela, as successor-in-interest to Lagoven, S.A. (the "PDVSA Shareholder," and together with the Mobil Shareholder, the "Shareholders");

PDVSA CERRO NEGRO, S.A., a *sociedad anónima* organized under the laws of the Bolivarian Republic of Venezuela (the "PDVSA Borrower" and together with the Mobil Borrower, collectively, the "Borrowers");

CERRO NEGRO FINANCE, LTD., a Cayman Islands exempted company, as issuer (the "Issuer", and together with Mobil, Mobil Marketing, PDVSA, the Shareholders and the Borrowers, the "Sponsor Parties");

ABN AMRO BANK N.V., a bank organized under the laws of The Netherlands, as Facility Agent for the Bank Lenders (the "Facility Agent");

DEUTSCHE BANK TRUST COMPANY AMERICAS, successor-in-interest to BANKERS TRUST COMPANY, not in its individual capacity except as expressly set forth in the Common Security Agreement referred to below, but solely as Bond Trustee (the "Bond Trustee");

THE BANK OF NEW YORK, a New York banking corporation, not in its individual capacity except as expressly set forth in the Common Security Agreement referred to below, but solely as Security Trustee (the "Security Trustee");

ABN AMRO BANK N.V., Venezuelan Branch, as trustee under that certain Trust Agreement dated June 17, 1998 (the "Venezuelan Accounts Trustee");

HOLLANDSCHE BANK-UNIE N.V., a bank organized under the laws of The Netherlands, as Financial Institution (the "Financial Institution");

VEBA OIL & GAS CERRO NEGRO GMBH, a corporation incorporated under the laws of Germany, as successor-in-interest to Veba Oel Venezuela Orinoco GMBH ("Veba"); and

DEUTSCHE BP AG, a corporation organized under the laws of Germany, as successor-in-interest to Veba Oel AG ("Deutsche BP").

Capitalized terms used but not otherwise defined in this Agreement have the meanings assigned to them in the Common Security Agreement referred to below.

## RECITALS:

A.    Mobil, the Mobil Shareholder, the Mobil Borrower, PDVSA, the PDVSA Shareholder, the PDVSA Borrower, Veba, Deutsche BP, the Issuer, the Facility Agent, the Bond Trustee, the Security Trustee, the Financial Institution, the Venezuelan Accounts Trustee and the Senior Project Lenders were participants (the "Project Financing Participants") in the financing of the Cerro Negro extra-heavy crude oil project (the "Project");

B.    The Issuer, the Mobil Borrower, the PDVSA Borrower and the Bond Trustee are parties to that certain Indenture dated as of June 18, 1998 (the "Indenture"), pursuant to which the Issuer issued certain 7.33% bonds due 2009, 7.90% bonds due 2020 and 8.03% bonds due 2028 (collectively, the "Bonds");

C.    Pursuant to those certain Participation Agreements dated as of June 18, 1998, the proceeds of the issuance of the Bonds were applied by the Issuer towards the purchase of participation interests in the Loans made to each Borrower under those certain Financial Institution Loan Agreements and Promissory Notes dated as of June 18, 1998 between the Financial Institution and each of the Borrowers (the "Financial Institution Loan Agreements");

D.    The Borrowers, the Facility Agent and the bank lenders referred to therein (the "Bank Lenders") are parties to that certain Bank Lenders Senior Project Loan Agreement dated as of June 18, 1998 (the "Bank Lenders Senior Project Loan Agreement"), pursuant to which the Bank Lenders made certain loans to the Borrowers (the "Bank Debt");

E.    As security and in consideration for the Bank Debt, the Bonds and the Financial Institution Loans, the Mobil Shareholder, the Mobil Borrower, the PDVSA Shareholder, the PDVSA Borrower, the Issuer, the Facility Agent, the Bond Trustee, the Security Trustee and the Financial Institution entered into that certain Common Security Agreement dated as of June 18, 1998 (the "Common Security Agreement"), pursuant to which, among other

2

things, the Borrowers, the Shareholders and the Issuer granted security interests in the Collateral for the benefit of the Senior Project Lenders and/or agreed to certain covenants;

F.      On or about the date hereof, PDVSA has consummated a tender offer and consent solicitation pursuant to which PDVSA has purchased __% of the outstanding Bonds (the "Tender Offer") from the holders thereof (the "Tendering Bondholders") and, in connection therewith, obtained the consents and agreements of the Tendering Bondholders to, among other things, (i) (A) adopt certain proposed amendments to the Indenture, (B) amend the Common Security Agreement and the Other Financing Documents (as defined in the Offer to Purchase and Consent Solicitation Statement dated November 29, 2007 relating to the Tender Offer) (the "Other Financing Documents," and together with the Common Security Agreement, the "Project Financing Documents") to provide for the termination of the Project Financing Documents upon the consent of Holders of more than 75% of the aggregate principal amount of the Bonds and all of the Bank Lenders, and (C) terminate the Common Security Agreement and the Other Financing Documents, in order to (x) eliminate substantially all of the restrictive covenants and Events of Default under the Common Security Agreement and the Other Financing Documents, (y) release the liens on all of the collateral securing the Bonds and the other Senior Project Debt under the Common Security Agreement and the Other Financing Documents, and (z) supplement, modify or eliminate certain other provisions of the Indenture; and (ii) (A) waive any and all prior and existing defaults, Prospective Defaults, Events of Default and Declared Events of Default under the Indenture, the Common Security Agreement and the other Financing Documents, and (B) rescind any prior or existing notices of default or Prospective Default delivered pursuant to the Indenture and the Common Security Agreement (the proposed amendments, terminations and release of Collateral described in (i) above and the waivers and rescissions described in (ii) above, together with any and all agreements, documents and instruments giving effect to such amendments, terminations, release of Collateral, waivers and rescissions, are referred to herein collectively as the "Structural Amendments");

G.      In connection with the Tender Offer, the Issuer, the Mobil Borrower, the PDVSA Borrower and the Bond Trustee, on behalf of the holders of all of the Bonds (the "Bondholders"), have entered into a Supplemental Indenture dated as of the date hereof (the "Supplemental Indenture") to, among other things, give effect to the Structural Amendments (as applicable), including to authorize the Security Trustee to enter into this Agreement and implement the terms hereof;

H.      On or about the date hereof, PDVSA has, on behalf of the Borrowers, repaid 100% of the Loans and the other obligations outstanding under the Bank Lenders Senior Project Loan Agreement (the "Bank Debt Repayment");

I.      In connection with the Bank Debt Repayment, the Facility Agent and the Bank Lenders executed and delivered that certain Payoff Letter dated as of the date hereof (the "Payoff Letter"), for the benefit of the Mobil Borrower and the PDVSA Borrower, pursuant to which the Bank Lenders, subject to the Bank Debt Repayment, (i) acknowledged and agreed that 100% of the Loans and other obligations outstanding under the Bank Lenders Senior Project Loan Agreement have been repaid, satisfied and discharged in full and (ii) agreed to the Structural Amendments (as applicable), and have instructed the Facility Agent (a) to enter into

3

this Agreement and implement the terms hereof and (b) to instruct the Security Trustee to enter into this Agreement and implement the terms hereof; and

J.    To facilitate the implementation of the Structural Amendments, the Project Financing Participants (as applicable) have agreed to enter into this Agreement to (i) terminate each of the Terminated Agreements (as defined in Section 2(a) hereof), (ii) release and discharge the liens on all of the Collateral securing the Senior Project Debt Obligations, (iii) waive any and all prior and existing defaults, Prospective Defaults, Events of Default and Declared Events of Defaults under the Common Security Agreement and the other Financing Documents, and (iv) rescind any prior or existing notices of default or Prospective Default delivered pursuant to the Common Security Agreement.

NOW, THEREFORE, to give effect to the foregoing, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    *Amendment of Financing and Project Documents.*

(a)    The applicable Project Financing Participants hereby agree that Section 15.02 of the Common Security Agreement is hereby amended by inserting the following at the end of such Section:

> "Notwithstanding the foregoing conditions set forth in clauses (a) and (b) above, upon the written consent of (i) Bondholders holding more than 75% of the aggregate principal amount of the Bonds then outstanding and (ii) each Bank Lender, this Agreement, the Financing Documents, the Offtake Support Agreement, the Offtake Support Assignment, the Security Documents (including, without limitation, (A) the Mobil Local Currency Accounts Trust Agreement dated as of June 17, 1998 among the Mobil Borrower and the Venezuelan Accounts Trustee, (B) the Custody Agreement dated as of June 18, 1998 among the PDVSA Borrower and the Security Trustee, (C) the Custody Agreement dated as of June 18, 1998 among the PDVSA Shareholder and the Security Trustee, (D) the Pledge Agreement dated as of June 18, 1998 among Mobil and the Security Trustee (regarding the shares of Mobil in the Operating Company), (E) the Pledge Agreement dated as of June 18, 1998 among the Mobil Borrower and the Security Trustee (regarding the shares of the Mobil Borrower in the Management Company), and (F) the Pledge Agreement dated as of June 18, 1998 among the Mobil Borrower and the Security Trustee (regarding rights under the Chalmette Offtake Agreement, the Stork Licensing Agreement, the Foster Wheeler Licensing Agreement and the Financial Institution Guarantee)), the Veba Oel Guarantee and the Veba OVO Support Agreement, and the security

4

interests and rights created by or pursuant to this Agreement or any
Security Document, shall terminate."

(b)    In furtherance of subsection (a) hereof, to the extent necessary, the parties
hereto agree that each Terminated Agreement (as defined below) other than the Common
Security Agreement shall be deemed to have been amended hereby, *mutatis mutandis*, to provide
that such Terminated Agreement may be terminated as provided in Section 15.02 of the
Common Security Agreement; *provided, however*, that the Veba Oel Guarantee and the Veba
OVO Support Agreement (each as defined in the Common Security Agreement) shall not be
deemed to have been amended until all of the parties thereto have executed and delivered their
respective signature pages to this Agreement.

2.    *Termination of Financing and Project Documents.*

(a)    The applicable Project Financing Participants hereby acknowledge and
agree that (1) each of the following agreements (collectively, the "Terminated Agreements") are
hereby terminated, discharged and of no further force and effect (except as set forth in the
parenthetical in clause (2) below) and (2) all of the rights, obligations, liabilities, agreements,
covenants and conditions of each of the parties thereunder are hereby released, discharged and
terminated in full (in each case, other than any of such rights, obligations, liabilities, agreements,
covenants and conditions which expressly survive the termination of such Terminated
Agreement):

(i)    Common Security Agreement;

(ii)    Custody Agreement dated as of June 18, 1998 among the PDVSA
Borrower and the Security Trustee;

(iii)    Custody Agreement dated as of June 18, 1998 among the PDVSA
Shareholder and the Security Trustee;

(iv)    Mobil Local Currency Accounts Trust Agreement dated June 17,
1998 among the Mobil Borrower and the Venezuelan Accounts Trustee (the "Mobil Local
Accounts Trust Agreement");

(v)    Pledge Agreement dated as of June 18, 1998 among Mobil and the
Security Trustee (regarding the shares of Mobil in the Operating Company);

(vi)    Pledge Agreement dated as of June 18, 1998 among the Mobil
Borrower and the Security Trustee (regarding the shares of the Mobil Borrower in the
Management Company);

(vii)    Pledge Agreement dated as of June 18, 1998 among the Mobil
Borrower and the Security Trustee (regarding rights under the Chalmette Offtake Agreement, the
Stork Licensing Agreement, the Foster Wheeler Licensing Agreement and the Financial
Institution Guarantee) (the "Rights Pledge Agreement");

        (viii)    Mobil Corporation Chalmette Offtake Guarantee for the Cerro Negro Extra Heavy Crude Oil Project dated as of June 18, 1998 among Mobil and the Security Trustee;

        (ix)    PDVSA Chalmette Offtake Guarantee for the Cerro Negro Extra Heavy Crude Oil Project dated as of June 18, 1998 between PDVSA and the Security Trustee;

        (x)    Offtake Support Agreement for the Cerro Negro Extra Heavy Crude Oil Project dated as of June 18, 1998 among the Mobil Borrower, the PDVSA Borrower, Mobil Marketing and the Security Trustee;

        (xi)    Offtake Support Assignment for the Cerro Negro Extra Heavy Crude Oil Project dated as of June 18, 1998 among Mobil Marketing and the PDVSA Shareholder;

        (xii)    Offtake Support Agreement Guarantee for the Cerro Negro Extra Heavy Crude Oil Project dated as of June 18, 1998 among Mobil and the Security Trustee;

        (xiii)    Offtake Support Assignment Guarantee for the Extra Heavy Crude Oil Project dated as of June 18, 1998 among PDVSA and the Security Trustee;

        (xiv)    Transfer Restrictions Agreement dated as of June 18, 1998 among Mobil, the Mobil Borrower, PDVSA, the PDVSA Borrower, the Bond Trustee, the Facility Agent and the Security Trustee;

        (xv)    Veba OVO Support Agreement for the Extra Heavy Crude Oil Project dated as of June 18, 1998 among Veba and the Security Trustee;

        (xvi)    Veba Oel AG Support Guarantee for the Cerro Negro Extra Heavy Crude Oil Project dated as of June 18, 1998 among Deutsche BP and the Security Trustee; and

        (xvii)    Irrevocable Payment Instructions of the PDVSA Borrower dated as of June 18, 1998 (the "PDVSA Borrower Irrevocable Payment Instructions").

The foregoing notwithstanding, neither of the Terminated Agreements referred to in clauses (xv) and (xvi) above shall be terminated or discharged until all of the parties thereto have executed and delivered their respective signature pages to this Agreement.

        (b)    References to a Terminated Agreement in any Project-related agreement, document or instrument which is not being terminated hereunder shall be deemed to be amended, *mutatis mutandis*, to reflect the termination of such Terminated Agreement and the release, discharge and termination in full of the parties' rights, obligations, liabilities, agreements, covenants and conditions thereunder.

3.    *Release of Liens.*

(a)    The Security Trustee and, with respect to the Local Currency Accounts, the Venezuelan Accounts Trustee, on behalf of itself and the other Senior Project Lenders (acting at the direction of the requisite percentage of such Senior Project Lenders under the applicable Senior Project Loan Agreement or Financing Document), hereby acknowledges and agrees that the liens, security interests and trusts (collectively, the "Liens") existing on or with respect to the Collateral and the other assets and properties of the Sponsor Parties under the Common Security Agreement, the Security Documents or the other Financing Documents are hereby irrevocably released, discharged and terminated, automatically and without any further action by or on behalf of the Security Trustee or the other Senior Project Lenders, including, without limitation, the Liens on and with respect to the following assets and properties: (i) the Project Accounts, (ii) any insurance policy with non-Venezuelan insurers, (iii) the Management Company Shares, (iv) the Mobil Borrower Shares, (v) the Operator Shares, (vi) the PDVSA Borrower Shares, (vii) any Subordinated Debt and the Subordinated Notes, (viii) the Bond Proceeds Account, the Participation Certificates and the rights of the Issuer under the Participation Agreements and Financial Institution Guarantee, (ix) Expropriation Compensation, (x) the rights under the Chalmette Offtake Agreement, the Foster Wheeler Licensing Agreement, the Stork Licensing Agreement and the Post-Closing Project Agreements, (xi) all rights under the Assignment Agreements, and (xii) rights under the Permitted Hedge Agreements. For the avoidance of doubt, (A) the irrevocable payment instructions of the PDVSA Borrower under the Common Security Agreement (including, without limitation, under Article 5 thereof) and the PDVSA Borrower Irrevocable Payment Instructions are hereby released and discharged in all respects, and (B) the power of attorney granted to the Security Trustee under Section 6.11(c) of the Common Security Agreement is hereby revoked.

(b)    In furtherance of subsection (a) above, the Security Trustee (and, with respect to the Local Currency Accounts, the Venezuelan Accounts Trustee), shall, upon payment of its fees and expenses, at the cost and expense of the applicable Sponsor Party, promptly:

(i)    pay, assign, transfer and deliver to (A) the PDVSA Borrower, by wire transfer to an account designated in writing by the PDVSA Borrower, all of the funds and investments (if any) held in (1) the Project Accounts (and sub-accounts) of the PDVSA Borrower, (2) the Senior Debt Service Account, (3) the O&M Account, and (4) the Local Currency O&M Account (or, at the request of the PDVSA Borrower, retain such funds in the applicable Project Accounts specified by the PDVSA Borrower until further directed by the PDVSA Borrower), and (B) the Mobil Borrower, by wire transfer to an account designated in writing by the Mobil Borrower, all of the funds and investments (if any) held in the Project Accounts (and sub-accounts) of the Mobil Borrower, other than the funds held in (i) the Senior Debt Service Reserve Account, fifty percent (50%) of which shall be distributed to the PDVSA Borrower (or, at the request of the PDVSA Borrower, retained until further directed by the PDVSA Borrower) (in full satisfaction of the Subordinated Debt owing by the Mobil Borrower to the PDVSA Borrower as provided in Section 5.05(b) of the Common Security Agreement and that certain Inter-Sponsor Agreement dated as of June 18, 1998 among Mobil, PDVSA, the Shareholders and the Borrowers) and fifty percent (50%) of which shall be distributed to the Mobil Borrower and (ii) the Project Accounts (and sub-accounts) specified in clause (A) of this

subsection (b)(i) (which shall be distributed to the PDVSA Borrower (or, at the request of the PDVSA Borrower, retained until further directed by the PDVSA Borrower, as provided in clause (A) of this subsection (b)(i)));

        (ii)     deliver to the applicable pledgors physical possession of any share certificates, stocks powers, participation certificates and other instruments delivered to the Security Trustee as Collateral, including without limitation, with respect to (i) the Operator Shares pledged by Mobil, (ii) the Management Company Shares pledged by the Mobil Borrower, (iii) the Mobil Borrower Shares pledged by the Mobil Shareholder, (iv) the Management Company Shares transferred by the PDVSA Borrower to the Custody Agreement, (v) the PDVSA Borrower Shares transferred by the PDVSA Shareholder to the Security Trustee pursuant to the Custody Agreement and (vi) the Participation Certificates pledged by the Issuer;

        (iii)    at the request of a Sponsor Party, execute, deliver and/or file Uniform Commercial Code termination statements and such other termination statements, releases, deeds, satisfactions, documents and instruments under New York law, Venezuelan law or other applicable law as are necessary or reasonably requested by such Sponsor Party in connection with the release and termination of the Liens hereunder, including without limitation, executing, delivering, notarizing and filing an agreement for the termination of the Mobil Local Accounts Trust Agreement and the Rights Pledge Agreement and executing and delivering notices of termination of the Assignment and Acknowledgement Agreements with respect to the Foster Wheeler Licensing Agreement and the Stork Licensing Agreement; and

        (iv)    deliver to each of the Sponsor Parties (as applicable) any other assets or property of such Sponsor Party constituting Collateral in the Security Trustee's possession or control.

The Sponsor Parties are hereby authorized to file all Uniform Commercial Code termination statements and such other termination statements, releases, documents, instruments as are necessary or advisable under New York law, Venezuelan law or any other applicable law to release or terminate any and all Liens in and to the Collateral.

        4.     *Waivers.*  Each of the Security Trustee, the Bond Trustee, the Facility Agent and the Financial Institution, on behalf of itself and the other Senior Project Lenders whom it represents (acting at the direction of the requisite percentage of such Senior Project Lenders under the applicable Senior Project Loan Agreement or Financing Document), hereby waives any and all defaults, Prospective Defaults, Events of Default and Declared Events of Default of any nature whatsoever under the Indenture, the Bank Lenders Senior Project Loan Agreement, the Common Security Agreement and the other Financing Documents existing or continuing on or prior to the date hereof, and whether known or unknown.  To the extent any notice delivered by or on behalf of the Senior Project Lenders on or prior to the date hereof constituted a notice of default, Prospective Default, Event of Default or a Declared Event of Default, such notice is hereby rescinded and revoked in all respects.

8

5.      *Further Assurances.* From time to time, upon request of any Sponsor Party, the Security Trustee and the Senior Project Lenders shall, without further consideration (other than reimbursement by such Sponsor Party for any reasonable costs and expenses, including reasonable fees and expenses of counsel), execute, deliver and acknowledge all such further documents, agreements, certificates, deeds and instruments, and do such further acts as the Sponsor Parties may reasonably request to more effectively evidence or effectuate the transactions contemplated by this Agreement, including, but not limited to, the release and termination of the Terminated Agreements and the release and discharge of all Liens in the Collateral.

6.      *Representations and Warranties.* Each of the Sponsor Parties hereby represents and warrants that, as of the date of this Agreement:

(a)      it has all corporate power and authority to (i) execute and deliver this Agreement and (ii) perform and incur all its other obligations provided for herein;

(b)      this Agreement has been duly authorized, executed and delivered by it and constitutes its valid and legally binding obligation enforceable in accordance with its terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles;

(c)      all authorizations, approvals and consents from governmental authorities that are necessary for the execution and delivery by it of this Agreement and the performance of its other obligations hereunder have been obtained and are in full force and effect; and

(d)      there is no provision of law, statute, regulation, rule, order, injunction, decree, writ or judgment (including without limitation any foreign exchange controls for which appropriate approvals and other similar authorizations have not been obtained), no provision of its charter or other constitutive documents and no provision of any mortgage, indenture, contract or other agreement binding on it or affecting its properties that, in each case, would prohibit, conflict with or in any way prevent the execution, delivery or performance of the terms of this Agreement.

7.      *Source of Payments Limited; Rights and Liabilities of the Issuer.*

(a)      The obligations of the Issuer to the parties to this Agreement shall be limited to the lesser of (a) the nominal amount of the claim of a party determined in accordance with the terms of this Agreement (other than this clause) (the "Claim"); and (b) the product of (i) the Net Proceeds (as defined below) divided by the aggregate gross amount of the Claim and all obligations of the Issuer ranking pari passu with the Claim and (ii) the nominal amount of the Claim. In this Section, "Net Proceeds" means the net proceeds of realization of all the assets of the Issuer other than the ordinary share capital and the transaction fee charged by the Issuer and any interest earned thereon after payment of, or provision for, all debts, costs, expenses and other obligations of the Issuer as determined by the directors of the Issuer in their absolute discretion, other than the Claim and any obligations ranking pari passu with or behind the Claim. If there

9

are no Net Proceeds, the Issuer shall have no obligations to the relevant party under this Agreement.

(b)     The parties to this Agreement hereby acknowledge and agree that the Issuer's obligations under this Agreement are solely the corporate obligations of the Issuer, and that a party to this Agreement shall not have any recourse against any of the directors, officers or employees of the Issuer for any claims, losses, damages, liabilities, indemnities or other obligations whatsoever in connection with any transactions contemplated by this Agreement.

(c)     The parties to this Agreement shall not take any action or commence any proceedings against the Issuer to recover any amounts due and payable by the Issuer under this Agreement except as expressly permitted by the provisions of this Agreement. The parties to this Agreement shall not take any action or commence any proceedings or petition a court for the liquidation of the Issuer, nor enter into any arrangement, reorganization or insolvency proceedings in relation to the Issuer whether under the laws of the Cayman Islands or other applicable bankruptcy laws until one year and one day after the later to occur of the payment in respect of the Claim or the extinction of party's rights in respect of the Claim.

8.     *Direction to the Security Trustee.*  Each of the Bond Trustee, acting at the direction of the requisite percentage of Bondholders pursuant to the Supplemental Indenture, and the Facility Agent, acting at the direction of the requisite percentage of Bank Lenders pursuant to the Payoff Letter, confirms that it has instructed and directed (and, for the avoidance of doubt, does hereby instruct and direct) the Security Trustee to execute and deliver this Agreement and any and all documents to be delivered pursuant to the terms hereof and otherwise consummate the transactions contemplated hereby (the foregoing direction, together with the directions and instructions under the Payoff Letter and the Supplemental Indenture, being the "Direction").

9.     *Indemnification.*  PDVSA and each of the Borrowers (each such person being an "Indemnifying Person") hereby agree to, and shall, pay and reimburse and be liable to the Security Trustee, the Bond Trustee, the Facility Agent and each of their respective directors, officers, employees and agents (each such person being an "Indemnified Person") on demand for, and to indemnify and hold harmless each such Indemnified Person from and against, without limitation, any and all losses, liabilities, judgments, claims, causes of actions, fees (including the extraordinary fees of the Security Trustee), costs and expenses (including the reasonable fees, disbursements and costs of legal counsel and experts) (collectively referred to herein as "Losses") incurred or suffered by an Indemnified Person in any way, directly or indirectly, arising out of, related to, or connected with the compliance by such Indemnified Person with the Direction and the other terms of this Agreement, the Payoff Letter and the Supplemental Indenture or the taking or omitting to take any action in accordance with the Direction and the other terms of this Agreement, the Payoff Letter and the Supplemental Indenture, including, without limitation, (i) any claim, cause of action, litigation, proceeding, action or investigation (whether civil, criminal or administrative and whether sounding in tort, contract or otherwise and whether such Indemnified Person is a party to such litigation, proceeding or investigation) in any way directly or indirectly, arising out of, related to, or connected with, the taking, by any Indemnified Person, of action in accordance with the Direction or the other terms of this Agreement, the Payoff Letter and the Supplemental Indenture and (ii) the enforcement of this

Agreement; *provided, however*, that the foregoing indemnity shall not be applicable to (x) any Losses suffered or incurred by an Indemnified Person as a result of an Indemnified Person's gross negligence, bad faith or willful misconduct or (y) in connection with a breach by an Indemnified Person of its obligations to an Indemnifying Person, in each case as determined by a judgment of a court that is binding on such Indemnified Person, is final and is not subject to review on appeal. The Indemnifying Persons shall have the right, through the appointment of counsel, to participate in and/or control any action, suit or proceeding for which they are liable as indemnitors hereunder, provided that the Indemnifying Persons shall not have the right to control such action, suit or proceeding if they involve potential imposition of criminal liability upon the Indemnified Person or a conflict of interest between the Indemnifying Persons and the Indemnified Persons and in such case the Indemnified Persons shall have the right to retain its own counsel, at the expense of the Indemnifying Persons, and such participation by the Indemnified Persons in the defense shall not release the Indemnifying Persons from any liability that they may have to such Indemnified Persons.

10.    *Miscellaneous,*

(a)    *Governing Law.* This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(b)    *Waiver of Jury Trial.* Each party hereto hereby waives, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.

(c)    *Severability.* If any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(d)    *Counterparts.* This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all the counterparts shall together constitute one and the same instrument.

(e)    *Consent to Jurisdiction; Waiver of Immunity.*

(i)    Each party hereto hereby irrevocably consents and agrees, for the benefit of each other party hereto, that any legal action, suit or proceeding against it with respect to its obligations, liabilities or any other matter under or arising out of or in connection with this Agreement may be brought in any Federal or State court located in the Borough of Manhattan, The City of New York, and hereby irrevocably accepts and submits to the non-exclusive jurisdiction of each such court with respect to any such action, suit or proceeding. Each party hereto hereby waives to the fullest extent permitted by applicable laws any objection which it may now or hereafter have to the laying of venue of any of the aforesaid actions, suits or proceedings brought in any such court and hereby further waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought therein has been brought in an inconvenient forum.

11

(ii)     To the extent that PDVSA, the PDVSA Shareholder, the PDVSA Borrower or the Issuer has or thereafter may acquire or be entitled to claim for itself or its assets any immunity from jurisdiction of any court or from any legal process (whether through service of notice, attachment in aid of execution, execution, sovereign immunity or otherwise) with respect to itself or its assets, each of PDVSA, the PDVSA Shareholder, the PDVSA Borrower and the Issuer hereby irrevocably agrees not to claim and waives such immunity in respect of its obligations under this Agreement and the transactions contemplated thereby, provided that no such party is waiving any immunity from attachment prior to judgment to which it may now or hereafter be entitled.  Without limiting the generality of the waivers set forth in this Section 10(e)(ii), all waivers made in this subsection shall be effective to the fullest extent permitted under the United States Foreign Sovereign Immunities Act of 1976, as amended, and are intended to be irrevocable for purposes of such Act.

(f)     *Amendments.*  This Agreement may be amended, modified, supplemented or be subject to a waiver only by an agreement in writing signed by each party hereto.

(g)     *References.*  Any definition of or reference to any agreement, instrument or other document shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified from time to time.

*[Signature pages follow]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date set forth above.

**MOBIL CORPORATION**

By:_____
Name:_____
Title:_____


**MOBIL CERRO NEGRO HOLDING, LTD.**

By:_____
Name:_____
Title:_____


**MOBIL CERRO NEGRO, LTD.**

By:_____
Name:_____
Title:_____


**EXXONMOBIL SALES & SUPPLY LLC**

By:_____
Name:_____
Title:_____


**PETRÓLEOS DE VENEZUELA, S.A.**

By:_____
Name:  Euromario Carruyo
Title:    Director


Signature Page to Omnibus Termination Agreement

**PDVSA PETRÓLEO, S.A.**

By:_____
Name:_____
Title:_____


**PDVSA CERRO NEGRO, S.A.**

By:_____
Name: Eulogio Del Pino
Title:  President


**CERRO NEGRO FINANCE, LTD.**

By:_____
Name:_____
Title:_____


**ABN AMRO BANK N.V., as Facility Agent**

By:_____
Name:_____
Title:_____


By:_____
Name:_____
Title:_____


Signature Page to Omnibus Termination Agreement

**DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Bond Trustee**

By:_____
Name:_____
Title:_____

By:_____
Name:_____
Title:_____

**THE BANK OF NEW YORK, as Security
Trustee**

By:_____
Name:_____
Title:_____

**HOLLANDSCHE BANK-UNIE N.V., as
Financial Institution**

By:_____
Name:_____
Title:_____

Signature Page to Omnibus Termination Agreement

**ABN AMRO BANK N.V., VENEZUELAN**
**BRANCH, as Venezuelan Accounts Trustee**


By:_____
Name:_____
Title:_____


By:_____
Name:_____
Title:_____


**VEBA OIL & GAS CERRO NEGRO GMBH**


By:_____
Name:_____
Title:_____


**DEUTSCHE BP AG**


By:_____
Name:_____
Title:_____

Signature Page to Omnibus Termination Agreement

# Exhibit 3:

## FLOW OF FUNDS MEMORANDUM

## CERRO NEGRO PROJECT BONDS TENDER OFFER AND CONSENT SOLICITATION

### December 28, 2007

Set out below are wire transfer and other delivery instructions to be followed by the appropriate parties with respect to certain funds to be delivered by Petróleos de Venezuela, S.A. ("PDVSA") and The Bank of New York ("BONY"), as Security Trustee, in connection with, and at the closing of, various transactions being effected in connection with the Offer to Purchase and Consent Solicitation for Cerro Negro Project Bonds.

1.      PDVSA shall deliver the following payments, by wire transfer of immediately available funds, on Friday, December 28, 2007:

| 1.1 | Purpose: | Consideration for Tender Offer and Consent Solicitation | |
|---|---|---|---|
| | Amount: | 7.33% Bonds due 2009: | $[        ] |
| | | 7.90% Bonds due 2020: | $[        ] |
| | | 8.03% Bonds due 2028: | $[        ] |
| | | Total: | $[        ] |
| | Payee: | Depository Trust Company | |
| | Wire Instructions: | Chase Manhattan Bank<br>Four New York Plaza<br>New York, NY 10004<br><br>A/C Depository Trust Company<br><br>Reorg. Deposit Account  #066-027608<br><br>ABA# 21000021 | |
| | | | |
| 1.2 | Purpose: | Payoff of Cerro Negro Senior Project Loan Agreement | |
| | Amount: | $ [        ]¹ | |
| | Payee: | ABN Amro Bank, N.V. | |
| | Wire Instructions: | ABN Amro Bank, N.V., New York<br><br>ABA Routing #: 026009580<br><br>Account Name: F/O ABN AMRO Bank, N.V. - CPU<br><br>Account Number: 650001178941<br>Reference: Cerro Negro | |
| | | | |

---

¹ The loan payoff amount includes: (i)$[        ] in principal, (ii) $[        ] in interest to 12/28/07, (iii) $[        ] in legal fees of Rodriguez & Mendoza, Venezuelan counsel to theFacility Agent, (iv) $[        ] in financial adviser fees for FTI Consulting, (v) $[        ] in legal fees of Luskin Stern, U.S. counsel to theFacility Agent, and (vi) $[        ] ]representing one-half of the Facility Agent's annual fee.

| 1.3 | Purpose: | Fees of Deutsche Bank Trust Company Americas, Bond Trustee. | |
| | Amount: | $[    ] | |
| | Payee: | Deutsche Bank Trust Company Americas | |
| | Wire Instructions: | Bank: Deutsche Bank Trust Company Americas<br>SWIFT: BKTRUS33<br>ABA: 021-001-033<br>Account: 01419647<br>FFC: FEE Billing Account ZBAFB<br>REF: Cerro Negro M0E7 | |
| | | | |
| 1.4 | Purpose: | Annual and Extraordinary Fees of The Bank of New York, as Security Trustee | |
| | Amount: | $[    ] | |
| | Payee: | The Bank of New York | |
| | Wire Instructions: | The Bank of New York<br>ABA #021-0000-18<br>GLA # 111-565<br>Account #308335<br>Re Ref. Cerro Negro | |
| | | | |
| 1.5 | Purpose: | Legal fees for services rendered Brown Rudnick Berlack Israels LLP, as counsel to the Ad Hoc Committee of Bondholders and the Bond Trustee | |
| | Amount: | $[    ] | |
| | Payee: | Brown Rudnick,Berlack Israels LLP | |
| | Wire Instructions: | ABA# 0260-0959-3<br>Bank of America<br>Hartford, CT<br>Account No. 0066502267<br>Account Name: Brown Rudnick Berlack Israels LLP Client's Trust Fund<br>Additional Information: (Andrew Strehle)<br>Attention: Wiring Room<br>Client Number: 26963/1 | |
| | | | |
| 1.6 | Purpose: | Legal fees for services rendered by Seward and Kissel LLP, as counsel to the Bond Trustee | |

| | Amount: | $[        ] | |
|---|---|---|---|
| | Payee: | Seward and Kissel LLP | |
| | Wire Instructions: | Citibank, N.A.<br>120 Broadway, NYC 10043<br>Seward and Kissel LLP Regular Account #37119785<br>ABA #021000089 | |
| | | | |
| 1.7 | Purpose: | Legal fees for services rendered by Carter, Ledyard & Milburn LLP, as counsel to the Security Trustee | |
| | Amount: | $[      ] | |
| | Payee: | Carter, Ledyard & Milburn LLP | |
| | Wire Instructions: | JPMorgan Chase Bank<br>New York, New York<br>Swift Code CHASUS33<br>ABA# 021000021<br>For credit to the account of Carter Ledyard & Milburn LLP<br>Account # 001014455<br>Ref. No. BAN 14 936 | |
| | | | |
| 1.9 | Purpose: | Fees of Lazard Frères & Co. LLC as financial adviser to the PDVSA Borrower and PDVSA | |
| | Amount: | $ [         ] | |
| | Payee: | Lazard Frères & Co. LLC | |
| | Wire Instructions: | JP Morgan Chase, New York<br>ABA: # 021000021<br>FBO: Lazard Freres & Co. LLC<br>A/C #: 066297109<br>Attention Chris Wanfried | |
| | | | |

2.  On Friday, December 28, 2007 the Bank of New York, as Security Trustee, shall transfer all of the funds from the following numbered accounts, 057630, 057631, 057637, 057638, 057639, 057642, into the PDVSA Borrower Distribution Account, number 057641, and shall close accounts 057630, 057631, 057637, 057638, 057639, 057642, thereafter. The Bank of New York shall maintain the Account numbered 057633 (changing its name to the PDVSA Borrower Operating & Maintenance Account), and the PDVSA Borrower Operating Revenues Account, numbered 057635, leaving all funds on deposit in those accounts.

| 2.1 | Purpose: | Maintenance of PDVSA Borrower Accounts 057633 and 057635 and all funds on deposit therein | |
|---|---|---|---|
| | | | |

| | Acct. No. | 057633 | |
|---|---|---|---|
| | Acct. Name | PDVSA Borrower Operating & Maintenance[2] | |
| | Amount | $[3.51] | |
| | | | |
| | Acct. No. | 057635 | |
| | Acct. Name | PDVSA Borrower Operating Revenues | |
| | Amount: | $[206,881,331.82] | |
| | | | |
| 2.2 | Purpose: | Transfer of funds in PDVSA Borrower Accounts 057630,057631, 057637, 057638, 057639, 057642 into account 057641.[3] | |
| | | | |
| | Acct. No. | 057641 | |
| | Acct. Name | PDVSA Borrower Distribution | |
| | Current Balance: | $[71,966,646.82] | |
| | Balance After Transfer: | $[104,210,569.64] | |
| | | | |
| 2.2.1 | Purpose: | Transfer of funds on deposit in the PDVSA Borrower Debt Service Sub-Account into Account 057641 | |
| | Acct. No. | 057642 | |
| | Acct. Name | PDVSA Borrower Debt Service Sub-Account | |
| | Amount | $[4,574,658.13] | |
| | Transfer to: | Account 057641 | |
| | | | |
| 2.2.2 | Purpose: | Transfer of funds on deposit in the Senior Debt Service Account into Account 057641 | |
| | Acct. No. | 057638 | |
| | Acct. Name | Borrowers Senior Debt Service | |
| | Amount: | $ [0.02] | |
| | | | |
| 2.2.3 | Purpose: | Transfer of funds on deposit in the Borrowers O&M Account into Account 057641 | |
| | Acct. No. | 057630 | |

---

[2] Formerly PDVSA Borrower Disbursement
[3] Accounts 057631 and 057637 have zero balance and are not included in this memo.

|  | Acct. Name | Borrowers O&M Account |  |
|---|---|---|---|
|  | Amount: | $[362,431.58] |  |
|  | Transfer to: | Account 057641 |  |
|  |  |  |  |
| 2.2.4 | Purpose: | Transfer of 50% of funds on deposit in the Senior Debt Service Reserve Account into Account 057641 |  |
|  | Acct. No. | 057639 |  |
|  | Acct. Name | Cerro Borrowers Senior Debt Service Reserve A/C |  |
|  | Amount: | $[27,306,833.09] |  |
|  | Transfer to: | Account 057641 |  |
|  |  |  |  |

3.     The Bank of New York, as Security Trustee, shall deliver the following payments, by wire transfer of immediately available funds, on Friday, December 28, 2007.

| 3.1 | Purpose: | Release of funds on deposit in the Mobil Borrower Project Accounts, and 50% of the funds held in the Senior Debt Service Reserve Account |  |
|---|---|---|---|
|  | Total Amount: | $[] |  |
|  | Payee: | Exxon Mobil Corporation |  |
|  | Wire Instructions: | Bank Name: Attention: ABA: Account Number: Ref: |  |
|  | Acct No. | 057632 |  |
|  | Acct. Name: | Cerro Mobil Borrower Disbursement A/C |  |
|  | Amount: | $0.00 |  |
|  |  |  |  |
|  | Acct. No. | 057634 |  |
|  | Acct. Name: | Cerro Mobil Borrower Operating Revenues |  |
|  | Amount: | $[6,278.57] |  |
|  |  |  |  |
|  | Acct. No. | 057643 |  |
|  | Acct. Name: | Cerro Mobil Borrower Debt Service Sub-Account |  |
|  | Amount: | $[4,546,465.69] |  |
|  |  |  |  |

| Acct. No. | 057640 | |
|---|---|---|
| Acct. Name: | Cerro Mobil Borrower Distribution A/C | |
| Amount: | $[210,239,471.87] | |
| | | |
| Acct. No. | 057639 | |
| Acct. Name: | Cerro Borrowers Senior Debt Reserve A/C | |
| Amount: | $[27,306,833.09] | |

4.    ABN AMRO Bank, N.V., as Venezuelan Accounts Trustee, shall or maintain the following PDVSA Borrower accounts and deliver the following payments by wire transfer of immediately available funds to the Mobil Borrower, on Friday, December 28, 2007.

| 4.1 | Purpose: | Maintain the PDVSA Cerro Negro SA Operating Revenues Account, numbered 7837607, and the PDVSA Cerro Negro SA Operating Disbursement Account , numbered 7837607, and all funds on deposit therein. | |
|---|---|---|---|
| | Amount: | $ [        ] | |
| | | | |
| 4.2 | Purpose: | Release of funds on deposit in the Mobil Borrower Local Currency Accounts | |
| | Amount: | $ [        ] | |
| | Payee: | [Exxon Mobil Corporation] | |
| | Wire Instructions: | Bank Name:<br>Attention:<br>ABA:<br>Account Number:<br>Ref: | |