**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOBIL CERRO NEGRO, LTD., ) <br><br> ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> PDVSA CERRO NEGRO S.A., ) <br><br> Defendant. ) | Civil Action No. 07 Civ. 11590 (DAB) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO**
**CONFIRM ORDERS OF ATTACHMENT**

Howard H. Stahl (admitted *pro hac vice*)
Steven K. Davidson (admitted *pro hac vice*)
Mark A. Moran (admitted *pro hac vice*)
Michael J. Baratz (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
tel: (202) 429-3000
fax: (202) 429-3902

Michael C. Miller (MM-4632)
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, New York  10019
tel: (212) 506-3900
fax: (212) 506-3950

*Counsel for Plaintiff*

Date:   February 4, 2008

*Of Counsel:*

Toni D. Hennike
Luis Marulanda del Valle
Law Department
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas  77002
tel:  (713) 656-3636
fax:  (713) 656-3496

Charles A. Beach (CB-6791)
Law Department
EXXON MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas  75039-2298
tel:  (9720 444-1466
fax:  (972) 444-1435

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION.................................................................................................... 1

ARGUMENT ......................................................................................................... 3

I.     PDVSA CN HAS ESSENTIALLY CONCEDED THAT THE ORDERS OF
      ATTACHMENT SHOULD BE CONFIRMED ............................................................ 3

II.    PDVSA CN CANNOT RELY ON THE DOCTRINE OF UNCLEAN HANDS........... 5

      A.    "Unclean Hands" Does Not Apply Here As a Matter of Law ........................... 5

      B.    Mobil CN Provided This Court with Candid, Frank Disclosure....................... 6

      C.    The Closing, Termination of the Restrictions on the Cash Waterfall,
          and Service of the Order of Attachment.......................................................... 6

      D.    Mobil CN Did Not Breach Any Representation and Warranty in the
          Termination Agreement ................................................................................. 7

          1.    Section 6(d) is Expressly Limited to Orders Binding on Mobil
               CN ..................................................................................................... 9

          2.    The Termination Agreement Was Fully Executed and
               Performed ........................................................................................... 9

CONCLUSION ...................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**                                                                                                    **Page(s)**

*Bethlehem Steel Co.*, 2 N.Y.2d 456, 460 (1957)..............................................................................9

*County of Nassau v. Eagle Chase Assocs.*,
    544 N.Y.S.2d 904 (Sup. Ct. Nassau Cty. 1989)........................................................................6

*County Natwest Sec. Corp. USA v. Jesup, Josephthal & Co.*,
    579 N.Y.S.2d 376 (1st Dep't 1992) ..........................................................................................3

*De Beers Consol. Mines, Ltd. v. United States*,
    325 U.S. 216 (1945).................................................................................................................5

*ENH, Inc. v. Int'l Diffusion SRL*,
    No. 97 Civ. 3202, 1997 WL 294388 (S.D.N.Y. June 2, 1997)................................................5

*Founders Ins. Co. v. Everest Nat'l Ins. Co.*,
    839 N.Y.S.2d 474 (1st Dep't 2007)......................................................................................4, 5

*Habitations Ltd., v. BKL Realty Sales Corp.*,
    554 N.Y.S.2d 117 (1st Dep't 1990) ..........................................................................................3

*Hasbro Bradley, Inc. v. Coopers & Lybrand*,
    515 N.Y.S.2d 461 (1st Dep't 1987) ..........................................................................................5

*Hecht v. City of New York*,
    60 N.Y.2d 57 (1983) .................................................................................................................4

*In re Russian-Brazilian Holdings, Inc.*,
    602 N.Y.S.2d 352 (1st Dep't 1993) ..........................................................................................3

*Metro. Coal Co. v. Howard*,
    155 F.2d 780 (2d Cir. 1946)......................................................................................................9

*Moore v. Kopel*,
    653 N.Y.S.2d 927 (1st Dep't 1997) ..........................................................................................9

*Morrisania II Associates v. Harvey*,
    527 N.Y.S.2d 954 (Civ. Ct. Bronx Cty. 1988)..........................................................................6

*Rentways, Inc. v. O'Neil Milk & Cream Co.*,
    308 N.Y. 342 (1955).................................................................................................................9

*Rubin v. Lesser*,
    228 N.Y.S.2d 798 (Sup. Ct. N.Y. Cty. 1962) ..........................................................................5

*Schall v. Newtown*,
    216 N.Y.S. 285 (2d Dep't 1926), *aff'd*, 245 N.Y. 576 (1927)...................................................4

*Seaman v. Fichet-Bauche N. Am., Inc.*,
    575 N.Y.S.2d 122 (2d Dep't 1991)........................................................................................4

*Sheil v. Patrick*,
    59 F. 992 (2d Cir. 1894)......................................................................................................5

*SiVault Sys., Inc. v. Wondernet, Ltd.*,
    No. 05 Civ. 0890 (RWS), 2005 WL 681457 (S.D.N.Y. Mar. 28, 2005) ..................................3

*Thorington v. Merrick*,
    101 N.Y. 5 (1885)................................................................................................................5

*Trafalgar Power, Inc. v. Aetna Life Ins. Co.*,
    131 F. Supp. 2d 341 (N.D.N.Y. 2001)..................................................................................5


**STATUTES**

CPLR § 6212(a) ...........................................................................................................................1

CPLR § 7502(c). ...........................................................................................................................1


**BOOKS AND ARTICLES**

55 N.Y. Jur. 2d *Equity* § 112, at 697.............................................................................................6

63 N.Y. Jur. 2d *Guaranty and Suretyship* § 329..........................................................................4

Restatement (Second) of Judgments § 49 & cmt. a (1982) ..........................................................4

*Williston on Contracts* § 31:4 (2007)...........................................................................................9

*Wright & Miller* 2d § 2932, at 7 (2d ed. 1995)............................................................................5

**INTRODUCTION**

Defendant PDVSA Cerro Negro S.A. ("PDVSA CN") does not contest that Plaintiff Mo-

bil Cerro Negro, Ltd. ("Mobil CN") will likely succeed on the merits or that the need for the levy

continues.[1] Of the four grounds for attachment, PDVSA CN challenges only one -- the "ren-

dered ineffectual" element. However, PDVSA CN does not dispute that *it* will be unable to sat-

isfy an award rendered against *it*. PDVSA CN claims instead that the arbitral award will not be

"rendered ineffectual" because its guarantor, Petróleos de Venezuela, S.A. ("PDVSA"), will sat-

isfy any such award. This argument is without merit. PDVSA has refused to honor its guaranty

to Mobil CN despite demand, and despite PDVSA CN's admission that Venezuela has stripped

Mobil CN of its interest in the Cerro Negro Project.[2] Indeed, on January 24, 2008, the High

Court of England and Wales was satisfied that there is a real risk that PDVSA will dissipate its

assets and accordingly entered a Worldwide Freezing Order *ex parte*.[3]

Instead of addressing Mobil CN's arguments for confirmation, PDVSA CN has raised a

collateral issue that is irrelevant to a motion to confirm and incorrect as a matter of fact and law.

PDVSA CN incorrectly argues that attachment is an equitable remedy, that the doctrine of un-

clean hands applies, and that Mobil CN's hands are unclean. Attachment is a remedy at law, so

the doctrine of unclean hands does not apply. In any event, Mobil CN's hands are not "unclean."

In raising "unclean hands," PDVSA CN alleges that Mobil CN: (1) breached a represen-

---

[1] To confirm these orders, Mobil CN must show that: (1) the grounds for attachment are met; (2) a need for the levy continues; and (3) it is probable Mobil CN will succeed on the merits. The grounds for an attachment are: (1) there is a cause of action; (2) it is probable the plaintiff will succeed on the merits; (3) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff; and (4) "the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." CPLR §§ 6212(a), 7502(c).

[2] *See* Baratz Decl., Ex. 11 (Letter from Curtis, Mallet-Prevost, Colt & Mosle LLP to Carter Ledyard & Millburn LLP (July 25, 2007)), and Opp'n at 5.

[3] The Freezing Order prohibits PDVSA from disposing of it assets worldwide up to a value of US$12 billion, whether directly or indirectly held. A copy of the Order is attached as Ex. 1 to the Declaration of Steven K. Davidson, filed herewith. *See also* Affidavit of Thomas K. Sprange ("Sprange Aff.") ¶¶ 185-249, submitted in the English proceeding, attached as Ex. 2.

tation and warranty ("Section 6(d)") in the Omnibus Termination Agreement ("Termination Agreement"); (2) was not candid with this Court about Section 6(d); and (3) did not disclose that Mobil CN would benefit from the bond repurchase. All are incorrect and irrelevant.

Mobil CN fully disclosed to the Court that after the bond repurchase, Mobil CN would have access to its share of the cash waterfall. Mobil CN also disclosed Section 6(d) by attaching the Termination Agreement, a 12-page document, as an exhibit. Although Defendant insinuates malintent, Mobil CN had no reason to address specifically Section 6(d) because, by its clear terms, it has no bearing on this case.[4] Under Section 6(d), Mobil CN warranted only that no order "***binding on it or affecting its properties***" would prevent the execution, delivery, or performance of the Termination Agreement. No such order bound Mobil CN or affected its properties; thus, Section 6(d) does not apply and was not breached. Moreover, PDVSA CN admits (Opp'n at 16) that performance of the Termination Agreement, the bond repurchase, the repayment of the bank debt, and the closing itself, occurred with no interference from the order of attachment.

Ironically, PDVSA CN relies on the maxim that one who has unclean hands is not entitled to relief in equity. It is PDVSA CN that has unclean hands and would be barred by that maxim from seeking equity. PDVSA CN concedes that Venezuela enacted laws in early 2007 that deprived Mobil CN of its interest in the Cerro Negro Project. PDVSA CN has not disputed its contractual obligation to compensate Mobil CN for Discriminatory Actions, such as expropriation, that cause Material Adverse Impacts. Despite demand, PDVSA CN has refused to honor its obligation. Thus, it is PDVSA CN's hands that are unclean.

---

[4] This motion is not the proper forum for PDVSA CN to raise unsubstantiated breach of contract claims. If it wishes to pursue such claims, it may do so, but such claims are irrelevant to Mobil CN's motion to confirm the two attachment orders.

## ARGUMENT

### I.   PDVSA CN HAS ESSENTIALLY CONCEDED THAT THE ORDERS OF ATTACHMENT SHOULD BE CONFIRMED

PDVSA CN does not contest that Mobil CN is likely to succeed on the merits and that

there is a continuing need for the levy.  Of the four requirements for granting attachments,

PDVSA CN does not deny that: (1) there is a cause of action; (2) it is probable Mobil CN will

succeed on the merits; and (3) the amount demanded from the defendant exceeds all known

counterclaims.  As to the fourth requirement, the "rendered ineffectual" test,  PDVSA CN does

not dispute that: (1) the funds subject to attachment are its only substantial assets outside of

Venezuela;[5] (2) PDVSA CN's financial condition makes recovery of an award unlikely because

PDVSA CN's interests are being transferred to the new mixed company; (3) without the attach-

ments, PDVSA CN would transfer its share of the cash waterfall out of the reach of Mobil CN;[6]

and (4) Mobil CN will have difficulty enforcing the award outside this jurisdiction because

PDVSA CN has no assets outside the jurisdiction other than those in Venezuela, which are being

transferred to the new mixed company.  This evidence is more than sufficient to support a find-

ing of "rendered ineffectual." *See SiVault Sys., Inc. v. Wondernet, Ltd.*, No. 05 Civ. 0890

(RWS), 2005 WL 681457, at *1, 4 (S.D.N.Y. Mar. 28, 2005) (defendant had no other assets in

jurisdiction and had a negative net worth).[7]

Since PDVSA CN cannot credibly argue that it will be able to satisfy an award rendered

---

[5] Counsel has learned that PDVSA CN has additional assets, amounting to less than $100 million, in the form of receivables for the sale of oil.

[6] Indeed, between the time when Mobil CN obtained its original order of attachment ($300 million) and the granting of the Supplemental Order ($315 million), PDVSA CN was able to transfer approximately $11 million out of the frozen accounts.

[7] *See also In re Russian-Brazilian Holdings, Inc.*, 602 N.Y.S.2d 352 (1st Dep't 1993) (de-fendant corporation was undercapitalized); *County Natwest Sec. Corp. USA v. Jesup, Josephthal & Co.*, 579 N.Y.S.2d 376 (1st Dep't 1992) (defendant corporation was no longer actively func-tioning and was engaged in liquidating and transferring assets); *Habitations Ltd., v. BKL Realty Sales Corp.*, 554 N.Y.S.2d 117 (1st Dep't 1990) (defendant corporation was merely a shell with no appreciable assets).

against it, it incorrectly argues that the attachment should be denied because its obligations have been guaranteed by a third party. There is no support under New York law for such a broad proposition. Rather, under well-recognized law, Mobil CN may proceed against PDVSA CN alone, PDVSA as surety alone, or both simultaneously. *Schall v. Newtown*, 216 N.Y.S. 285, 285 (2d Dep't 1926), *aff'd*, 245 N.Y. 576 (1927); 63 N.Y. Jur. 2d *Guaranty and Suretyship* § 329. Further, Mobil CN will be entitled after judgment to pursue all available remedies from all liable parties. *See Hecht v. City of New York*, 60 N.Y.2d 57, 62 (1983); *Seaman v. Fichet-Bauche N. Am., Inc.*, 575 N.Y.S.2d 122, 124 (2d Dep't 1991); Restatement (Second) of Judgments § 49 & cmt. a (1982). Accordingly, Mobil CN should be permitted to seek prejudgment provisional relief from any party that will likely be liable, and against which the award may be enforced.

Such principles are particularly apt here since Mobil CN has shown a likelihood of success on the merits; PDVSA CN has no other substantial assets available to satisfy an award; and the guarantor has refused to honor its guaranty and, as the English High Court has concluded, poses a real risk of dissipating its assets. *See* Sprange Aff. ¶¶ 185-249. PDVSA CN also fails to explain its authority for speaking on PDVSA's behalf or its basis for representing that PDVSA would honor an obligation, which it has thus far refused.[8]

PDVSA CN relies on one utterly irrelevant case to support its argument, *Founders Ins. Co. v. Everest Nat'l Ins. Co.*, 839 N.Y.S.2d 474 (1st Dep't 2007) (denying cross-applications for provisional relief). *Founders* does not stand for the broad proposition that an attachment should be denied if a third party has guaranteed a defendant's obligations. Rather, the court based denial of the attachment on several factors specific to that case: (1) no showing of likelihood of success on the merits; (2) failure to show an arbitral award would be rendered ineffectual without

---

[8] To the contrary, the Government of Venezuela and the management of PDVSA have publicly objected to arbitration and stated that they "do not expect to pay out money in order to arrive at some arrangement with the [oil] companies." *See* Sprange Aff. ¶¶ 229-231.

the attachment because the intended target of the attachment had the bulk of its assets in a trust account from which the moving party already had exclusive rights to withdraw the principal; and (3) various third-party entities guaranteed the obligation. Thus, *Founders* is inapposite and provides a weak foundation for the weighty proposition it is invoked to support.

## II.   PDVSA CN CANNOT RELY ON THE DOCTRINE OF UNCLEAN HANDS

### A.   "Unclean Hands" Does Not Apply Here As a Matter of Law

PDVSA CN's "unclean hands" argument rests on the erroneous premise that "attachment is an equitable remedy." Opp'n at 17. Attachment has long been held to be a remedy at law. *See De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 216, 218 (1945) ("[U]nder the law of New York, an attachment may issue only in an action seeking a money judgment and will not issue in an equity suit"); *Sheil v. Patrick*, 59 F. 992, 993 (2d Cir. 1894) ("an attachment is not authorized in an action of an equitable nature"); *Thorington v. Merrick*, 101 N.Y. 5, 8 (1885) ("The action here is in equity . . . in such a case an attachment will not lie . . . .").[9]

The only case PDVSA CN cites to the contrary is an unpublished decision, *ENH, Inc. v. Int'l Diffusion SRL*, No. 97 Civ. 3202, 1997 WL 294388, at *1 (S.D.N.Y. June 2, 1997). In *ENH, Inc.*, the Court did not cite any authority to support its conclusion that attachment is an equitable remedy. Rather, the Court cited authorities for, and purported to apply, the maxim that "he who comes into equity must come with clean hands." The Court's finding of unclean hands was based on the plaintiff's failure to comply with applicable court rules, not general equitable principles. In light of the controlling contrary authorities, *ENH, Inc.* should not be followed.

Since attachment is a remedy at law, the equitable doctrine of unclean hands does not ap-

---

[9] *See also Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 349 (N.D.N.Y. 2001) ("Because Algonquin . . . only seeks equitable relief . . . an order of attachment is not warranted" under New York law); *Rubin v. Lesser*, 228 N.Y.S.2d 798, 800 (Sup. Ct. N.Y. Cty. 1962) (holding that no attachment will lie in an action for equitable rescission); *see also* 11A *Wright & Miller* 2d § 2932, at 7 (2d ed. 1995) (state law permits provisional remedies "only in actions of the kind that historically were at law rather than in equity").

ply. *See Hasbro Bradley, Inc. v. Coopers & Lybrand*, 515 N.Y.S.2d 461, 463 (1st Dep't 1987) (defendant cannot invoke the equitable defense of unclean hands in this action exclusively at law); *County of Nassau v. Eagle Chase Assocs.*, 544 N.Y.S.2d 904, 908 (Sup. Ct. Nassau Cty. 1989) (same); *Morrisania II Associates v. Harvey*, 527 N.Y.S.2d 954, 961 (Civ. Ct. Bronx Cty. 1988) (same); 55 N.Y. Jur. 2d *Equity* § 112, at 697.

### B.    Mobil CN Provided This Court with Candid, Frank Disclosure

The record shows that Mobil CN provided this Court with candid, frank disclosure about the benefit Mobil CN would receive. Mobil CN's *ex parte* Memorandum explained: "After the bondholders are paid off, however, the restrictions placed on the cash waterfall, including the irrevocable instructions, will be released. Consequently, ***PDVSA CN and Mobil CN*** will have ***unrestricted access to their respective portions*** of the cash waterfall." *Id.* at 15 (emphasis added) (citations omitted). Mobil CN included this statement in its Complaint (*see* ¶ 54), and cited to, and attached to the Baratz Declaration, the Offering Memorandum (Ex. 2), the Flow of Funds Memo (Ex. 20) and the Termination Agreement (Ex. 19), which made clear that Mobil CN would receive benefits from this transaction.

Mobil CN also disclosed Section 6(d) by submitting a copy of the Termination Agreement with its moving papers. The Court noted that it had reviewed the Baratz Declaration and the annexed exhibits in granting the attachment. *See* Dec. 27, 2007 Tr. at 8-9. Accordingly, Mobil CN clearly disclosed to the court the benefit Mobil CN would receive and Section 6(d).[10]

### C.    The Closing, Termination of the Restrictions on the Cash Waterfall, and Service of the Order of Attachment

Although irrelevant, PDVSA CN's account of the closing is inaccurate. PDVSA CN asserts that the Termination Agreement did not become effective until 4:49 PM. At approximately

---

[10] PDVSA CN incorrectly implies that Mobil CN's attachment is inconsistent with the spirit of the Lock-Up Agreement between PDVSA and the Bondholders. *See* Opp'n at 8. But, PDVSA CN admits that Mobil CN was not a party to that agreement. *See id.* at 10.

- 6 -

2:40 PM, however, counsel for the Bank of New York informed lawyers at the closing that it had released the restrictions on the cash waterfall, including transferring Mobil CN's funds in the cash waterfall to Mobil CN. *See* Declaration of Mitchell A. Seider ¶¶ 5, 7. The Bank of New York announced this step after the Federal Reserve reference numbers for the wire transfers to pay the bondholders and bank lenders under the relevant agreements had been received.[11] Mobil CN served the Order of Attachment at 4:10 PM -- after the restrictions were released.

PDVSA CN raises the timeline to create the false impressions that the timing of service of the attachment prevented completion of the closing and that a slight delay in service would have prevented the attachment. *See* Opp'n at 16. This is a red herring. Regardless of which timeline is correct, the transaction closed, and the attachment could not have interfered with the closing. PDVSA CN admits that "at 4:49 pm on December 28, 2007, the Tender Offer and Bank Debt Repayment were completed, the Termination Agreement became effective, and the Closing became effective." Opp'n at 16. Further, PDVSA CN requested, pursuant to Section 3(b) of the Termination Agreement, that its funds in the cash waterfall remain at the Bank of New York (at least temporarily). *See* Ex. 3 to Pl.'s Mem. to Confirm (Flow of Funds Memo). Under either timeline, PDVSA CN was not deprived of its rights under the Termination Agreement, and its funds remained at the Bank of New York, consistent with its request and with the Termination Agreement. The attachment now secures those funds.

**D.    Mobil CN Did Not Breach Any Representation and Warranty in the Termination Agreement**

PDVSA CN attempts to distract the Court from the issues relevant to the motions to confirm by alleging that Mobil CN breached its representation and warranty in Section 6(d).[12]

---

[11] *See* Seider Decl. ¶ 6. To the extent there is any dispute about when the restrictions on the cash waterfall were released, Mobil CN received its proceeds from the cash waterfall at least as early as 4:18 PM. *See* Davidson Decl., Ex. 3 (Citibank Wire Transfer Confirmation).

[12] PDVSA CN also misapplies the implied covenant of good faith and fair dealing. In the cases cited by PDVSA CN, Opp'n at 20-21, the covenant prohibited a party from engaging in

Opp'n at 17-21. This argument distorts Section 6(d), which is a representation and warranty by each party only as to orders "binding on it or affecting its property." The representations in Section 6 are expressly limited to each signing entity, and relate only to each party's individual power to enter into the contract. The parties warrant nothing about other parties' property. The entire section, only excerpts of which were submitted by PDVSA CN, reads:

> **Each of the . . . Parties** hereby represents and warrants that . . .
>
> (a) *it* has all corporate power and authority to (i) execute and deliver this Agreement and (ii) perform and incur all *its* other obligations provided for herein;
>
> (b) this Agreement has been duly authorized, executed and delivered *by it* . . . .;
>
> (c) all authorizations, approvals and consents from governmental authorities that are necessary for the execution and delivery *by it* of this Agreement and the performance of *its* other obligations hereunder have been obtained and are in full force and effect; and
>
> (d) there is no provision of law, statute, regulation, rule, *order*, injunction, decree, writ or judgment (including without limitation any foreign exchange controls for which appropriate approvals and other similar authorizations have not been obtained), no provision of *its* charter or other constitutive documents and no provision of any mortgage, indenture, contract or other agreement *binding on it or affecting its properties* that, in each case, would prohibit, conflict with or in any way prevent *the execution, delivery or performance of the terms of this Agreement.*

Termination Agreement § 6 (emphasis added). Defendant has failed to explain why Section 6(d)

---

conduct that would completely deprive the other party of the benefit for which it contracted. Here, by contrast, PDVSA CN received the benefit for which it contracted under the Termination Agreement: the Tender Offer and the Bank Debt Repayment both occurred. Similarly, PDVSA CN accuses Mobil CN of breaching "expressed and implied representations made to PDVSA CN." *See* Opp'n at 2, 6. This is not so. Mobil CN's statements of mutual interest were not warranties, and Mobil CN cooperated in good faith to complete the restructuring of the financing, which occurred without issue. Moreover, these arguments, like PDVSA CN's Section 6(d) argument, are irrelevant to a motion to confirm. Finally, it is worth noting that in Section 1.14 of the Amended and Restated Bond Indenture, inserted at Mobil CN's request, Mobil CN made clear that it was reserving all of its claims against PDVSA CN: "Nothing in this Bond Indenture or in any other instrument executed simultaneously or in connection therewith shall constitute, or be construed as, an express or implied waiver of, or shall otherwise impair or prejudice, any claim or defense that either Borrower or any of its Affiliates may have against the other Borrower or any of its Affiliates." *See* Davidson Decl., Ex. 4.

should be read inconsistently from its clear text or these surrounding provisions.[13]

### 1.    Section 6(d) is Expressly Limited to Orders Binding on Mobil CN

By its plain terms, Section 6(d) limits Mobil CN's warranties to orders binding upon Mobil CN and affecting Mobil CN's property. Under New York law, which governs the Termination Agreement (§ 10(a)), a warranty will be construed broadly, *unless* it is expressly limited. *See Metro. Coal Co. v. Howard*, 155 F.2d 780 (2d Cir. 1946). Section 6(d) expressly limited each Party's warranty to orders "binding on it or affecting its properties." Defendant ignores this express limiting language and suggests the anomalous interpretation that Mobil CN and the other parties to the Termination Agreement were warranting that there were no orders binding or affecting any of the parties' properties. Such a construction would require a party to have unlimited knowledge about every other party and defies the plain language of the contract.

The limitation of Section 6(d) is objectively clear and unambiguous. Each of the contracting parties, including Mobil CN, represented only that there were no orders "binding on it" that would interfere with the Termination Agreement. The object in construing a contract term "is to ascertain the meaning and intent of the parties," and "[i]f the language used by the parties is plain, complete, and unambiguous, the intention of the parties must be gathered from that language, and from that language alone . . . ." *Williston on Contracts* § 31:4 (2007); *see, e.g., Bethlehem Steel Co.*, 2 N.Y.2d 456, 460 (1957); *Moore v. Kopel*, 653 N.Y.S.2d 927, 929 (1st Dep't 1997) Here, the language is plain and unambiguous. There is no reason to resort to PDVSA CN's subjective intent argument that PDVSA CN would not have closed had it understood that Section 6(d) did not preclude attachments. Opp'n at 2.

### 2.    The Termination Agreement Was Fully Executed and Performed

Even if Section 6(d) could be read to include orders and encumbrances other than those

---

[13] *See Rentways, Inc. v. O'Neil Milk & Cream Co.*, 308 N.Y. 342, 347 (1955) (a contract must be construed in a manner that "best accords with the sense of the remainder of the contract").

binding upon Mobil CN, the Termination Agreement was not breached. Section 6(d) explicitly covers only orders that "conflict with or in any way prevent the execution, delivery or performance of the terms of this Agreement." Termination Agreement ¶ 6(d). Here, PDVSA CN admits that the "Termination Agreement became effective, and the Closing became effective," Opp'n at 16, notwithstanding Mobil CN's levy of the attachment order.

Each party, including PDVSA CN, bargained for and received benefit from the Contract. The purpose of the Contract was to close the tender offer and repay the bank debt. Both of those events occurred. PDVSA's funds were freed from any rights of the Bondholders and were released for other purposes, including payment of its obligation to Mobil CN. PDVSA CN's funds became free from the rights of the Bondholders as soon as the "irrevocable instructions" were lifted. PDVSA CN received the benefits to which it was entitled under the Contract. There was no breach -- nor were there any damages -- caused by the Order of Attachment.[14]

## CONCLUSION

For the foregoing reasons, Mobil CN respectfully requests that this Court confirm the two Orders of Attachment.[15]

---

[14] PDVSA CN claims that Mobil CN reaped substantial benefit from the restructuring at minimal cost, to the detriment of PDVSA CN. *See* Opp'n at 7. First, PDVSA restructured the financing because it had to: Venezuela's expropriation of Mobil CN's interests was a "potential event of default," which could have led to the Lenders triggering multiple default provisions. Second, Mobil CN did not obtain "substantial economic benefits." Any benefit received -- access to the cash waterfall and return of pledged shares in three companies -- must be measured against the expropriation, valued in excess of $12 billion. Mobil CN had access to the cash waterfall prior to the expropriation. It was only after the "default" that Mobil CN's access was limited. The value of the shares is also limited. Two of the companies are worthless due to the expropriation. The third company's value depends on the award it receives in the ICC or ICSID arbitration. The most Mobil CN obtained in new value amounts to slightly over $60 million.

[15] PDVSA CN "reserved" its challenge to the subject matter jurisdiction in the absence of a pending arbitration. *See* Opp'n at 1 n.1. As of January 25, 2008, Mobil CN commenced arbitration against PDVSA CN and PDVSA. PDVSA CN's reservation of rights to challenge jurisdiction is now moot. PDVSA CN also reserved its right to challenge service of process. Process was served on January 11, 2008, via the Hague Convention and received by the Venezuelan Central Authority on January 15, 2008.

Dated:  New York, New York
        February 4, 2008

Respectfully submitted,

Howard H. Stahl (admitted *pro hac vice*)
Steven K. Davidson (admitted *pro hac vice*)
Mark A. Moran (admitted *pro hac vice*)
Michael J. Baratz (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
tel: (202) 429-3000
fax: (202) 429-3902

Michael C. Miller (MM-4632)
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
tel: (212) 506-3900
fax: (212) 506-3950
*Counsel for Plaintiff*

Of Counsel:

Toni D. Hennike
Luis Marulanda del Valle
Law Department
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas 77002
tel: (713) 656-3636
fax: (713) 656-3496

Charles A. Beach (CB-6791)
Law Department
EXXON MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas 75039-2298
tel: (972) 444-1466
fax: (972) 444-1435