**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| MOBIL CERRO NEGRO, LTD., | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 07 Civ. 11590 (DAB) |
| v. | ) ) | |
| PDVSA CERRO NEGRO S.A., | ) ) ) ) ) | |
| Defendant. | ) ) | |

## PROOF OF SERVICE UPON DEFENDANT
## PDVSA CERRO NEGRO S.A.

Howard H. Stahl (admitted *pro hac vice*)
Steven K. Davidson (admitted *pro hac vice*)
Mark A. Moran (admitted *pro hac vice*)
Michael J. Baratz (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
tel: (212) 506-3900
fax: (212) 506-3950

Michael C. Miller (MM-4632)
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
tel: (212) 506-3900
fax: (212) 506-3950

*Counsel for Plaintiff*

*Of Counsel:*

Toni D. Hennike
Luis Marulanda del Valle
Law Department
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas 77002
tel: (713) 656-3636
fax: (713) 656-3496

Charles A. Beach (CB-6791)
Law Department
EXXON MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas 75039-2298
tel: (972) 444-1466
fax: (972) 444-1435

Date:   May 2, 2008

Plaintiff Mobil Cerro Negro, Ltd. ("Mobil CN") respectfully submits the attached documents proving that copies of the summons and complaint in this action, with appropriate translations, were served on Defendant PDVSA Cerro Negro S.A. ("PDVSA CN") in Venezuela pursuant to Fed. R. Civ. P. 4, Articles 5 and 6 of the Hague Convention on the Service Abroad of Judicial and Extraterritorial Documents in Civil or Commercial Matters ("Hague Convention"), and Order of the Court dated March 3, 2008 declaring that the Federal Rules of Civil procedure, and not N.Y. CPLR § 6213, govern service of process in this action. Pursuant to *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 295 (2d Cir. 2005), these documents constitute service as of the date hereof.

| | |
|---|---|
| Exhibit A | Request for Service Abroad (in English and Spanish) mailed to the Ministry of Foreign Affairs, Caracas, Venezuela on January 11, 2008, requesting service via the Hague Convention upon PDVSA CN and including: |

  1.    Cover Letter

  2.    Request for Service Abroad of Judicial or Extrajudicial Documents

  3.    Summary of the Document to be Served

  4.    Certificate

  5.    Notarized Certification of Translation

  6.    Summons

  7.    Complaint

| | |
|---|---|
| Exhibit B | Fed Ex Delivery Confirmation Report |
| Exhibit C | Results of the Hague Convention Request (in English and Spanish) including: |

  1.    Letter from the Venezuela Embassy Forwarding the Results of the Request for Service to the U.S. Department of Justice

  2.    Cover Page for the Results from the Judicial Authority Civil Jurisdiction Archive

3.    Letter from the Venezuelan Ministry of Interior Relations and Justice to the Court of Original Jurisdiction in Civil, Commercial, and Traffic Matter in the Metropolitan Area of Caracas Requesting that the Court Process the Request for Service with the documents to be served attached

4.    Venezuelan Court Order Requiring the Bailiff to Serve the Summons and a Copy of the Complaint

5.    Official Letter No. 08-0237 Addressed to PDVSA Cerro Negro Joint Stock Company

6.    Report Confirming Service of the Summons and Complaint by Mr. Dimar Rivero, Chief Bailiff, on February 25, 2008 at 2:29 p.m.

7.    Court Order Requiring Return of Request by Official Letter

8.    Official Letter No. 08-0293 Declaring to the Ministry of Interior Relations and Justice that the Service Request Has Been Performed

9.    Notarized Certification of Translation

Dated:   May 2, 2008

Respectfully submitted,

/s/
Howard H. Stahl (admitted *pro hac vice*)
Steven K. Davidson (admitted *pro hac vice*)
Mark A. Moran (admitted *pro hac vice*)
Michael J. Baratz (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
tel: (202) 429-3000
fax: (202) 429-3902

Michael C. Miller (MM-4632)
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, New York  10019
tel: (212) 506-3900
fax: (212) 506-3950
*Counsel for Plaintiff*

Of Counsel:

Toni D. Hennike
Luis Marulanda del Valle
Law Department
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas  77002
tel:  (713) 656-3636
fax:  (713) 656-3496

Charles A. Beach (CB-6791)
Law Department
EXXON MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas  75039-2298
tel:  (972) 444-1466
fax:  (972) 444-1435

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Proof of Service was served this 2nd day

of May, 2008, in the manner indicated, on the following counsel of record:

Joseph D. Pizzurro (via electronic transmission)
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178
tel:  (212) 696-6196
fax: (212) 697-1559
email: jpizzurro@cm-p.com

*Counsel for PDVSA Cerro Negro*


___/s/_____
Michael J. Baratz

# EXHIBIT A-1

# STEPTOE & JOHNSON LLP

### ATTORNEYS AT LAW

Michael J. Baratz
202.429.6468
mbaratz@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC  20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

January 9, 2008

<u>Via OVERNIGHT DELIVERY</u>

Ministry of Foreign Affairs
Av. Urdaneta
Torre MRE
al lado del Correo de Carmelitas
Caracas
Venezuela

Re:    **Hague Convention Service of Documents**

Dear Sir or Madam:

Enclosed please find an original and one copy of papers we would like to serve on the party indicated in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which was signed at The Hague on November 15, 1965.

For each document, we also have appended a Spanish translation.  If I can be of any assistance with respect to the service of these documents, please do not hesitate to contact me.  Thank you in advance for your assistance and we look forward to receiving the executed certificate that service has been effectuated.

Very truly yours,

Michael J. Baratz

Enclosures

WASHINGTON  •  NEW YORK  •  CHICAGO  •  PHOENIX  •  LOS ANGELES  •  CENTURY CITY  •  LONDON  •  BRUSSELS

STEPTOE JOHNSON
ATTORNEYS AT LAW

Michael J Baratz
202 429 6468
mbaratz@steptoe.com

1330 Connecticut Avenue. NW
Washington. DC 20036-1795
Tel 202.429.3000
Fax 202 429 3902
steptoe com

9 de enero de 2008

<u>Por medio de ENTREGA NOCTURNA</u>

Ministerio de Asuntos
Exteriores
Av. Urdaneta
Torre MRE
al lado del Correo de Carmelitas
Caracas
Venezuela

Ref:   **Notificación de documentos por Convención de la Haya**

Estimado señor o señora:

Le adjuntamos un original y una copia de los documentos que deseamos dar traslado a la parte indicada en conformidad con la Convención sobre Notificación en el Extranjero de Documentos Judiciales y Extrajudiciales en Materia Civil o Comercial, firmada en La Haya el 15 de noviembre de 1965.

Hemos adjuntado para cada documento la traducción correspondiente en español. En caso de poder ser de alguna ayuda con respecto a la notificación y traslado de estos documentos, sírvase ponerse en contacto con nosotros. Le agradecemos anticipadamente por su asistencia y quedamos a la espera de recibir el certificado firmado como constancia de recibo.

Saluda atentamente,

Michael J. Baratz

Adjuntos

# EXHIBIT A-2

**U.S. Department of Justice**
United States Marshals Service



# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou
extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| | |
|---|---|
| **Identity and address of the applicant**<br>*Identité et adresse du requérant*<br><br>Steven K. Davidson<br>Steptoe & Johnson LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036 | **Address of receiving authority**<br>*Adresse de l'autorité destinataire*<br><br>Ministry of Foreign Affairs<br>Av. Urdaneta<br>Torre MRE<br>al lado del Correo de Carmelitas<br>Caracas<br>Venezuela |

**The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity
with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)**
*Le requérant soussigné a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous
énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au
destinataire, à savoir:*
*(identité et adresse)*

PDVSA Cerro Negro S.A., Avenida Veracruz con Calle Cali,

Edificio Pawa, Las Mercedes, Ciudad, Venezuela

☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
   *a) selon les formes légales (article 5 alinéa premier, lettre a).*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
   *b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
   *c) le cas échéant, par remise simple (article 5, alinéa 2).*

**The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes
with a certificate as provided on the reverse side.**
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec
l'attestation figurant au verso.*

| | |
|---|---|
| <u>List of documents</u><br>*Enumération des pièces*<br><br>Summons to PDVSA Cerro Negro S.A.;<br>Complaint for Order of Attachment in Aid of<br>International Arbitration | Done at _____, the _____<br>*Fait à* _____, *le* _____<br><br>Signature and/or stamp<br>*Signature et/ou cachet* |

Form USM-94<br>Est. 11/77<br>(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)

Departamento de Justicia de los EE. UU.
Servicio de Oficiales de Justicia de EE. UU.
(Marshals Service)



# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS
*PETICIÓN*
*DE NOTIFICACIÓN Y TRASLADO DE DOCUMENTOS JUDICIALES Y*
*EXTRAJUDICIALES*

**Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.**
*Convención sobre notificación en el extranjero de documentos judiciales y extrajudiciales en
material civil o comercial, firmada en La Haya el 15 de noviembre de 1965.*

| Identity and address of the applicant<br>*Identidad y domicilio del solicitante* | Address of receiving authority<br>*Domicilio de la autoridad receptora* |
|---|---|
| Steven K. Davidson Steptoe & Johnson LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036 | Ministerio de Asuntos Exteriores<br>Av. Urdaneta<br>Torre MRE<br>al lado def Correo de Carmelitas<br>Caracas<br>Venezuela |

**The undersigned applicant has the honour to transmit -- in duplicate -- the documents listed below and, in conformity with article 5
of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e., (identity and address)**
*El que suscribe tiene el honor de emitir –por duplicado - los documentos que se enumeran a continuación, conforme con el artículo de la
Convención antes indicada, y solicita el traslado y notificación inmediata de un ejemplar al destinatario, a saber: (identidad y domicilio)*

> PDVSA Cerro Negro S.A., Avenida Veracruz con Calle Cali,
> Edificio Pawa, Las Mercedes, Ciudad, Venezuela

x  (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
   *a)  conforme a las disposiciones legales (artículo 5 de la Convención, párrafo 1, sección a).**

☐  (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
   *b)  conforme al método particular siguiente (artículo 5, párrafo 1, sección b) :*

   _____

   _____

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
   *c)  por entrega al destinatario, si acepta en forma voluntaria (artículo 5, párrafo 2).*

**The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes with a
certificate as provided on the reverse side.**
*La autoridad debe devolver al solicitante una copia de los documentos y sus anexos con un certificado como el que figura al dorso.*

List of documents                              Done at _____ the _____
*Listado de documentos*                        *Emitidos en* _____ , *el*

Notificación a PDVSA Cerro Negro S.A.;
Demanda de Orden de Embargo en Ayuda de        Signature and/or stamp
Arbitraje Internacional                          *firma y/o sello*

---

*  Delete if Inappropriate                                        Form USM-S4
*Eliminar si no corresponde.*                                     Est. 11/77
                                    **(Anteriormente 08D-116, a su vez el formulario LAA-116 anterior, ambos todavía en uso)**

# EXHIBIT A-3

## SUMMARY OF THE DOCUMENT TO BE SERVED
### *ÉLÉMENTS ESSENTIELS DE L'ACTE*

**Convention on the service abroad of judicial and extrajudicial documents In civil or commercial matters, signed at The Hague, November 15, 1965.**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa quatre)*

**Name and address of the requesting authority:**
*Nom et adresse de l'autorité requérante:*

Steven K. Davidson, 1330 Connecticut Avenue, NW, Washington, DC 20036

**Particulars of the parties:**
*Identité des parties:*

Attorney for Plaintiff, Duly authorized to request service pursuant to Rule 4 of U.S. Rules of Civil Procedure

### JUDICIAL DOCUMENT
*ACTE JUDICIA IRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

These are initial papers filed in a lawsuit pending in a United States District Court

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas échéant, le montant du litige:*

Attachment proceeding in aid of international arbitration

**Date and place for entering appearance:**
*Date et lieu de la comparution:*

Appearances have already been entered

**Court which has given judgment\*\*:**
*Juridiction qui a rendu la décision:*

**Dale of judgment\*\*:**
*Date de la décision:*

**Time limits stated in the document\*\*:**
*Indication des délais figurant dans l'acte:*

Response is ordinarily due 20 days after service

### EXTRAJUDICIAL DOCUMENT
*ACTE EXTRAJUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

**Time limits stated in the document:\*\***
*Indication des délais figurant dans l'acte:*

**SUMMARY OF THE DOCUMENT TO BE SERVED**
*DESCRIPCIÓN DEL DOCUMENTO*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15,1965.**

*Convención sobre notificación y traslado en el extranjero de documentos judiciales y extrajudiciales en materia civil o comercial, firmada en La Haya el 15 de noviembre de 1965.*

**(article 5, fourth paragraph)**
*(artículo 5, párrafo cuarto)*

**Name and address of the requesting authority;**
*Nombre y domicilio del solicitante:*
Steven K. Davidson, 1330 Connecticut Avenue, NW, Washington, DC 20036 _____

**Particulars of the parties:**
*Identificación de las partes:*
Abogado de la Parte Actora, debidamente autorizado para solicitar notificación y traslado en virtud de la Regla 4 de las Reglas de Procedimiento Civil de los EE. UU.

**JUDICIAL DOCUMENT**
*DOCUMENTO JUDICIAL*

**Nature and purpose of the document:**
*Naturaleza y objeto del documento:*
Documentos iniciales presentados en una acción legal pendiente en un Tribunal de Primera Instancia de los Estados Unidos

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Naturaleza y propósito de las actuaciones y, si corresponde, la pretensión objeto de la causa:*
Procedimiento de embargo en ayuda de arbitraje internacional

**Date and place for entering appearance:**
*Fecha y lugar de comparecencia:*
Las comparecencias han sido registradas

**Court which has given judgment**:**
*Tribunal que dictó sentencia**:*
_____

**Date of judgment**:**
*Fecha de la sentencia**:*

**Time limits stated in the document**:**
*Plazos indicados en el documento**:*
El plazo para la contestación es generalmente de 20 días después de recibida la notificación _____

**EXTRAJUDICIAL DOCUMENT**
*DOCUMENTO EXTRAJUDICIAL*

**Nature and purpose of the document:**
*Naturaleza y objeto del documento:*
_____

**Time limits stated In the document:**
*Plazos indicados en el documento**:*
_____

# EXHIBIT A-4

# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1)  que la demande a été exécutée*
        – the (date) -- *le (date)* _____
        -- at (place, street, number) - *à (localité, rue, numéro)*

_____

      -- in one of the following methods authorized by article 5:
      *-- dans une des formes suivantes prévues à l'article 5:*

        ☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
           *a) selon les formes légales (article 5. alinéa premier, lettre a)*

        ☐ (b) in accordance with the following particular method:
           *b) selon la forme particulière suivante:* _____

        ☐ (c) by delivery to the addressee, who accepted it voluntarily.*
           *c) par remise simple.*

    The documents referred to in the request have been delivered to:
    *Les documents mentionnés dans la demande ont été remis à:*

      - (identity and description of person)
      *- (Identité et qualité de la personne)*

_____

      - relationship to the addressee family, business or other
      *- liens de parenté de subordination ou autres avec le destinataire de l'acte:*

_____

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément  à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

**ANNEXES**
*Annexes*

Documents returned:
*Pieces renvoyées*

_____
_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

_____

Done at _____ , the _____
*Fait à* _____ , *le* _____

Signature and/or stamp
*Signature et/ou cachet*

_____

# CERTIFICATE
## *CERTIFICACIÓN*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*El que suscribe tiene el honor de certificar, en conformidad con al artículo 6 de la Convención,*

1) that the document has been served *
*1) que se ha dado traslado del documento\**

- the (date) -- *la (fecha)* _____
- at (place, street, number) - en *(lugar, calle, número)*
  _____

- in one of the following methods authorized by article 5:
- *por uno de acuerdo con uno de los métodos siguientes previstos en el artículo 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*,
*(a) conforme a las disposiciones legales (artículo 5 de la Convención, párrafo 1, sección a,\**

☐ (b) in accordance with the following particular method:
*(b) según el método particular siguiente:*

☐ (c) by delivery to the addressee, who accepted it voluntarily*
*(c) entrega al destinatario, quien aceptó en forma voluntaria\**

The documents referred to in the request have been delivered to:
*Los documentos mencionados en la petición han sido entregados a:*

- (identity and description of person)
- *(Identificación y descripción de la persona)*

_____

- relationship to the addressee family, business or other
- *relación de parentesco, de trabajo u otra con el destinatario:*

_____

2) that the document has not been served, by reason of the following facts*:
*2) que la demanda ha sido notificada, de acuerdo con los hechos siguientes\*:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*En conformidad con el artículo 12, párrafo 2 de la Convención, el solicitante debe pagar o reembolsar los gastos que se describen en la declaración adjunta\**

ANNEXES
*Anexos*

Documents returned:
*Documentos devueltos:*

_____

_____

_____

In appropriate cases, documents establishing the service:
*En caso que corresponda, constancia de notificación:*

Done at _____, the _____
*Emitido en                                    , el*

Signature and/or stamp
*Firma y/o sello*

_____

_____

_____

# EXHIBIT A-5



**UNIVERSE**
TECHNICAL TRANSLATION

9225 Katy Freeway, Suite 400
Houston, Texas 77024 U.S.A.

Tel: 713.827.8800
Fax: 713.464.5511

Email: universe@pdq.net
www.universetranslation.com

## CERTIFICATION AND NOTARIZATION

THE UNDERSIGNED, having been duly sworn, hereby states and deposes that to the best of our knowledge, the translation of the following documents from English into Spanish are true and valid translations of the originals, on this 10th of January, 2008.

- **Hague Convention Service of Documents, dated: January 9th, 2008**

Francisco Carrión

State of Texas
County of Harris

THE UNDERSIGNED NOTARY PUBLIC in and for the State of Texas hereby attests that the above Francisco Carrión did personally appear before her on the 10th of January, 2008 and, having been duly sworn, did execute this document, in witness thereof I hereby affix my signature.



Marion Rifkind

M. RIFKIND
Notary Public, State of Texas
My Commission Expires
JAN. 7, 2009

Multilingual Resources For All International Projects



**UNIVERSE**
TECHNICAL TRANSLATION

9225 Katy Freeway, Suite 400
Houston, Texas 77024 U.S.A.

Tel: 713.827.8800
Fax: 713.464.5511

Email: universe@pdq.net
www.universetranslation.com

## CERTIFICATION AND NOTARIZATION

THE UNDERSIGNED, having been duly sworn, hereby states and deposes that to the best of our knowledge, the translation of the following documents from English into Spanish are true and valid translations of the originals, on this 9th of January, 2008.

- **Complaint for Order of Attachment in Aid of International Arbitration Mobil CN v. PDVSA CN S.A.**
- **Summons in a civil action to: PDVSA CN**

Francisco Carrión

State of Texas
County of Harris

THE UNDERSIGNED NOTARY PUBLIC in and for the State of Texas hereby attests that the above Francisco Carrión did personally appear before her on the 9th of January, 2008 and, having been duly sworn, did execute this document, in witness thereof I hereby affix my signature.

Marion Rifkind

M. RIFKIND
Notary Public, State of Texas
My Commission Expires
JAN. 7, 2009

Multilingual Resources For All International Projects

H o u s t o n    ·    L o n d o n    ·    M o s c o w    ·    B a k u

# EXHIBIT A-6

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Southern _____        District of        _____ New York _____

V.

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

## 07 CV 11590

## JUDGE BATTS

TO: (Name and address of Defendant)

PDVSA Cerro Negro S.A.
Avenida Veracruz con Calle Cali
Edificio Pawa, Las Mercedes, Ciudad
Venezuela

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK                                                          DATE        DEC 2 7 2007

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

　　Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|
| | | |

## DECLARATION OF SERVER

　　I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____　　_____
　　　　　　　　　　Date　　　　　　　　　*Signature of Server*


　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

A0 440 (Rev. 8/01) Citación en una acción civil

# Tribunal de Primera Instancia de Estados Unidos

Distrito Sur de Nueva York

CITACIÓN EN UNA ACCIÓN CIVIL

V.

NÚMERO DE CAUSA:
07 CV 11590
JUEZ BATTS

PARA: (Nombre y dirección del Demandado)

PDVSA Cerro Negro S.A. Avenida
Veracruz con Calle Cali Edificio
Pawa, Las Mercedes, Ciudad
Venezuela

**POR LA PRESENTE SE LE NOTIFICA** y exige que diligencie al ABOGADO DE LA PARTE ACTORA
(nombre y dirección)

Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019

una contestación a la demanda que se le notifica por intermedio de esta citación, dentro de un plazo de 20 días a
partir de esta notificación, sin incluir el día de recepción. En caso de incumplimiento, se dictará una sentencia en
rebeldía en su contra por la reparación exigida en la demanda. Toda contestación que notifique a las partes de
esta acción legal deberá ser presentada ante el Secretario de este Juzgado en un plazo razonable a partir de
recibida la notificación.

J. MICHAEL McMAHON                          27 de Diciembre, 2007
SECRETARIO                                  FECHA
/Firmado/ Marcos Quintero
(Por) SUBSECRETARIO

AO 440 (Rev. 8/01) Citación en una acción civil

| CONSTANCIA DE TRASLADO Y NOTIFICACIÓN | |
|---|---|
| El traslado de la Citación y Demanda fue hecho por mí[1] | FECHA |
| NOMBRE DEL OFICIAL NOTIFICADOR *(IMPRENTA)* | CARGO |

*Marcar la opción correcta para indicar el modo de notificación*

□   Entregado en persona al demandado. Lugar de notificación:

□   Se dejaron copias en la vivienda o domicilio habitual del demandado en manos de una persona de edad y criterio adecuados con residencia en el lugar.

      Nombre de la persona donde se dejó la citación y demanda:

□   Devuelto sin cumplir con las formalidades:

□   Otro (especificar):

| DECLARACIÓN DE CARGOS DEL TRASLADO Y NOTIFICACIÓN | | |
|---|---|---|
| VIÁTICOS | TRASLADO Y NOTIFICACIÓN | TOTAL<br>$0.00 |

| DECLARACIÓN DEL OFICIAL NOTIFICADOR |
|---|

      Declaro bajo delito de perjurio conforme a las leyes de los Estados Unidos de Norteamérica que la información precedente contenida en la Constancia de Traslado y Notificación y la Declaración de los Cargos de Traslado y Notificación es verdadera y correcta.

Firmado el _____

     Fecha                 *Firma del Oficial Notificador*

                                      *Domicilio del Oficial Notificador*

(1) Con respecto a quién puede diligenciar una citación ver Regla 4 de las Reglas Federales de Procedimiento Civil.

# EXHIBIT A-7

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MOBIL CERRO NEGRO, LTD.<br>Shirley House,<br>50 Shirley St.,<br>Nassau, New Providence,<br>Commonwealth of the Bahamas<br><br>                    Plaintiff,<br><br>        v.<br><br>PDVSA CERRO NEGRO S.A.<br>Avenida Veracruz con Calle Cali,<br>Edificio Pawa, Las Mercedes, Ciudad,<br>Venezuela<br><br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

JUDGE BATTS

07 CV 11590

Civil Action No. _____

FILED
U.S. DISTRICT COURT
2007 DEC 27 AM 11:37
S.D. OF N.Y.

## COMPLAINT FOR ORDER OF ATTACHMENT
## IN AID OF INTERNATIONAL ARBITRATION

For its Complaint in this action, Plaintiff Mobil Cerro Negro, Ltd. ("Mobil CN") states as follows:

### NATURE OF ACTION

1.      This is an action for an order of attachment pursuant to New York law and in aid of a multi-billion dollar international arbitration that Mobil CN will commence in the Southern District of New York within thirty (30) days after the Order of Attachment is issued to recover damages from Defendant PDVSA Cerro Negro S.A. ("PDVSA CN") for PDVSA CN's breach of its contractual obligation to indemnify Mobil CN for part of the damages resulting from the

expropriation without compensation of Mobil CN's investment in the Bolivarian Republic of

Venezuela ("Venezuela").    Article 18.2 of the Cerro Negro Association Agreement (the

"Association Agreement") provides that "[a]ny dispute arising out of or concerning this

[Association] Agreement shall be settled exclusively and finally by arbitration. . . . Unless

otherwise agreed by all parties to the arbitration, all arbitration proceedings under this

Agreement shall be conducted in New York City . . . ." The arbitration will be commenced

pursuant to the Arbitration Rules of the International Chamber of Commerce ("ICC"). By this

action, Mobil CN seeks to preserve, pending arbitration, the only known assets within the United

States of PDVSA CN, a Venezuelan corporation. Without the requested provisional relief, any

award to which Mobil CN may be entitled will be rendered ineffectual.

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331

because this action arises under the laws of the United States, specifically Chapter Two of the

Federal Arbitration Act ("Convention on the Recognition and Enforcement of Foreign Arbitral

Awards"), *see* 9 U.S.C. § 203 (2000).

3.      Defendant is subject to personal jurisdiction in this Court because PDVSA CN

agreed to submit to arbitration in New York, New York.

4.      There is within the jurisdiction of this Court debt or property belonging to

PDVSA CN.

5.      Venue is appropriate in this district pursuant to 9 U.S.C. § 204 because this

district embraces the place designated in the agreement as the place of arbitration. In addition,

this district is one in which, save for the arbitration agreement between the parties, an action or

proceeding with respect to the controversy between the parties could have been brought. The

action could have been brought in this district because, pursuant to 28 U.S.C. § 1391(d), an alien may be sued in any district.

## THE PARTIES

6.    Plaintiff Mobil CN is a corporation organized and existing under the laws of the Commonwealth of the Bahamas with a principal place of business at Shirley House, 50 Shirley St., Nassau, New Providence, Commonwealth of the Bahamas. Mobil CN is a wholly-owned indirect subsidiary of Exxon Mobil Corporation.

7.    Defendant PDVSA CN (formerly known as Lagoven Cerro Negro, S.A.) is a corporation organized and existing under the laws of Venezuela with its principal place of business at Avenida Veracruz con Calle Cali, Edificio Pawa, Las Mercedes, Ciudad, Venezuela. PDVSA CN's only known commercial interest is in the Cerro Negro Joint Venture. PDVSA CN is a wholly-owned subsidiary of PDVSA Petróleo, S.A., which in turn is a wholly-owned subsidiary of Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of Venezuela, which itself is wholly-owned by the Government of Venezuela. PDVSA CN thus is a third-tier, indirectly owned subsidiary of the Government of Venezuela. PDVSA CN was created as an ordinary Venezuelan "sociedad anónima" (corporation) to engage in a commercial joint venture with Mobil and Veba Oil, a subsidiary of BP, two multi-national oil companies. PDVSA CN is a foreign corporation not qualified to do business within the state of New York.

## FACTUAL BACKGROUND

### The Genesis of the Cerro Negro Joint Venture

8.    In 1991, PDVSA, along with its wholly-owned operating subsidiary Lagoven, S.A. ("Lagoven"), identified Mobil Corporation ("Mobil") as a candidate possessing both the

- 3 -

expertise and financial capacity to participate in a potential joint venture to develop extra-heavy crude oil fields in the Orinoco Oil Belt in Venezuela.

9.    To induce foreign oil companies to participate in Orinoco Oil Belt ventures, such as the Cerro Negro Joint Venture, PDVSA and Venezuela designed a series of financial incentives meant to make the projects more attractive to potential investors.

10.    Those financial incentives included: (i) reduction of the applicable income-tax rate, which was granted by statute and incorporated in a "Framework of Conditions" approved by the Venezuelan Congress for the Cerro Negro Joint Venture; (ii) reduction of the applicable royalty, which was granted by means of a Royalty Reduction Agreement; and (iii) the right to expand the project, by individual decision or jointly with other participants, which was expressly incorporated in the Association Agreement.

### The Association Agreement

11.    On October 28, 1997, Lagoven Cerro Negro, S.A. ("Lagoven CN"), a Lagoven subsidiary, Mobil Producción e Industrialización de Venezuela, S.A. ("Mobil PIV"), and Veba Oel Venezuela Orinoco, GmbH ("Veba Orinoco") signed the Association Agreement, which established the Cerro Negro Association as an unincorporated joint venture (the "Cerro Negro Joint Venture") for a term of thirty-five years.

12.    On October 29, 1997, Mobil PIV assigned its rights in the Association Agreement to Mobil CN.

13.    On May 11, 1998, Lagoven CN changed its name to PDVSA CN. Until the expropriation described below, the parties' percentage interests in the Cerro Negro Joint Venture were: PDVSA CN – 41 2/3 %; Mobil CN – 41 2/3 %; and Veba Orinoco – 16 2/3 %.

- 4 -

14.    Under the Association Agreement and the companion Reservation and Dedication Agreement, Lagoven (which Venezuela entrusted with development of the Cerro Negro area), authorized PDVSA CN, Mobil CN, and Veba Orinoco to exploit the oil fields located in the Cerro Negro area during the 35-year life of the venture.

## PDVSA CN's Obligation to Indemnify Mobil CN

15.    In the Association Agreement, PDVSA CN undertook to indemnify Mobil CN, in an amount provided under the Agreement, for damages suffered by Mobil CN as a consequence of any Discriminatory Action that causes a Material Adverse Impact, as these terms are defined in the Association Agreement. Discriminatory Actions causing a Material Adverse Impact include the expropriation of Mobil CN's interests in the Cerro Negro Joint Venture as well as other adverse governmental measures that do not apply to corporations in general and that curtail Mobil CN's cash flows. *See* Baratz Decl., Ex. 1, Art. 15.1(b) (Association Agreement); Ex. 16, (Accounting Procedures Agreement).

16.    The Accounting Procedures Agreement, which is annexed to the Association Agreement, provides a formula to calculate the amount of indemnification owing by PDVSA CN for any Discriminatory Actions that have caused a Material Adverse Impact.

17.    According to Article 7.4 of the Accounting Procedures Agreement, to calculate the indemnification payable by PDVSA CN one must determine, first, the difference between the Net Cash Flow for a given fiscal year, taking into account the impact of the Discriminatory Action(s), and the Net Cash Flow for the same period without taking into account the impact of that (those) measure(s). The obligation to indemnify arises whenever that difference exceeds 5% of the participant's Net Cash Flow for that fiscal year.

18.     The indemnification so calculated is limited by a cap:  PDVSA CN's obligation to indemnify may not exceed the difference between the Threshold Cash Flow and the Adjusted Net Cash Flow, as these terms are defined in the Association Agreement.

19.     The Association Agreement provides that certain procedural steps be taken before PDVSA CN's obligation to indemnify becomes due.  Those steps have been taken.

20.     PDVSA CN is required to discharge its obligations under the Association Agreement in good faith.

### The Discriminatory Actions of the Venezuelan Government

21.     Since October 2004, Venezuela has taken a series of adverse measures against Mobil CN that constitute Discriminatory Actions under the Association Agreement because these measures are Governmental Actions, as defined in the Association Agreement, or changes in Venezuelan law that either do not apply to all companies in Venezuela or violate the Framework of Conditions.

22.     Those Discriminatory Actions include: (i) direct expropriation of Mobil CN's interests in the Association Agreement and the Cerro Negro Joint Venture without compensation; (ii) repudiation of the Royalty Reduction Agreement and imposition of the so-called extraction tax (a disguised royalty); (iii) refusal to allow the expansion of the Cerro Negro Project under previously agreed terms and conditions; (iv) income-tax increases to participants in Orinoco Oil Belt ventures in violation of the Framework of Conditions; and (v) imposition of production and export curtailments to the Cerro Negro Joint Venture in violation of the Association Agreement.

23.     On February 26, 2007, President Chávez of Venezuela issued Decree No. 5200 on the Migration to Mixed Companies of the Association Agreements of the Orinoco Oil Belt, as well as of the Shared-Risk-and-Profit Exploration Agreements (the "Nationalization Decree").

24.    The Nationalization Decree ordered, among other things, that the strategic associations located in the Orinoco Oil Belt, including Cerro Negro, be transformed ("migrated") into new mixed companies under the Organic Law on Hydrocarbons, in which PDVSA or one of its subsidiaries would hold at least a 60% participation interest.

25.    According to Article 4 of the Nationalization Decree, participants in so-called strategic associations located in the Orinoco Oil Belt, such as Mobil CN, had four (4) months (until June 26, 2007) to accept non-negotiable terms under which they could participate in the new mixed companies.

26.    The mixed companies would be established and would operate under a different statutory framework (the Organic Law on Hydrocarbons) and new contractual arrangements that would replace the previous association agreements. The new statutory and contractual regime not only substantially reduced the equity but also radically curtailed the rights of private companies, such as Mobil CN, participating in such projects.

27.    Further, under Article 3 of the Nationalization Decree, the operator of the Cerro Negro Project was required to surrender control of all activities and operations related to the project to Corporación Venezolana del Petróleo, S.A. ("CVP"), a wholly owned subsidiary of PDVSA, (or another affiliate of PDVSA) no later than April 30, 2007.

28.    On that date, under compulsion of the Nationalization Decree and with full reservation of rights, Operadora Cerro Negro, S.A., a wholly-owned subsidiary of Mobil that operated the Cerro Negro Project, surrendered to PDVSA Petróleo S.A., a subsidiary of PDVSA, the operations and control of all activities related to the Cerro Negro Project.

29.    To comply with the Nationalization Decree, Mobil CN discussed with Venezuela terms and conditions for Mobil CN's potential participation in the new mixed company seizing control of the Cerro Negro Project.

30.    As of June 26, 2007, Mobil CN refused to accept the non-negotiable terms and conditions that Venezuela proffered, which failed to provide compensation for the taking of Mobil CN's rights under the Association Agreement as required by applicable law.

31.    Article 5 of the Nationalization Decree provides that, if participants in strategic associations, such as the Mobil CN, refused to accept the terms for new mixed companies by the end of the four-month period contemplated in Article 4 (which expired on June 26, 2007), "the Republic, through Petróleos de Venezuela S.A. or any of its subsidiaries that may be designated for the purpose, shall directly assume the activities of the associations."

32.    As of June 27, 2007, Mobil CN was deprived of its participation in the activities and production of the Cerro Negro Joint Venture. Accordingly, as of that date, Venezuela expropriated, without compensation, the interests of Mobil CN in the Cerro Negro Joint Venture, including Mobil CN's interests in the Association Agreement. This expropriation was ratified by the National Assembly in October 2007.

### PDVSA CN's Breach of the Cerro Negro Association Agreement

33.    On June 22, 2007, Mobil CN notified both PDVSA CN and PDVSA in writing, pursuant to the Association Agreement, that the measures described above constitute Discriminatory Actions that may result in a Material Adverse Impact in fiscal years 2007 and future fiscal years.

34.    On June 25 and June 27, 2007, Mobil CN notified both PDVSA CN and PDVSA in writing, pursuant to the Association Agreement, that the measures described above constitute

Discriminatory Actions that have caused a Material Adverse Impact in fiscal years 2007 and future fiscal years, and demanded prompt payment of indemnification under the terms of the Association Agreement.

35.     On September 6, 2006, in an effort to mitigate damages as required by the Association Agreement, Mobil CN, and other related entities, filed a Request for Arbitration with the International Centre for Settlement of Investment Disputes seeking compensation from Venezuela for, among other things, the measures described above, including the expropriation of Mobil CN's interests in the Cerro Negro Joint Venture.

36.     PDVSA CN has acknowledged that the Nationalization Decree has effected an expropriation of Mobil CN's interest in the Cerro Negro Joint Venture.

37.     PDVSA CN has an obligation to indemnify Mobil CN for any Discriminatory Action that causes a Material Adverse Impact.

38.     As a result of Venezuela's expropriation of Mobil CN's interest in the Cerro Negro Joint Venture, Mobil CN has suffered a severe impairment in its Net Cash Flow for Fiscal Year 2007 and has been deprived of any Net Cash Flow for the remaining 28 fiscal years of the agreed term for the Cerro Negro Project.

39.     As a result of Discriminatory Actions, Mobil CN's Net Cash Flow will bear no reasonable relationship to the Threshold Cash Flow for fiscal year 2007 or for any of the 28 future fiscal years of the agreed term of the Association Agreement.

40.     In spite of acknowledging the expropriation of Mobil CN's interests in the Cerro Negro Joint Venture, and contrary to the duty to perform its contractual obligations in good faith, PDVSA CN has failed to take the steps contemplated in Article 15.1, paragraphs (a) and (b) of the Association Agreement.

## The Assets Within This Jurisdiction -- The Cash Waterfall

41.     The Cerro Negro Joint Venture was financed, in part, through a $600,000,000 bond financing issued by Cerro Negro Finance, Ltd. in 1998.

42.     Cerro Negro Finance, Ltd. is a special purpose vehicle incorporated under the laws of the Cayman Islands for the sole purpose of issuing bonds to finance a portion of the Cerro Negro Joint Venture.

43.     The original bond issued in 1998 was for $600,000,000.

44.     The amount currently outstanding on the bonds is estimated to be $538,000,000.

45.     The proceeds of the bonds were divided equally between Mobil CN and PDVSA CN to finance the Cerro Negro Joint Venture.

46.     The bondholders' interests were protected by a Common Security Agreement, which mandated several security interests as collateral as well as other restrictions on the right to use and dispose of certain assets.

47.     The security and other assets relevant to this action was a series of designated accounts established and maintained at banks in New York, New York.  Mobil CN and PDVSA CN were required to establish and maintain in New York (i) a segregated Disbursement Account, (ii) a segregated Operating Revenues Account, (iii) a segregated Distribution Account, (iv) a segregated Casualty Proceeds Account, (v) a segregated O&M Account, and (vi) a segregated Debt Service Account.  Additionally, Mobil CN was required to establish a Debt Service Reserve Account.

48.     These accounts, as well as other segregated accounts not maintained in New York, were collectively referred to as the Project Accounts.

49.     The Common Security Agreement established the "cash waterfall."

- 10 -

50.    Under the cash waterfall, proceeds from the Project Accounts were distributed in a particular order and for particular purposes. In general, distributions first went to fund the project and then, to repay the debt holders.

51.    As part of the collateral to guarantee the repayment of the bonds issued by Cerro Negro Finance, Ltd., Mobil CN pledged its rights in the cash waterfall as a security interest.

52.    PDVSA CN provided assurances to the bondholders in a different way; it issued irrevocable instructions to the Bank of New York, as security trustee, restricting the use of the funds to the terms of the Common Security Agreement.

53.    After the bondholders are paid off, however, the restrictions placed on the cash waterfall, including the irrevocable instructions, will be released.

54.    Consequently, PDVSA CN and Mobil CN will have unrestricted access to their respective portions of the cash waterfall.

55.    PDVSA has made an Offer to Purchase all of the outstanding bonds of Cerro Negro Finance, Ltd. on or before December 31, 2007.

56.    Once PDVSA purchases the outstanding bonds, the amounts remaining in the cash waterfall will be free of any restraints. PDVSA CN's share of the cash waterfall (currently approximately $300,000,000) is likely PDVSA CN's sole asset available to satisfy any eventual arbitral award.

57.    Upon PDVSA's purchase of the outstanding bonds, the irrevocable instructions will terminate and PDVSA CN will be free to transfer its share of the cash waterfall from New York and to dissipate the funds or to take other action to make the funds inaccessible for satisfying any arbitral award.

- 11 -

58.    The purpose of this action is to attach PDVSA CN's interest in the cash waterfall, to secure, at least partially, payment of the award that Mobil CN is likely to obtain in the ICC arbitration.

59.    Under the terms of the Offer to Purchase, consummation of the offer requires the valid tender of the bonds from bondholders representing seventy five percent (75%) of the aggregate principal amount of all outstanding bonds and receipt of the bondholders' consent to eliminate the security interest in the cash waterfall and to terminate the irrevocable instructions. Over ninety percent (90%) of the bondholders have tendered their bonds pursuant to the terms of the Offer to Purchase.

60.    On or around December 28, 2007, Venezuela or PDVSA will transfer to the Chase Manhattan Bank monies required to finance the purchase of any outstanding bonds of Cerro Negro Finance, Ltd. that are tendered in accordance with the terms of the Offer to Purchase.

61.    The total amount of funds required to purchase all of the outstanding bonds pursuant to the offer is estimated to be $538,000,000.

62.    On or after December 28, 2007, but before or by December 31, 2007, PDVSA will purchase any outstanding bonds of Cerro Negro Finance, Ltd. that are tendered in accordance with the terms of the Offer to Purchase.

63.    According to the Offer to Purchase, PDVSA CN's only assets are those relating to the Cerro Negro Project. After PDVSA purchases the bonds, the assets currently utilized in the operation of the Cerro Negro Project and the rights to develop the related oil reserves are being transferred to a new "Empresa Mixta" or mixed company, with which Mobil CN has no privity. The new Empresa Mixta will be owned 83% by CVP and 16 % by British Petroleum plc, through

Veba. Consequently, following the closing of PDVSA's Offer to Purchase the outstanding

bonds, the cash waterfall will be PDVSA CN's sole asset

64.    Once PDVSA purchases the bonds, the cash waterfall, which had been securing

repayment of the bonds, will be released and PDVSA CN's share of the cash waterfall will most

likely be transferred outside the reach of Mobil CN between December 28 and December 31,

2007.

**COUNT I**
**FOR ORDER OF ATTACHMENT**
**PURSUANT TO N.Y. C.P.L.R. § 7502(c) AND N.Y. C.P.L.R. ART. 62**

65.    Mobil CN realleges and incorporates Paragraphs 1-64 of the Complaint as if set

forth fully herein.

66.    Mobil CN will commence the ICC arbitration within 30 days of the granting of

the Order of Attachment, unless this deadline is extended by the Court.

67.    Mobil CN has a cause of action against PDVSA CN in the form of the claims to

be asserted in the ICC arbitration and those claims are ones in which Mobil CN is entitled to a

money judgment entered on a final arbitral award.

68.    It is probable that Mobil CN will succeed on the merits of its arbitration claims

because PDVSA CN's breach of the agreements is clear.

69.    Without an order of attachment, the arbitral award will be rendered ineffectual in

that, among other reasons, (1) the cash waterfall is the only viable source of funds to satisfy an

award in the ICC arbitration; (2) PDVSA CN's financial condition makes recovery unlikely

because PDVSA CN's interests in the Cerro Negro project are being transferred to the new

mixed company; (3) PDVSA CN's share of the cash waterfall easily can be — and most likely

- 13 -

will be — transferred out of the reach of creditors; and (4) Mobil CN will have difficulty enforcing the award outside of this jurisdiction against PDVSA CN.

      70.    The amount demanded from PDVSA CN exceeds all counterclaims known to Mobil CN.

## PRAYER FOR RELIEF

WHEREFORE, the Court should enter judgment in Mobil CN's favor and against

Defendant:

a.    Issuing an Order of Attachment to levy within this Court's jurisdiction, at

any time before the final arbitral award, upon such property in which the PDVSA CN has an

interest and upon such debts owing to PDVSA CN as will satisfy the amount specified in the

Order of Attachment;

b.    Ordering Defendants to pay Mobil CN's attorneys fees and costs

associated with this action; and

c.    Awarding all such other relief as may be just under the circumstances.

Dated:   New York, New York
         December 27, 2007

Respectfully submitted,

Michael C. Miller (MM-4632)
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
tel: (212) 506-3900
fax: (212) 506-3950

Howard H. Stahl (*pro hac vice* application pending)
Steven K. Davidson (*pro hac vice* application pending)
Mark A. Moran (*pro hac vice* application pending)
Michael J. Baratz (*pro hac vice* application pending)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
tel: (202) 429-3000
fax: (202) 429-3902

*Counsel for Plaintiff*

- 15 -

Of Counsel:

Toni D. Hennike
Luis Marulanda del Valle
Law Department
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas 77002
713-656-6716 (telephone)
713-656-3496 (telefax)

Charles A. Beach (CB-6791)
Law Department
EXXON MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas 75039-2298
972-444-1466 (telephone)
972-444-1435 (telefax)

**TRIBUNAL DE PRIMERA INSTANCIA DE ESTADOS UNIDOS
PARA EL DISTRITO SUR DE NUEVA YORK**

MOBIL CERRO NEGRO, LTD.
Shirley House,
50 Shirley St.,
Nassau, New Providence,
Commonwealth de las Bahamas

**JUEZ BATTS**
Número de causa: **07 CV 11590**

Parte actora,

v.

PDVSA CERRO NEGRO S.A. Avenida
Veracruz con Calle Cali, Edificio Pawa,
Las Mercedes, Ciudad, Venezuela

Parte demandada.

PRESENTADO
CORTE D EPRIMERA
INSTANCIA DE EE.UU.
27 DE DIC. DE 2007 11:37 AM
D.S. DE N.Y.

## DEMANDA DE ORDEN DE EMBARGO
### EN AYUDA DE ARBITRAJE
### INTERNACIONAL

En su demanda de la presente acción legal, la parte actora Mobil Cerro Negro, Ltd.

("Mobil CN") declara lo siguiente:

## NATURALEZA DE LA ACCIÓN

1. La presente es una acción para peticionar una orden de embargo en conformidad con

la ley de Nueva York y de ayuda en un procedimiento de arbitraje internacional por una suma

de miles de millones de dólares que Mobil CN iniciará en el Distrito Sur de Nueva York en un

plazo de treinta (30) días después de que se libre una Orden de Embargo para el cobro de

indemnización por daños y perjuicios por parte del Demandado PDVSA Cerro Negro S.A.

("PDVSA CN") por el incumplimiento de su obligación contractual de indemnizar a Mobil CN

- 1 -

por los daños y perjuicios resultantes de la expropiación sin ninguna compensación de la inversión de Mobil CN en la República Bolivariana de Venezuela ("Venezuela"). El artículo 18.2 del Convenio de Asociación Cerro Negro (el "Convenio de Asociación") estipula que "toda disputa que surja o esté relacionada con este Convenio [de Asociación] será resuelto exclusiva y definitivamente por arbitraje. .. . Excepto las partes acuerden lo contrario, los procedimientos de arbitraje bajo este Convenio se realizarán en la Ciudad de Nueva York ...." El arbitraje comenzará conforme a las Reglas de Arbitraje de la Cámara Internacional de Comercio ("ICC", por sus siglas en inglés). Con esta acción, Mobil CN pretende preservar, mientras se sustancie el arbitraje, los únicos activos conocidos dentro de los Estados Unidos de PDVSA CN, una corporación venezolana. Sin la reparación provisional solicitada, toda sentencia a la que pueda tener derecho Mobil CN será ineficaz.

## COMPETENCIA Y FUERO

2.      Se confiere a este Tribunal la competencia en razón de la materia por disposición del Título 28 del Código de Estados Unidos 28, Sección 1331 porque esta acción surge bajo las leyes de ese país, específicamente conforme al Capítulo 2 de la Ley Federal de Arbitraje ("Convención sobre el reconocimiento y ejecución de las sentencias arbitrales extranjeras"), *ver* Título 9 del Código de EE. UU., Sección 203 (2000).

3.      La jurisdicción sobre la persona del demandado corresponde a este Tribunal porque PDVSA CN aceptó someterse a arbitraje en la Ciudad de Nueva York, Estado de Nueva York.

4.      Se encuentra dentro de la competencia de este Tribunal la deuda o bienes que son propiedad de PDVSA CN.

5.      El fuero corresponde a este distrito en virtud de la Sección 204 del Título 9 del Código de EE. UU., ya que abarca el lugar designado en el acuerdo como lugar de arbitraje. Por

otra parte, este distrito es donde, salvo el acuerdo de arbitraje celebrado entre las partes, se puede

iniciar una acción judicial con respecto a la controversia entre las partes. La acción se puede

iniciar en esta jurisdicción porque, conforme a la disposición del Título 28 del Código de EE.

UU., Sección 1391(d), un extranjero puede ser demandado en cualquier distrito.

## LAS PARTES

6.      La parte actora, Mobil CN, es una corporación constituida y existenteen

conformidad con las leyes del Commonwealth de las Bahamas con domicilio legal en Shirley

House, 50 Shirley St., Nassau, New Providence, Commonwealth de las Bahamas. Mobil CN es

una subsidiaria indirecta en propiedad absoluta de Exxon Mobil Corporation.

7.      La parte demandada, PDVSA CN (conocida anteriormente como Lagoven Cerro

Negro, S.A.) es una corporación constituida y existente de acuerdo con las leyes de Venezuela

con domicilio legal en Avenida Veracruz con Calle Cali, Edificio Pawa, Las Mercedes, Ciudad,

Venezuela. El único interés comercial conocido de PDVSA CN reside en la empresa conjunta

Cerro Negro. PDVSA CN es una subsidiaria en propiedad absoluta de PDVSA Petróleo, S.A.,

que a su vez es una subsidiaria en propiedad absoluta de Petróleos de Venezuela, S.A.

("PDVSA"), la compañía petrolera nacional de Venezuela, propiedad absoluta del Gobierno de

Venezuela. PDVSA CN es de este modo una subsidiaria en propiedad indirecta de tercer nivel

del Gobierno de Venezuela. PDVSA CN fue creada como una "sociedad anónima" venezolana

ordinaria con el fin de participar en una empresa comercial conjunta con Mobil y Veba Oil,

subsidiaria de BP, dos compañías petroleras multinacionales. PDVSA CN es una corporación

extranjera no habilitada para hacer negocios en el Estado de Nueva York.

## ANTECEDENTES

### El origen de la empresa conjunta Cerro Negro

8.      En el año 1991, PDVSA, junto con su subsidiaria operativa en propiedad absoluta,

Lagoven, S.A. ("Lagoven"), identificó a Mobil Corporation ("Mobil") como candidato en posesión tanto de experiencia como de capacidad financiera para participar en una potencial empresa conjunta con el objeto de desarrollar yacimientos de petróleo crudo extra pesado en la Faja Petrolífera del Orinoco en Venezuela.

9.    Para inducir la participación de empresas petroleras extranjeras en los proyectos de esa zona, como por ejemplo, la empresa conjunta Cerro Negro, PDVSA y Venezuela crearon una serie de incentivos financieros para atraer a potenciales inversores.

10.    Entre esos incentivos financieros, cabe mencionar: (i) la reducción del tipo del impuesto sobre la renta, que se otorgó por decreto y se incorporó a un "Marco de Condiciones" aprobado por el Congreso de Venezuela para la empresa conjunta Cerro Negro; (ii) la reducción de la regalía, concedido por medio de un Acuerdo de Reducción de Regalías; y (iii) el derecho de extender el proyecto, por decisión individual o conjuntamente con otros participantes, lo cual fue expresamente incluido en el Convenio de Asociación.

## El Convenio de Asociación

11.    El 28 de octubre de 1997, Lagoven Cerro Negro, S.A. ("Lagoven CN"), una subsidiaria de Lagoven, Mobil Production e Industrialización de Venezuela, S.A. ("Mobil PIV"), y Veba Oil Venezuela Orinoco, GmbH ("Veba Orinoco") firmaron el Convenio de Asociación, que creaba la Asociación Cerro Negro como una empresa de inversión conjunta no incorporada (la "empresa conjunta Cerro Negro") por un plazo de treinta y cinco años.

12.    El 29 de octubre de 1997, Mobil PIV cedió a Mobil CN sus derechos de participación en el Convenio de Asociación.

13.    El 11 de mayo de 1998, Lagoven CN cambió su nombre a PDVSA CN. Hasta la expropiación que se describe más abajo, la participación de las partes en la empresa conjunta Cerro Negro era: PDVSA CN - 41 2/3 %; Mobil CN - 41 2/3 %; y Veba Orinoco - 16 2/3 %.

14.     Conforme al Convenio de Asociación y al Acuerdo de Reserva y Dedicación complementario, Lagoven (empresa a la que Venezuela encomendó el desarrollo de la zona de Cerro Negro), autorizó a PDVSA CN, Mobil CN y a Veba Orinoco explotar los yacimientos petrolíferos ubicados en la zona de Cerro Negro durante los 35 años del plazo de duración de la empresa.

### Obligación de PDVSA CN de indemnizar a Mobil CN

15.     En el Convenio de Asociación, PDVSA CN se comprometió a indemnizar a Mobil CN, en una suma establecida conforme al Acuerdo, por daños y perjuicios sufridos por Mobil CN como consecuencia de cualquier Acción Discriminatoria que causare un Impacto Negativo Sustancial, según se define en el Convenio de Asociación. Entre las Acciones Discriminatorias que causan un Impacto Negativo Sustancial se incluye la expropiación de los derechos de Mobil CN en la empresa conjunta Cerro Negro y otras medidas gubernamentales adversas que en general no se aplican a las sociedades anónimas y que restringen los flujos de caja de Mobil CN. *Ver* Baratz Decl., Ex. 1, Art. 15.1(b) (Convenio de Asociación); Ex. 16, (Acuerdo de Procedimientos Contables).

16.     El Acuerdo de Procedimientos Contables, que se adjunta al Convenio de Asociación, establece una fórmula para calcular el monto de indemnización adeudado por PDVSA CN por cualquier Acción Discriminatoria que pueda causar un Impacto Negativo Sustancial.

17.     Conforme al artículo 7.4 del Acuerdo de Procedimientos Contables, para calcular la indemnización que debe pagar PDVSA CN primero hay que determinar la diferencia entre el Flujo Neto de Caja de un año fiscal dado, teniendo en cuenta el impacto de la(s) Acción (Acciones) Discriminatoria(s), y el Flujo Neto de Caja correspondiente al mismo período sin considerar el impacto de esas medidas. La obligación de indemnizar surge

cuando esa diferencia supera el 5% del Flujo Neto de Caja del participante para ese año fiscal.

18.     La indemnización calculada tiene un techo: La obligación de PDVSA CN de indemnizar no puede superar la diferencia entre el Flujo de Caja Mínimo y el Flujo Neto de Caja Ajustado, según la definición de estos términos en el Convenio de Asociación.

19.     El Convenio de Asociación estipula ciertos pasos que se deben cumplir antes de que venza la obligación de PDVSA CN. Esos pasos han sido cumplimentados.

20.     PDVSA CN debe cumplir en buena fe con sus obligaciones estipuladas en el Convenio de Asociación.

### Las acciones discriminatorias del gobierno venezolano

21.     Desde el mes de octubre del 2004, Venezuela ha tomado una serie de medidas adversas contra Mobil CN que constituyen Acciones Discriminatorias bajo el Convenio de Asociación porque estas medidas son Acciones Gubernamentales, según se definen en el Convenio de Asociación, o cambios en la legislación venezolana que no se aplican a todas las compañías en Venezuela o que violan el Marco de Condiciones.

22.     Entre estas Acciones Discriminatorias cabe mencionar: (i) expropiación directa de los derechos de Mobil CN en el Convenio de Asociación y en la empresa conjunta Cerro Negro sin ninguna compensación; (ii) rechazo del Acuerdo de Reducción de Regalías e imposición del denominado impuesto de extracción (una regalía disfrazada); (iii) denegación del permiso de expandir el Proyecto de Cerro Negro bajo los términos y condiciones previamente acordados; (iv) aumentos en los impuestos sobre la renta a los participantes de operaciones empresariales en la Faja Petrolífera del Orinoco en violación del Marco de Condiciones; e (v) imposición de restricciones de producción y exportación a la empresa conjunta Cerro Negro en violación del Convenio de Asociación.

23.    El 26 de febrero de 2007, el Presidente Chávez de Venezuela publicó el Decreto N° 5200 sobre la migración de empresas mixtas de los convenios de asociación de la Faja Petrolífera del Orinoco, como también los de exploración a riesgo y ganancias compartidas(el "decreto de nacionalización").

24.    El decreto de nacionalización ordenó, entre otras cosas, que las asociaciones estratégicas localizadas en la Faja Petrolífera del Orinoco, incluido Cerro Negro, se transformen ("migren") en empresas mixtas nuevas en los términos establecidos en la Ley Orgánica de Hidrocarburos, en las que PDVSA o una de sus subsidiarias tendría como mínimo un 60% de participación accionaría.

25.    Conforme al artículo 4 del decreto de nacionalización, los participantes de las denominadas asociaciones estratégicas localizadas en la Faja Petrolífera del Orinoco, como Mobil CN, tenían cuatro (4) meses (hasta el 26 de junio de 2007) para aceptar los términos no negociables bajo los cuales podrían participar en las nuevas empresas mixtas.

26.    Las empresas mixtas se establecerían y operarían de acuerdo con un marco legal diferente (la Ley Orgánica de Hidrocarburos) y con nuevos convenios contractuales que reemplazarían a los anteriores convenios de asociación. El nuevo régimen legal y contractual no solo redujo sustancialmente el activo neto sino que restringió radicalmente los derechos de las empresas privadas, como Mobil CN, participantes en esos proyectos.

27.    Además, por el artículo 3 del decreto de nacionalización, se exigió que el operador del Proyecto Cerro Negro entregara el control de todas las actividades y operaciones relacionadas con el proyecto a la Corporación Venezolana del Petróleo, S.A. ("CVP"), una subsidiaria en propiedad absoluta de PDVSA, (o a otra filial de PDVSA) antes del 30 de abril de 2007.

28.    En esa fecha, bajo coerción del decreto de nacionalización y con plena

reserva de derechos, Operadora Cerro Negro, S.A., una subsidiaria en propiedad absoluta de Mobil que operaba el Proyecto Cerro Negro, entregó a PDVSA Petróleo S.A., una subsidiaria de PDVSA, las operaciones y el control de todas las operaciones relacionadas con el Proyecto Cerro Negro.

29.    A fin de cumplir con el decreto de nacionalización, Mobil CN discutió con Venezuela los términos y condiciones de la participación potencial de Mobil CN en la nueva empresa mixta en control del Proyecto Cerro Negro.

30.    Al 26 de junio de 2007, Mobil CN se negó a aceptar los términos no negociables que Venezuela proponía, la cual no ofreció indemnización por tomar los derechos de Mobil CN bajo el Convenio de Asociación, como lo exige la ley aplicable.

31.    El artículo 5 del decreto de nacionalización establece que, si los participantes en asociaciones estratégicas, como Mobil CN, se niegan a aceptar los términos de las nuevas empresas mixtas antes de finalizar el período de cuatro meses contemplado en el artículo 4 (que venció el 26 de junio de 2007), "la República, a través de Petróleos de Venezuela S.A. o de cualquiera de sus subsidiarias designadas a tal efecto, asumirán en forma directa las actividades de las asociaciones".

32.    Al 27 de junio de 2007, Mobil CN fue privada de su participación en las actividades y la producción de la empresa conjunta Cerro Negro. En consecuencia, a partir de esa fecha, Venezuela expropió, sin compensación alguna, los intereses de Mobil CN en la empresa Cerro Negro, incluyendo la participación de Mobil CN en el Convenio de Asociación. Esta expropiación fue ratificada por la Asamblea Nacional en octubre del 2007.

### Incumplimiento de PDVSA CN del Convenio de Asociación Cerro Negro

33.    El 22 de junio de 2007, Mobil CN notificó por escrito a PDVSA CN y a

PDVSA, conforme al Convenio de Asociación, que las medidas precitadas constituyen Acciones Discriminatorias que pueden producir un Impacto Negativo Sustancial en el año fiscal 2007 y en los ejercicios fiscales futuros.

34.    El 25 y 27 de junio de 2007, Mobil CN notificó por escrito a PDVSA CN y PDVSA, conforme al Convenio de Asociación, que las medidas precitadas constituyen Acciones Discriminatorias que pueden producir un Impacto Negativo Sustancial en el año fiscal 2007 y en los ejercicios fiscales futuros, y reclamó el pago inmediato de indemnización como lo establecen los términos del Convenio de Asociación.

35.    El 6 de septiembre de 2006, en un esfuerzo para atenuar los daños y perjuicios como lo establece el Convenio de Asociación, Mobil CN y otras entidades relacionadas, presentaron una Petición de Arbitraje ante el Centro Internacional de Acuerdos de Diferencias Relativas a Inversiones para solicitar compensación por parte de Venezuela respecto de, entre otras cosas, las medidas descritas más arriba, incluyendo la expropiación de los intereses de Mobil CN en la empresa conjunta Cerro Negro.

36.    PDVSA CN ha reconocido que el decreto de nacionalización llevó a cabo una expropiación de los derechos de Mobil CN en Cerro Negro.

37.    PDVSA CN tiene la obligación de indemnizar a Mobil CN por cualquier Acción Discriminatoria que produzca un Impacto Negativo Sustancial.

38.    Como resultado de la expropiación de los derechos de Mobil CN en la empresa conjunta Cerro Negro que ejecutó Venezuela, Mobil CN ha sufrido una disminución seria en su Flujo Neto de Caja correspondiente al año 2007 y fue privada de todo Flujo Neto de Caja para los 28 años fiscales restantes del plazo acordado para el Proyecto Cerro Negro.

39.    Como resultado de las Acciones Discriminatorias, el Flujo Neto de Caja de

Mobil CN no guardará relación razonable con el Flujo de Caja Mínimo en el ejercicio fiscal 2007 o en ninguno de los 28 años fiscales futuros del plazo acordado para el Convenio de Asociación.

40.    A pesar del reconocimiento de la expropiación de los intereses de Mobil CN en la empresa conjunta Cerro Negro, y contrario a la obligación de cumplir con sus responsabilidades contractuales en buena fe, PDVSA CN no realizó los pasos contemplados en el artículo 15.1, párrafos (a) y (b) del Convenio de Asociación.

### Los activos dentro de esta jurisdicción – la cascada de dinero

41.    La empresa conjunta Cerro Negro se financió, en parte, con una financiación mediante emisión de obligaciones de $600.000.000 proporcionada por Cerro Negro Finance, Ltd. en 1998.

42.    Cerro Negro Finance, Ltd. es un vehículo constituido para un fin concreto en conformidad con las leyes de las Islas Caimanes con el propósito exclusivo de emitir bonospara financiar una parte de la empresa conjunta Cerro Negro.

43.    El bono original emitido en 1998 fue por $600.000.000.

44.    Se estima que la cantidad de bonos actualmente en circulación es de $538.000.000.

45.    El producto de los bonos se dividió en partes iguales entre Mobil CN y PDVSA CN para financiar la empresa conjunta Cerro Negro.

46.    Se protegieron los derechos de los tenedores de bonos por medio de un Contrato de Garantía Común, el cual exigía varias garantía reales como garantías subsidiarias y otras restricciones para usar y disponer de ciertos activos.

47.    La garantía y otros activos relevantes de esta medida fue una serie de cuentas creadas y mantenidas en bancos de la Ciudad de Nueva York, Estado de Nueva York. Mobil

CN y PDVSA CN debían tener en Nueva York (i) una cuenta reservada para desembolsos, (ii) una cuenta separada de ingresos operativos, (iii) una cuenta separada de distribución, (iv) una cuenta separada de productos de accidentes, (v) una cuenta separada para organización y métodos, y (vi) una cuenta separada de servicios de deuda. Además, Mobil CN tuvo que abrir una cuenta de reserva de servicios de deuda.

48.     Estas cuentas junto con otras que no estaban ubicadas en Nueva York fueron denominadas en forma conjunta como las Cuentas del Proyecto.

49.     El Contrato de Garantía Común estableció la "cascada de dinero".

50.     Bajo la cascada de dinero, los productos de las Cuentas del Proyecto se distribuyeron en un orden definido y para fines particulares. En general, las distribuciones primero iban a financiar el proyecto y luego, a reintegrar a los tenedores de deudas.

51.     Como parte de la garantía subsidiaria para garantizar el rescate de los bonos emitidos por Cerro Negro Finance, Ltd., Mobil CN aportó sus derechos en la cascada de dinero como garantía real.

52.     PDVSA CN garantizó a los tenedores de bonos de distintas maneras; envió instrucciones irrevocables al Banco de Nueva York, en calidad de administrador de valores, para restringir el uso de los fondos a los términos del Convenio de Garantía Común.

53.     No obstante, una vez que se pague a los tenedores de bonos, se levantarán las restricciones impuestas a la cascada de dinero, incluidas las instrucciones irrevocables.

54.     En consecuencia, PDVSA CN y Mobil CN tendrán acceso irrestricto a sus partes respectivas de la cascada de dinero.

55.     PDVSA hizo una Oferta de Compra de todos los bonos en circulación de Cerro Negro Finance, Ltd. antes del 31 de diciembre de 2007.

56.     Una vez que PDVSA compre los bonos en circulación, las cantidades

restantes en la cascada de dinero quedarán libres de restricciones. La parte de PDVSA CN en la cascada de dinero (actualmente unos $300.000.000) es con probabilidad el único activo de PDVSA CN disponible para satisfacer cualquier laudo arbitral.

57.    A la compra de PDVSA de los bonos en circulación, las instrucciones irrevocables concluirán y PDVSA CN estará libre de transferir desde Nueva York su parte de la cascada de dinero y disipar los fondos o tomar otra medida para hacer que los fondos estén inaccesibles para cancelar cualquier laudo arbitral.

58.    El propósito de esta acción legal es embargar los derechos de PDVSA CN en la cascada de de efectivo, para garantizar, al menos parcialmente, el pago del laudo que Mobil CN probablemente obtenga en el arbitraje de ICC.

59.    Conforme a los términos de la Oferta de Compra, la consumación de la oferta requiere la oferta válida de los bonos por parte de los tenedores que representan el setenta y cinco por ciento (75%) del monto de capital global de todos los bonos en circulación y el recibo del consentimiento de los tenedores de bonos para eliminar la garantía real y terminar las instrucciones irrevocables. Más del noventa por ciento (90%) de los tenedores de bonos han ofertado sus bonos conforme a los términos de la Oferta de Compra.

60.    El 28 de diciembre de 2007 o alrededor de esa fecha, Venezuela o PDVSA transferirán al Chase Manhattan Bank el dinero requerido para financiar la compra de los bonos en circulación de Cerro Negro Finance, Ltd. que son licitados conforme a los términos de la Oferta de Compra.

61.    Se estima que el monto total de fondos que se requieren para comprar todos los bonos en circulación con arreglo a la oferta es de $538.000.000.

62.    El 28 de diciembre de 2007 o después de esa fecha, pero antes del 31 de

diciembre, PDVSA adquirirá cualesquier bonos en circulación de Cerro Negro Finance, Ltd. que se liciten conforme a los términos de la Oferta de Compra.

63.    En conformidad con la Oferta de Compra, los únicos activos de PDVSA CN son los que están relacionados con el Proyecto Cerro Negro. Después de que PDVSA adquiera los bonos, los activos que en la actualidad se utilizan en la operación del Proyecto Cerro Negro y los derechos para desarrollar las reservas petroleras relacionadas se transferirán a una nueva "Empresa Mixta", con la que Mobil CN no tiene ninguna relación contractual. El 83% de la nueva Empresa Mixta será de CVP y el 16 % de British Petroleum plc, a través de Veba. Por consiguiente, tras el cierre de la Oferta de PDVSA para comprar los bonos en circulación, la cascada de dinero será el único activo de PDVSA CN.

64.    Una vez que PDVSA adquiera los bonos, la cascada de dinero, que había estado garantizando el rescate de los bonos, será liberada y probablemente la parte de PDVSA CN sea transferida fuera del alcance de Mobil CN entre el 28 y el 31 de diciembre de 2007.

## DECLARACIÓN I
## PARA ORDEN DE EMBARGO
## CONFORME A LA SECCIÓN 7502 (c) Y ART. 62
## DE LA LEY Y REGLAS DE PRÁCTICA CIVIL (C.P.L.R.) DE N.Y.

65.    Mobil CN vuelve a argumentar e incorpora los párrafos 1-64 de la Demanda.

66.    Mobil CN iniciará el arbitraje ICC dentro de los 30 días después de que se expida la Orden de Embargo, a menos que este plazo sea extendido por el Tribunal.

67.    Mobil CN tiene una acción legal contra PDVSA CN bajo la forma de reclamaciones que se entablarán en el arbitraje ICC y en las que Mobil CN tiene derecho a

un fallo monetario presentado en un laudo arbitral definitivo.

68.    Es probable que Mobil CN tenga éxito en los méritos de sus reclamos de arbitraje porque el incumplimiento de los convenios por parte de PDVSA CN es evidente.

69.    Sin una orden de embargo, el laudo arbitral no será efectivo, entre otras razones, porque (1) la cascada de dinero es la única fuente viable de fondos para cumplir con un laudo en el arbitraje ICC; (2) la situación financiera de PDVSA CN hace que la recuperación sea poco probable porque los intereses de PDVSA CN en el proyecto de Cerro Negro están siendo transferidos a la nueva empresa mixta; (3) la parte de PDVSA CN de la cascada de dinero puede ser fácilmente — y es muy probable que así sea — transferida fuera del alcance de los acreedores; y (4) Mobil CN tendrá dificultad para hacer cumplir el laudo contra PDVSA CN fuera de esta jurisdicción.

70. La suma demandada a PDVSA CN supera todas las reconvenciones conocidas a Mobil CN.

## PETITORIO DE REPARACIÓN

POR TANTO, el Tribunal debe dictar sentencia a favor de Mobil CN y en contra del Demandado:

a.    librando una Orden de Embargo para gravar dentro de la jurisdicción de este Tribunal, en cualquier momento antes de que se dicte el laudo arbitral definitivo, los bienes sobre los cuales PDVSA CN tiene derechos y las obligaciones adeudadas a PDVSA CN de modo que se cubra el monto especificado en la Orden de Embargo;

b.    Ordenando a la Parte Demandada a pagar los honorarios de abogados y costas asociados con esta acción; y

c.    Adjudicando otras reparaciones que puedan ser justas en estas circunstancias.

Fechado: Nueva York, Nueva York
            27 de diciembre de 2007

Presentado con el debido respeto.

[firmado] _____

Michael C. Miller (MM-4632)
STEPTOE & JOHNSON LLP 750
Seventh Avenue, Suite 1900 New
York, New York 10019 tel: (212)
506-3900 fax: (212) 506-3950

Howard H. Stahl *(pro hac vice* solicitud pendiente)
Steven K. Davidson *(pro hac vice* solicitud pendiente)
Mark A. Moran *(pro hac vice* solicitud pendiente)
Michael J. Baratz *(pro hac vice* solicitud pendiente)
STEPTOE & JOHNSON LLP 1330 Connecticut
Avenue, N.W. Washington, D.C. 20036 tel: (202)
429-3000 fax: (202) 429-3902

*Abogado patrocinante de la parte actora*

- 15 -

Por el abogado patrocinante:

Toni D. Hennike
Luis Marulanda del Valle
Departamento Jurídico
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas 77002
713-656-6716 (teléfono)
713-656-3496 (telefax)

Charles A. Beach (CB-6791)
Departamento Jurídico
EXXON MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas 75039-2298
972-444-1466 (teléfono)
972-444-1435 (telefax)

# EXHIBIT B

## Slater, Amanda

**From:**    TrackingUpdates@fedex.com
**Sent:**    Tuesday, January 15, 2008 11:33 AM
**To:**      Slater, Amanda
**Subject:** FedEx Shipment 799253617289 Delivered

This tracking update has been requested by:

Company Name:          STEPTOE & JOHNSON LLP
Name:                  Michael J. Baratz
E-mail:                mbaratz@steptoe.com

Our records indicate that the following shipment has been delivered:

Reference:                 16676.0001
Ship (P/U) date:           Jan 11, 2008
Delivery date:             Jan 15, 2008 11:39 AM
Sign for by:               A.PAREDES
Delivered to:              Mailroom
Service type:              FedEx International Priority
Packaging type:            FedEx Box
Number of pieces:          1
Weight:                    1.00 lb.
Special handling/Services: Deliver Weekday

Tracking number:           799253617289

Shipper Information            Recipient Information
MICHAEL J. BARATZ              MINISTRY OF FOREIGN AFFAIRS
STEPTOE JOHNSON LLP            VENEZUELAN CENTRAL AUTHORITY
1330 CONNECTICUT AVE NW        AV. URDANETA, TORRE MRE;AL LADO
WASHINGTON                     DEL CORREO DE CARMELITAS
DC                            CARACAS
US                            VE
20036

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 10:28 AM CST
on 01/15/2008.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above,
or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the
Requestor noted above. FedEx does not validate the authenticity of the

1/15/2008

requestor and does not validate, guarantee or warrant the authenticity of the
request, the requestor's message, or the accuracy of this tracking update. For
tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.



| Ship | **Track/History** | Address Book | Preferences | Fast Ship | Reports | My Profile |

| << Log out | Home | | | | | ? Quick help |

**Your Shipment Details:**

| **Ship to:** | Ministry of Foreign Affairs | **Package type:** | FedEx Box |
| | Venezuelan Central | **Pickup/Drop Off:** | give to scheduled courier at my location |
| | Authority | **Weight:** | 1 LBS |
| | Av. Urdaneta, Torre MRE | **Dimensions:** | 0 x 0 x 0 in |
| | al lado del Correo de | **Declared value:** | 0 USD |
| | Carmelitas | **Courtesy rate quote:*** | 56 |
| | Caracas, | **Discounted variable %** | |
| | VE | **Cod amount** | |
| | 58 212 806 4311 | **Special services:** | |
| **From:** | Michael J. Baratz | **Shipment Purpose:** | |
| | STEPTOE & JOHNSON | **Shipment type:** | Express |
| | LLP | **Commercial/Residential Status:** | Commercial |
| | 1330 Connecticut Ave NW | | |
| | Washington, DC  20036 | | |
| | US | | |
| | 2024296468 | | |

| **Tracking no:** | 799253617289 |
| **Your reference:** | 16676.0001 |
| **Ship date:** | Jan 11 2008 |
| **Service type:** | International Priority |

[ Print ]                                                              [ Return to next steps ]

**Please note**

. *The courtesy rate shown here may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.

Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.

# EXHIBIT C-1

Embajada de la Republica
Bolivariana de Venezuela
Washington, D. C.

**No. SC/610**

The Embassy of the Bolivarian Republic of Venezuela presents its compliments to the Honorable Department of Justice and has the honor to forward the results of the Letter Rogatory (request for Service Abroad of Judicial or Extrajudicial Documents) issued by the United States District Court, Southern District of New York, related to the case of **MOBIL CERRO NEGRO, LTD** versus **PDVSA CERRO NEGRO S.A.,** No. 07 CV 11590, executed  by the Eight Court of First Instance in Civil, Mercantile and Transit Matters of the Metropolitan Area of Caracas.

The Embassy of the Bolivarian Republic of Venezuela avails itself of this opportunity to renew to the Honorable Department of Justice the assurances of its highest consideration.

Washington, DC.   March 31, 2008



BAH

Mr. ROBERT HOLLIS
Acting Director
**Att. Ms. Marcia T.Robinson**
Department of Justice
Office of Foreign Litigation
1100 L Street, NW, Room 11101
Washington DC. 20530

Encl.: above mentioned

APR 0 3 2008

EXHIBIT C-2

## Bolivarian Republic of Venezuela

JUDICIAL AUTHORITY
CIVIL JURISDICTION
ARCHIVE

## R-No. 08-0090

## File No.

PLAINTIFF(S): **Mobil Cerro Negro LTD.**

DEFENDANT(S): **PDSA Cerro Negro, Joint Stock Company**

GROUND:    **Letter Rogatory**

COURT: EIGHTH COURT OF ORIGINAL JURISDICTION IN CIVIL, COMMERCIAL AND TRAFFIC MATTERS OF THE JUDICIAL DISTRICT OF THE METROPOLITAN AREA OF CARACAS

Date of Entry **February 7, 2008**

DELIVERED:

_____

_____
_____

DAY: ___ MONTH: ____ YEAR: ____

TERMINATED ON DATE:

_____

## R – No. 08-0090
## File No.

# República Bolivariana de Venezuela



## PODER JUDICIAL
## JURISDICCIÓN CIVIL
### ARCHIVO

# Nº 08-0090

## Pieza Nº

DEMANDANTE(S): **Mobil Cerro Negro LTD.**

DEMANDADO(S): **PDSA Cerro Negro, S.A.**

MOTIVO: **Rogatoria.**

TRIBUNAL: JUZGADO OCTAVO DE PRIMERA INSTANCIA EN LO CIVIL MERCANTIL Y DEL TRÁNSITO DE LA CIRCUNSCRIPCIÓN JUDICIAL DEL ÁREA METROPOLITANA DE CARACAS.

Fecha de Entrada: **07 de febrero de 2008**

REMITIDO:

_____

_____

_____

DIA: _____ MES: _____ AÑO: _____

TERMINADO EN FECHA: _____ de _____



# Nº 08-0090

## Pieza Nº

# EXHIBIT C-3
# Part 1

R – 08 – 0090



DISTRIBUTED to the **8**[th] Court of Original Jurisdiction for Civil Commercial Matters and Traffic of the Judicial District for the Metropolitan Area of Caracas

Directorate General of Justice and Religion

No. 0091                                          Caracas, Jan. 29, 2008
                                    001123
Dear Sir:

**Sixth Judge of the Court of Original Jurisdiction in Civil,**
**Commercial, and Traffic Matters in the Metropolitan Area of Caracas**
Corner of Pajaritos, José María Vargas, 9th floor
Delivered at his office

This letter respectfully sends a Bolivarian salute by my organization on the occasion of sending you for your distribution a Letter Rogatory issued by the United States District Court for the Southern District of New York, related to the case of **MOBIL CERRO NEGRO, LTD.** versus **PDVSA CERRO NEGRO S.A.**

In this regard, I thank you for your good offices in processing the referenced request, as the request constitutes an agreement obtained by the Bolivarian Republic of Venezuela in various signed and ratified Conventions.

We would greatly appreciate it if you would inform us of the name of the designated Court for purposes of handling the referenced request.

Yours truly,
                        [Seal]
                        Sincerely,


                        [signature]
                        **Berenice Bernal Iribarren**
                        **General Director of Justice and Religion**


[stamp:]

        "There should be no place for lowly passions in the hearts of revolutionaries."
                                                    Hugo Chavez Frias


GG/AC *AC*
01/25/2008
Attachment: as indicated

Bolivarian Government of Venezuela    Ministry of [illegible]
                                      **Interior Relations and Justice**

                                                    Venezuela
                                            Now it is for everyone

        Av. Urdaneta, Corner of Platanal, Building Office MIJ 6th Floor
    Tel.: 0212/506-15-11 Fax:0212/506-17-04 justicia y cultos@mij.gov.ve www.mij.gov.ve

R-08-0090



**Ministerio del Poder Popular**
**Relaciones Interiores y Justicia**

Dirección General de Justicia y Cultos

DISTRIBUIDO al Juzgado
de Primera Instancia en lo Civil, Mercantil y
Tránsito de la Circunscripción Judicial del
Area Metropolitana de Caracas.

N° **0091**

001123

Caracas, **2 9 ENE. 2008**

Ciudadano
**Juez Sexto de Primera Instancia en lo Civil,**
**Mercantil y del Tránsito del Area Metropolitana de Caracas**
Esq. de Pajaritos, Edif. José María Vargas, piso 9
Su Despacho.

Sirva la presente para enviarle un deferente saludo institucional y Bolivariano, en ocasión de remitirle para su distribución, Carta Rogatoria librada por el Tribunal de Primera Instancia de Estados Unidos para el Distrito Sur de Nueva York, relativa a la causa de **MOBIL CERRO NEGRO, LTD contra PDVSA CERRO NEGRO S.A.**

Al respecto, le agradezco sus buenos oficios en el sentido de tramitar la referida solicitud, toda vez que la misma constituye un compromiso adquirido por la República Bolivariana de Venezuela, en los diversos Convenios firmados y ratificados.

Mucho agradeceríamos que nos informen el nombre del Tribunal designado a los efectos de tramitar la referida solicitud.

Sin otro particular al cual hacer referencia, se suscribe de usted.

Atentamente,



**Berenice Bernal Iribarren**
**Directora General de Justicia y Cultos**

"No debe haber espacio para bajas pasiones en el corazón de los revolucionarios"

HUGO CHÁVEZ FRÍAS

GG/AC
25/01/2008
Anexo: Lo Indicado

Gobierno
Bolivariano
de Venezuela

Ministerio del Poder Popular para
**Relaciones Interiores y Justicia**


**Venezuela**
AHORA ES DE TODOS

Av. Urdaneta, Esq. Platanal. Edificio Sede MIJ. Piso 6
T 0212/506-15-11 F 0212/506-17-04 justicia y cultos@mij.gov.ve Wwww.mij.gov.ve

**8TH**

8TH COURT OF ORIGINAL JURISDICTION FOR CIVIL, COMMERCIAL, AND
TRAFFIC MATTERS OF THE JUDICIAL DISTRICT OF THE METROPOLITAN
AREA OF CARACAS ACTING AS A DISTRIBUTOR

This document is received by this Court for purposes of its distribution.

| | |
|---|---|
| Date | *01-30-08* |
| Pages | *95* |
| Appendices | |
| Entry Number | *1123* |

**THE CLERK OF THE COURT**

[signature]
[stamp: Bolivarian Republic of Venezuela
Eighth Court of Original Jurisdiction in Civil, Commercial
and Traffic Matters of the Judicial District
of the Metropolitan Area of Caracas ]

ENTERED IN THE DAILY RECORD No. *09*
DATE: FEB 07, 2008

REPÚBLICA BOLIVARIANA DE VENEZUELA

JUZGADO _____ DE PRIMERA INSTANCIA EN LO CIVIL, MERCANTIL Y TRÁNSITO
DE LA CIRCUNSCRIPCIÓN JUDICIAL DEL ÁREA METROPOLITANA DE CARACAS EN
FUNCIONES DE DISTRIBUIDOR

Se recibe el presente escrito ante este Juzgado a los fines de su distribución

Fecha _____ 30 - 01 -08 _____

Folios _____ 95 _____

Anexos _____

Número de ingreso _____ 1123 . _____

EL SECRETARIO(A)



DIARIZADO N° _____ 09 _____

FECHA: _____ 0 7 FEB 2008 _____

# STEPTOE & JOHNSON LLP

### ATTORNEYS AT LAW

Michael J. Baratz
202.429.6468
mbaratz@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

January 9, 2008

Via OVERNIGHT DELIVERY

Ministry of Foreign Affairs
Av. Urdaneta
Torre MRE
al lado del Correo de Carmelitas
Caracas
Venezuela

Re:   **Hague Convention Service of Documents**

Dear Sir or Madam:

Enclosed please find an original and one copy of papers we would like to serve on the party indicated in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which was signed at The Hague on November 15, 1965.

For each document, we also have appended a Spanish translation. If I can be of any assistance with respect to the service of these documents, please do not hesitate to contact me. Thank you in advance for your assistance and we look forward to receiving the executed certificate that service has been effectuated.

Very truly yours,

Michael J. Baratz

Enclosures

WASHINGTON • NEW YORK • CHICAGO • PHOENIX • LOS ANGELES • CENTURY CITY • LONDON • BRUSSELS

**U.S. Department of Justice**
United States Marshals Service



# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou
extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*



| Identity and address of the applicant<br>*Identité et adresse du requérant*<br><br>Steven K. Davidson<br>Steptoe & Johnson LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036 | Address of receiving authority<br>*Adresse de l'autorité destinataire*<br><br>Ministry of Foreign Affairs<br>Av. Urdaneta<br>Torre MRE<br>al lado del Correo de Carmelitas<br>Caracas<br>Venezuela |
|---|---|

**The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity
with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)**
*Le requérant soussignée a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous
énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au
destinataire, à savoir:*
    *(identité et adresse)*

PDVSA Cerro Negro S.A., Avenida Veracruz con Calle Cali,

Edificio Pawa, Las Mercedes, Ciudad, Venezuela

☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
    *a) selon les formes légales (article 5 alinéa premier, lettre a).*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
    *b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

_____

_____

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
    *c) le cas échéant, par remise simple (article 5, alinéa 2).*

**The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes
with a certificate as provided on the reverse side.**
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec
l'attestation figurant au verso.*

| List of documents<br>*Enumération des pièces*<br><br>Summons to PDVSA Cerro Negro S.A.;<br><br>Complaint for Order of Attachment in Aid of<br><br>International Arbitration | Done at _____ , the<br>*Fait à* _____ , *le*<br><br>Signature and/or stamp<br>*Signature et/ou cachet* |
|---|---|

# SUMMARY OF THE DOCUMENT TO BE SERVED
## *ÉLÉMENTS ESSENTIELS DE L'ACTE*

**Convention on the service abroad of judicial and extrajudicial documents In civil or commercial matters, signed at The Hague, November 15, 1965.**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

### (article 5, fourth paragraph)
*(article 5, alinéa quatre)*

**Name and address of the requesting authority:**
*Nom et adresse de l'autorité requérante:*

Steven K. Davidson, 1330 Connecticut Avenue, NW, Washington, DC 20036

**Particulars of the parties:**
*Identité des parties:*

Attorney for Plaintiff, Duly authorized to request service pursuant to Rule 4 of U.S. Rules of Civil Procedure

### JUDICIAL DOCUMENT
*ACTE JUDICIA IRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

These are initial papers filed in a lawsuit pending in a United States District Court

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas échéant, le montant du litige:*

Attachment proceeding in aid of international arbitration

**Date and place for entering appearance:**
*Date et lieu de la comparution:*

Appearances have already been entered

**Court which has given judgment**:**
*Juridiction qui a rendu la décision:*

**Dale of judgment**:**
*Date de la décision:*

**Time limits stated in the document**:**
*Indication des délais figurant dans l'acte:*

Response is ordinarily due 20 days after service

### EXTRAJUDICIAL DOCUMENT
*ACTE EXTRAJUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

**Time limits stated in the document:**
*Indication des délais figurant dans l'acte:*

## CERTIFICATE
### *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1)  que la demande a été exécutée*
— the (date) -- *le (date)* _____
— at (place, street, number) - *à (localité, rue, numéro)*

_____

— in one of the following methods authorized by article 5:
*— dans une des formes suivantes prévues à l'article 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
*a) selon les formes légales (article 5. alinéa premier, lettre a)*

☐ (b) in accordance with the following particular method:
*b) selon la forme particulière suivante:* _____

☐ (c) by delivery to the addressee, who accepted it voluntarily.*
*c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*
- (identity and description of person)
- *(Identité et qualité de la personne)*

_____

- relationship to the addressee family, business or other
- *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

_____

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément  à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pieces renvoyées*

_____
_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

_____

Done at _____, the
*Fait à* _____, *le*

Signature and/or stamp
*Signature et/ou cachet*

# STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW

Michael J. Baratz
202.429.6468
mbaratz@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC  20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

January 9, 2008

Via OVERNIGHT DELIVERY

Ministry of Foreign Affairs
Av. Urdaneta
Torre MRE
al lado del Correo de Carmelitas
Caracas
Venezuela

Re:    **Hague Convention Service of Documents**

Dear Sir or Madam:

Enclosed please find an original and one copy of papers we would like to serve on the party indicated in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which was signed at The Hague on November 15, 1965.

For each document, we also have appended a Spanish translation.  If I can be of any assistance with respect to the service of these documents, please do not hesitate to contact me.  Thank you in advance for your assistance and we look forward to receiving the executed certificate that service has been effectuated.

Very truly yours,

Michael J. Baratz

Enclosures

WASHINGTON  •  NEW YORK  •  CHICAGO  •  PHOENIX  •  LOS ANGELES  •  CENTURY CITY  •  LONDON  •  BRUSSELS

U.S. Department of Justice
United States Marshals Service

---

# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou
extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant* | Address of receiving authority<br>*Adresse de l'autorité destinataire* |
|---|---|
| Steven K. Davidson<br>Steptoe & Johnson LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036 | Ministry of Foreign Affairs<br>Av. Urdaneta<br>Torre MRE<br>al lado del Correo de Carmelitas<br>Caracas<br>Venezuela |

**The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity
with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)**
*Le requérant soussigné a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous
énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au
destinataire, à savoir:*
*(identité et adresse)*

PDVSA Cerro Negro S.A., Avenida Veracruz con Calle Cali,

Edificio Pawa, Las Mercedes, Ciudad, Venezuela

☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
    *a) selon les formes légales (article 5 alinéa premier, lettre a).*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
    *b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

_____

_____

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
    *c) le cas échéant, par remise simple (article 5, alinéa 2).*

**The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes
with a certificate as provided on the reverse side.**
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec
l'attestation figurant au verso.*

List of documents
*Enumération des pièces*

Summons to PDVSA Cerro Negro S.A.;

Complaint for Order of Attachment in Aid of

International Arbitration

_____

_____

_____

Done at _____ , the _____
*Fait à* _____ , *le* _____

Signature and/or stamp
*Signature et/ou cachet*

---

*Delete if inappropriate
*Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)

## SUMMARY OF THE DOCUMENT TO BE SERVED
### ÉLÉMENTS ESSENTIELS DE L'ACTE

**Convention on the service abroad of judicial and extrajudicial documents In civil or commercial matters, signed at The Hague, November 15, 1965.**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa quatre)*

**Name and address of the requesting authority:**
*Nom et adresse de l'autorité requérante:*

Steven K. Davidson, 1330 Connecticut Avenue, NW, Washington, DC 20036

**Particulars of the parties:**
*Identité des parties:*

Attorney for Plaintiff, Duly authorized to request service pursuant to Rule 4 of U.S. Rules of Civil Procedure

### JUDICIAL DOCUMENT
### ACTE JUDICIA IRE

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

These are initial papers filed in a lawsuit pending in a United States District Court

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas échéant, le montant du litige:*

Attachment proceeding in aid of international arbitration

**Date and place for entering appearance:**
*Date et lieu de la comparution:*

Appearances have already been entered

**Court which has given judgment**:**
*Juridiction qui a rendu la décision:*

**Dale of judgment**:**
*Date de la décision:*

**Time limits stated in the document**:**
*Indication des délais figurant dans l'acte:*

Response is ordinarily due 20 days after service

### EXTRAJUDICIAL DOCUMENT
### ACTE EXTRAJUDICIAIRE

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

**Time limits stated in the document:**
*Indication des délais figurant dans l'acte:*

# CERTIFICATE
*ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1)  que la demande a été exécutée*
     – the (date) – *le (date)* _____
     – at (place, street, number) - *à (localité, rue, numéro)*

_____

   – in one of the following methods authorized by article 5:
   -- *dans une des formes suivantes prévues à l'article 5:*

     ☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
         *a) selon les formes légales (article 5. alinéa premier, lettre a)*

     ☐ (b) in accordance with the following particular method:
         *b) selon la forme particulière suivante:* _____

     ☐ (c) by delivery to the addressee, who accepted it voluntarily.*
         *c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

   - (identity and description of person)
   - *(Identité et qualité de la personne)*

_____

   - relationship to the addressee family, business or other
   - *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

_____

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément  à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pieces renvoyées*

_____
_____
_____

Done at _____ , the
*Fait à* _____ , *le* _____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

Signature and/or stamp
*Signature et/ou cachet*

_____

STEPTOE & JOHNSON

Michael J. Baratz
202.429.6468
mbaratz@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC  20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

9 de enero de 2008

Por medio de ENTREGA NOCTURNA

Ministerio de Asuntos
Exteriores
Av. Urdaneta
Torre MRE
al lado del Correo de Carmelitas
Caracas
Venezuela

Ref:  **Notificación de documentos por Convención de la Haya**

Estimado señor o señora:

Le adjuntamos un original y una copia de los documentos que deseamos dar traslado a la parte indicada en conformidad con la Convención sobre Notificación en el Extranjero de Documentos Judiciales y Extrajudiciales en Materia Civil o Comercial, firmada en La Haya el 15 de noviembre de 1965.

Hemos adjuntado para cada documento la traducción correspondiente en español. En caso de poder ser de alguna ayuda con respecto a la notificación y traslado de estos documentos, sírvase ponerse en contacto con nosotros. Le agradecemos anticipadamente por su asistencia y quedamos a la espera de recibir el certificado firmado como constancia de recibo.

Saluda atentamente,

Michael J. Baratz

Adjuntos

WASHINGTON    NEW YORK    CHICAGO    PHOENIX    LOS ANGELES    CENTURY CITY    LONDRES    BRUSELAS

Departamento de Justicia de los EE. UU.
Servicio de Oficiales de Justicia de EE. UU.
(Marshals Service)



# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*PETICIÓN*
*DE NOTIFICACIÓN Y TRASLADO DE DOCUMENTOS JUDICIALES Y*
*EXTRAJUDICIALES*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**
*Convención sobre notificación en el extranjero de documentos judiciales y extrajudiciales en material civil o comercial, firmada en La Haya el 15 de noviembre de 1965.*

| Identity and address of the applicant *Identidad y domicilio del solicitante* | Address of receiving authority *Domicilio de la autoridad receptora* |
|---|---|
| Steven K. Davidson Steptoe & Johnson LLP 1330 Connecticut Avenue, NW Washington, DC 20036 | Ministerio de Asuntos Exteriores Av. Urdaneta Torre MRE al lado def Correo de Carmelitas Caracas Venezuela |

The undersigned applicant has the honour to transmit -- in duplicate -- the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e., (identity and address)
*El que suscribe tiene el honor de emitir –por duplicado - los documentos que se enumeran a continuación, conforme con el artículo de la Convención antes indicada, y solicita el traslado y notificación inmediata de un ejemplar al destinatario, a saber: (identidad y domicilio)*

<u>PDVSA Cerro Negro S.A., Avenida Veracruz con Calle Cali,</u>
<u>Edificio Pawa, Las Mercedes, Ciudad, Venezuela</u>

x    (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
    *a) conforme a las disposiciones legales (artículo 5 de la Convención, párrafo 1, sección a).* *

☐    (b) in accordance with the following particular method {sub-paragraph (b) of the first paragraph of article 5)*:
    *b) conforme al método particular siguiente (artículo 5, párrafo 1, sección b) :*
    _____
    _____

☐ (c) by delivery to the addressee, if he accepts it voluntarily {second paragraph of article 5)*:
    *c) por entrega al destinatario, si acepta en forma voluntaria (artículo 5, párrafo 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes with a certificate as provided on the reverse side.
*La autoridad debe devolver al solicitante una copia de los documentos y sus anexos con un certificado como el que figura al dorso.*

List of documents                                          Done at _____ the _____
*Listado de documentos*                                    *Emitidos en*                  , el

<u>Notificación a PDVSA Cerro Negro S.A.;</u>
<u>Demanda de Orden de Embargo en Ayuda de</u>      Signature and/or stamp
<u>Arbitraje Internacional</u>                       *firma y/o sello*
                                                    _____

---

*    Delete if Inappropriate                                          Form USM-S4
    *Eliminar si no corresponde.*                                      Est. 11/77
                                        (Anteriormente 08D-116, a su vez el formulario LAA-116 anterior, ambos todavía en uso)

## SUMMARY OF THE DOCUMENT TO BE SERVED
### *DESCRIPCIÓN DEL DOCUMENTO*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15,1965.**

*Convención sobre notificación y traslado en el extranjero de documentos judiciales y extrajudiciales en materia civil o comercial, firmada en La Haya el 15 de noviembre de 1965.*

**(article 5, fourth paragraph)**
*(artículo 5, párrafo cuarto)*

**Name and address of the requesting authority;**
*Nombre y domicilio del solicitante:*

Steven K. Davidson, 1330 Connecticut Avenue, NW, Washington, DC 20036 _____

**Particulars of the parties:**
*Identificación de las partes:*

Abogado de la Parte Actora, debidamente autorizado para solicitar notificación y traslado en virtud de la Regla 4 de las Reglas de Procedimiento Civil de los EE. UU.

### JUDICIAL DOCUMENT
*DOCUMENTO JUDICIAL*

**Nature and purpose of the document:**
*Naturaleza y objeto del documento:*

Documentos iniciales presentados en una acción legal pendiente en un Tribunal de Primera Instancia de los Estados Unidos

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Naturaleza y propósito de las actuaciones y, si corresponde, la pretensión objeto de la causa:*

Procedimiento de embargo en ayuda de arbitraje internacional

**Date and place for entering appearance:**
*Fecha y lugar de comparecencia:*

Las comparecencias han sido registradas

**Court which has given judgment**:**
*Tribunal que dictó sentencia**:*

_____

**Date of judgment**:**
*Fecha de la sentencia**:*

**Time limits stated in the document**:**
*Plazos indicados en el documento**:*

El plazo para la contestación es generalmente de 20 días después de recibida la notificación _____

### EXTRAJUDICIAL DOCUMENT
*DOCUMENTO EXTRAJUDICIAL*

**Nature and purpose of the document:**
*Naturaleza y objeto del documento:*

_____

**Time limits stated In the document:****
*Plazos indicados en el documento**:*

_____

# CERTIFICATE
## *CERTIFICACIÓN*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*El que suscribe tiene el honor de certificar, en conformidad con al artículo 6 de la Convención,*

1) that the document has been served *
*1) que se ha dado traslado del documento**
- the (date) -- *la (fecha)* _____
- at (place, street, number) - en *(lugar, calle, número)*

- in one of the following methods authorized by article 5:
- *por uno de acuerdo con uno de los métodos siguientes previstos en el artículo 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*,
*(a) conforme a las disposiciones legales (artículo 5 de la Convención, párrafo 1, sección a,**

☐ (b) in accordance with the following particular method:
*(b) según el método particular siguiente:*

☐ (c) by delivery to the addressee, who accepted it voluntarily*
*(c) entrega al destinatario, quien aceptó en forma voluntaria**

The documents referred to in the request have been delivered to:
*Los documentos mencionados en la petición han sido entregados a:*

- *(identity and description of person)*
- *(Identificación y descripción de la persona)*

_____

- relationship to the addressee family, business or other
- *relación de parentesco, de trabajo u otra con el destinatario:*

_____

2) that the document has not been served, by reason of the following facts*:
*2) que la demanda ha sido notificada, de acuerdo con los hechos siguientes*:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*En conformidad con el artículo 12, párrafo 2 de la Convención, el solicitante debe pagar o reembolsar los gastos que se describen en la declaración adjunta**

ANNEXES
*Anexos*

Documents returned:
*Documentos devueltos:*

_____
_____
_____

In appropriate cases, documents establishing the service:
*En caso que corresponda, constancia de notificación:*

_____
_____

Done at _____ , the _____
*Emitido en* _____ , *el*

Signature and/or stamp
*Firma y/o sello*

_____

Michael J. Baratz
202.429.6468
mbaratz@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC  20036-1795
Tel 202.429.1000
Fax 202.429.3902
steptoe.com

9 de enero de 2008

Por medio de ENTREGA NOCTURNA

Ministerio de Asuntos
Exteriores
Av. Urdaneta
Torre MRE
al lado del Correo de Carmelitas
Caracas
Venezuela

Ref:   **Notificación de documentos por Convención de la Haya**

Estimado señor o señora:

Le adjuntamos un original y una copia de los documentos que deseamos dar traslado a la parte indicada en conformidad con la Convención sobre Notificación en el Extranjero de Documentos Judiciales y Extrajudiciales en Materia Civil o Comercial, firmada en La Haya el 15 de noviembre de 1965.

Hemos adjuntado para cada documento la traducción correspondiente en español. En caso de poder ser de alguna ayuda con respecto a la notificación y traslado de estos documentos, sírvase ponerse en contacto con nosotros. Le agradecemos anticipadamente por su asistencia y quedamos a la espera de recibir el certificado firmado como constancia de recibo.

Saluda atentamente,

Michael J. Baratz

Adjuntos

WASHINGTON      NfcW YORK      CHICAGO      PHOENIX      LOS ANGELES      CENTURY CITY      LONDRES      BRUSELAS

Departamento de Justicia de los EE. UU.
Servicio de Oficiales de Justicia de EE. UU.
(Marshals Service)



# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS
### PETICIÓN
### *DE NOTIFICACIÓN Y TRASLADO DE DOCUMENTOS JUDICIALES Y*
### *EXTRAJUDICIALES*

**Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.**
*Convención sobre notificación en el extranjero de documentos judiciales y extrajudiciales en
material civil o comercial, firmada en La Haya el 15 de noviembre de 1965.*

| Identity and address of the applicant<br>*Identidad y domicilio del solicitante*<br><br>Steven K. Davidson Steptoe & Johnson LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036 | Address of receiving authority<br>*Domicilio de la autoridad receptora*<br><br>Ministerio de Asuntos Exteriores<br>Av. Urdaneta<br>Torre MRE<br>al lado def Correo de Carmelitas<br>Caracas<br>Venezuela |
|---|---|

**The undersigned applicant has the honour to transmit -- in duplicate -- the documents listed below and, in conformity with article 5
of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e., (identity and address)**
*El que suscribe tiene el honor de emitir –por duplicado - los documentos que se enumeran a continuación, conforme con el artículo de la
Convención antes indicada, y solicita el traslado y notificación inmediata de un ejemplar al destinatario, a saber: (identidad y domicilio)*

<u>PDVSA Cerro Negro S.A., Avenida Veracruz con Calle Cali,</u>

<u>Edificio Pawa, Las Mercedes, Ciudad, Venezuela</u>

x     (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
       *a)   conforme a las disposiciones legales (artículo 5 de la Convención, párrafo 1, sección a).*

☐    (b) in accordance with the following particular method {sub-paragraph (b) of the first paragraph of article 5)*:
       *b)   conforme al método particular siguiente (artículo 5, párrafo 1, sección b) :*

_____

_____

☐ (c) by delivery to the addressee, if he accepts it voluntarily {second paragraph of article 5)*:
       *c)   por entrega al destinatario, si acepta en forma voluntaria (artículo 5, párrafo 2).*

**The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes with a
certificate as provided on the reverse side.**
*La autoridad debe devolver al solicitante una copia de los documentos y sus anexos con un certificado como el que figura al dorso.*

<u>List of documents</u>
*<u>Listado de documentos</u>*

<u>Notificación a PDVSA Cerro Negro S.A.;</u>
<u>Demanda de Orden de Embargo en Ayuda de</u>
<u>Arbitraje Internacional</u>

Done at _____ the _____
*Emitidos en _____ , el*

Signature and/or stamp
*firma y/o sello*

_____

*   Delete if Inappropriate
*Eliminar si no corresponde.*

Form USM-S4
Est. 11/77
(Anteriormente 08D-116, a su vez el formulario LAA-116 anterior, ambos todavía en uso)

## SUMMARY OF THE DOCUMENT TO BE SERVED
### *DESCRIPCIÓN DEL DOCUMENTO*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**

*Convención sobre notificación y traslado en el extranjero de documentos judiciales y extrajudiciales en materia civil o comercial, firmada en La Haya el 15 de noviembre de 1965.*

### (article 5, fourth paragraph)
*(artículo 5, párrafo cuarto)*

**Name and address of the requesting authority;**
*Nombre y domicilio del solicitante:*

Steven K. Davidson, 1330 Connecticut Avenue, NW, Washington, DC 20036 _____

**Particulars of the parties:**
*Identificación de las partes:*

Abogado de la Parte Actora, debidamente autorizado para solicitar notificación y traslado en virtud de la Regla 4 de las Reglas de Procedimiento Civil de los EE. UU.

### JUDICIAL DOCUMENT
*DOCUMENTO JUDICIAL*

**Nature and purpose of the document:**
*Naturaleza y objeto del documento:*

Documentos iniciales presentados en una acción legal pendiente en un Tribunal de Primera Instancia de los Estados Unidos

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Naturaleza y propósito de las actuaciones y, si corresponde, la pretensión objeto de la causa:*

Procedimiento de embargo en ayuda de arbitraje internacional

**Date and place for entering appearance:**
*Fecha y lugar de comparecencia:*

Las comparecencias han sido registradas

**Court which has given judgment\*\*:**
*Tribunal que dictó sentencia\*\*:*

_____

**Date of judgment\*\*:**
*Fecha de la sentencia\*\*:*

**Time limits stated in the document\*\*:**
*Plazos indicados en el documento\*\*:*

El plazo para la contestación es generalmente de 20 días después de recibida la notificación _____

### EXTRAJUDICIAL DOCUMENT
*DOCUMENTO EXTRAJUDICIAL*

**Nature and purpose of the document:**
*Naturaleza y objeto del documento:*

_____

**Time limits stated In the document:\*\***
*Plazos indicados en el documento\*\*:*

_____

# CERTIFICATE
## *CERTIFICACIÓN*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*El que suscribe tiene el honor de certificar, en conformidad con al artículo 6 de la Convención,*

1) that the document has been served *
*1) que se ha dado traslado del documento*
- the (date) -- *la (fecha)* _____
- at (place, street, number) - en *(lugar, calle, número)*

_____

- in one of the following methods authorized by article 5:
- *por uno de acuerdo con uno de los métodos siguientes previstos en el artículo 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*,
*(a) conforme a las disposiciones legales (artículo 5 de la Convención, párrafo 1, sección a,*

☐ (b) in accordance with the following particular method:
*(b) según el método particular siguiente:*

☐ (c) by delivery to the addressee, who accepted it voluntarily*
*(c) entrega al destinatario, quien aceptó en forma voluntaria*

The documents referred to in the request have been delivered to:
*Los documentos mencionados en la petición han sido entregados a:*

- (identity and description of person)
- *(Identificación y descripción de la persona)*

_____

- relationship to the addressee family, business or other
- *relación de parentesco, de trabajo u otra con el destinatario:*

_____

2) that the document has not been served, by reason of the following facts*:
*2) que la demanda ha sido notificada, de acuerdo con los hechos siguientes*:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*En conformidad con el artículo 12, párrafo 2 de la Convención, el solicitante debe pagar o reembolsar los gastos que se describen en la declaración adjunta*

ANNEXES
*Anexos*

Documents returned:
*Documentos devueltos:*

_____
_____
_____

In appropriate cases, documents establishing the service:
*En caso que corresponda, constancia de notificación:*

_____
_____
_____

Done at _____ , the _____
*Emitido en* _____ *, el*

Signature and/or stamp
*Firma y/o sello*

_____



**UNIVERSE**
TECHNICAL TRANSLATION

9225 Katy Freeway, Suite 400
Houston, Texas 77024 U.S.A.

Tel: 713.827.8800
Fax: 713.464.5511

Email: universe@pdq.net
www.universetranslation.com

## CERTIFICATION AND NOTARIZATION

THE UNDERSIGNED, having been duly sworn, hereby states and deposes that to the best of our knowledge, the translation of the following documents from English into Spanish are true and valid translations of the originals, on this 10th of January, 2008.

- **Hague Convention Service of Documents, dated: January 9th, 2008**

Francisco Carrión

State of Texas
County of Harris

THE UNDERSIGNED NOTARY PUBLIC in and for the State of Texas hereby attests that the above Francisco Carrión did personally appear before her on the 10th of January, 2008 and, having been duly sworn, did execute this document, in witness thereof I hereby affix my signature.

Marion Rifkind



M. RIFKIND
Notary Public, State of Texas
My Commission Expires
JAN. 7, 2009

Multilingual Resources For All International Projects



**UNIVERSE**
TECHNICAL TRANSLATION

9225 Katy Freeway, Suite 400
Houston, Texas 77024 U.S.A.

Tel: 713.827.8800
Fax: 713.464.5511

Email: universe@pdq.net
www.universetranslation.com

## CERTIFICATION AND NOTARIZATION

THE UNDERSIGNED, having been duly sworn, hereby states and deposes that to the best of our knowledge, the translation of the following documents from English into Spanish are true and valid translations of the originals, on this 10th of January, 2008.

- **Hague Convention Service of Documents, dated: January 9th, 2008**

Francisco Carrión

State of Texas
County of Harris

THE UNDERSIGNED NOTARY PUBLIC in and for the State of Texas hereby attests that the above Francisco Carrión did personally appear before her on the 10th of January, 2008 and, having been duly sworn, did execute this document, in witness thereof I hereby affix my signature.

Marion Rifkind



M. RIFKIND
Notary Public, State of Texas
My Commission Expires
JAN. 7, 2009

Multilingual Resources For All International Projects

Houston  ·  London  ·  Moscow  ·  Baku

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|----------|-------------|----------|

**SUMMONS IN A CIVIL ACTION**

V.

CASE NUMBER:

# 07 CV 11590

*JUDGE BATTS*

TO: (Name and address of Defendant)

PDVSA Cerro Negro S.A.
Avenida Veracruz con Calle Cali
Edificio Pawa, Las Mercedes, Ciudad
Venezuela

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                                    DEC 2 7 2007

| CLERK | DATE |
|-------|------|

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                      Date                              *Signature of Server*


                                          _____
                                          *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Southern _____  District of  _____ New York _____

**SUMMONS IN A CIVIL ACTION**

V.

CASE NUMBER:

# 07 CV 11590

## JUDGE BATTS

TO: (Name and address of Defendant)

PDVSA Cerro Negro S.A.
Avenida Veracruz con Calle Cali
Edificio Pawa, Las Mercedes, Ciudad
Venezuela

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                                    DEC 2 7 2007
_____          _____
CLERK                                                      DATE

_____
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                        Date                        Signature of Server

                                    _____
                                    Address of Server

_____
(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

A0 440 (Rev. 8/01) Citación en una acción civil

# TRIBUNAL DE PRIMERA INSTANCIA DE ESTADOS UNIDOS

Distrito Sur de Nueva York

CITACIÓN EN UNA ACCIÓN CIVIL

V.

NÚMERO DE CAUSA:
07 CV 11590
JUEZ BATTS

PARA: (Nombre y dirección del Demandado)

PDVSA Cerro Negro S.A. Avenida
Veracruz con Calle Cali Edificio
Pawa, Las Mercedes, Ciudad
Venezuela

**POR LA PRESENTE SE LE NOTIFICA** y exige que diligencie al ABOGADO DE LA PARTE ACTORA
(nombre y dirección)

Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019

una contestación a la demanda que se le notifica por intermedio de esta citación, dentro de un plazo de 20 días a partir de esta notificación, sin incluir el día de recepción. En caso de incumplimiento, se dictará una sentencia en rebeldía en su contra por la reparación exigida en la demanda. Toda contestación que notifique a las partes de esta acción legal deberá ser presentada ante el Secretario de este Juzgado en un plazo razonable a partir de recibida la notificación.

J. MICHAEL McMAHON                    27 de Diciembre, 2007
SECRETARIO                            FECHA
/Firmado/ Marcos Quintero
(Por) SUBSECRETARIO

AO 440 (Rev. 8/01) Citación en una acción civil

| CONSTANCIA DE TRASLADO Y NOTIFICACIÓN | |
|---|---|
| El traslado de la Citación y Demanda fue hecho por mí[1] | FECHA |
| NOMBRE DEL OFICIAL NOTIFICADOR *(IMPRENTA)* | CARGO |

*Marcar la opción correcta para indicar el modo de notificación*

☐   Entregado en persona al demandado. Lugar de notificación:

☐   Se dejaron copias en la vivienda o domicilio habitual del demandado en manos de una persona de edad y criterio adecuados con residencia en el lugar.

   Nombre de la persona donde se dejó la citación y demanda:

☐   Devuelto sin cumplir con las formalidades:

☐   Otro (especificar):

| DECLARACIÓN DE CARGOS DEL TRASLADO Y NOTIFICACIÓN | | |
|---|---|---|
| VIÁTICOS | TRASLADO Y NOTIFICACIÓN | TOTAL $0.00 |

**DECLARACIÓN DEL OFICIAL NOTIFICADOR**

   Declaro bajo delito de perjurio conforme a las leyes de los Estados Unidos de Norteamérica que la información precedente contenida en la Constancia de Traslado y Notificación y la Declaración de los Cargos de Traslado y Notificación es verdadera y correcta.

Firmado el _____

   Fecha                                    _____
                                                *Firma del Oficial Notificador*

                                             _____
                                                *Domicilio del Oficial Notificador*

(1) Con respecto a quién puede diligenciar una citación ver Regla 4 de las Reglas Federales de Procedimiento Civil.

A0 440 (Rev. 8/01) Citación en una acción civil

# Tribunal de Primera Instancia de Estados Unidos

Distrito Sur de Nueva York

CITACIÓN EN UNA ACCIÓN
CIVIL

V.

NÚMERO DE CAUSA:
07 CV 11590
JUEZ BATTS

PARA: (Nombre y dirección del Demandado)

PDVSA Cerro Negro S.A. Avenida
Veracruz con Calle Cali Edificio
Pawa, Las Mercedes, Ciudad
Venezuela

**POR LA PRESENTE SE LE NOTIFICA** y exige que diligencie al ABOGADO DE LA PARTE ACTORA
(nombre y dirección)

Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019

una contestación a la demanda que se le notifica por intermedio de esta citación, dentro de un plazo de 20 días a
partir de esta notificación, sin incluir el día de recepción. En caso de incumplimiento, se dictará una sentencia en
rebeldía en su contra por la reparación exigida en la demanda. Toda contestación que notifique a las partes de
esta acción legal deberá ser presentada ante el Secretario de este Juzgado en un plazo razonable a partir de
recibida la notificación.

J. MICHAEL McMAHON                    27 de Diciembre, 2007
SECRETARIO                           FECHA
/Firmado/ Marcos Quintero
(Por) SUBSECRETARIO

AO 440 (Rev. 8/01) Citación en una acción civil

## CONSTANCIA DE TRASLADO Y NOTIFICACIÓN

| El traslado de la Citación y Demanda fue hecho por mí[1] | FECHA |
|---|---|
| NOMBRE DEL OFICIAL NOTIFICADOR *(IMPRENTA)* | CARGO |

*Marcar la opción correcta para indicar el modo de notificación*

☐   Entregado en persona al demandado. Lugar de notificación:

☐   Se dejaron copias en la vivienda o domicilio habitual del demandado en manos de una persona de edad y criterio adecuados con residencia en el lugar.

    Nombre de la persona donde se dejó la citación y demanda:

☐   Devuelto sin cumplir con las formalidades:

☐   Otro (especificar):

### DECLARACIÓN DE CARGOS DEL TRASLADO Y NOTIFICACIÓN

| VIÁTICOS | TRASLADO Y NOTIFICACIÓN | TOTAL $0.00 |
|---|---|---|

### DECLARACIÓN DEL OFICIAL NOTIFICADOR

Declaro bajo delito de perjurio conforme a las leyes de los Estados Unidos de Norteamérica que la información precedente contenida en la Constancia de Traslado y Notificación y la Declaración de los Cargos de Traslado y Notificación es verdadera y correcta.

Firmado el _____

      Fecha

                        *Firma del Oficial Notificador*

                        *Domicilio del Oficial Notificador*

(1) Con respecto a quién puede diligenciar una citación ver Regla 4 de las Reglas Federales de Procedimiento Civil.

**TRIBUNAL DE PRIMERA INSTANCIA DE ESTADOS UNIDOS
PARA EL DISTRITO SUR DE NUEVA YORK**

MOBIL CERRO NEGRO, LTD.
Shirley House,
50 Shirley St.,
Nassau, New Providence,
Commonwealth de las Bahamas

              Parte actora,

     v.

PDVSA CERRO NEGRO S.A. Avenida
Veracruz con Calle Cali, Edificio Pawa,
Las Mercedes, Ciudad, Venezuela

              Parte demandada.

**JUEZ BATTS**
Número de causa: **07 CV 11590**

PRESENTADO
CORTE D EPRIMERA
INSTANCIA DE EE.UU.
27 DE DIC. DE 2007 11:37 AM
D.S. DE N.Y.

## DEMANDA DE ORDEN DE EMBARGO

### EN AYUDA DE ARBITRAJE
### INTERNACIONAL

En su demanda de la presente acción legal, la parte actora Mobil Cerro Negro, Ltd.

("Mobil CN") declara lo siguiente:

### NATURALEZA DE LA ACCIÓN

1.La presente es una acción para peticionar una orden de embargo en conformidad con

la ley de Nueva York y de ayuda en un procedimiento de arbitraje internacional por una suma

de miles de millones de dólares que Mobil CN iniciará en el Distrito Sur de Nueva York en un

plazo de treinta (30) días después de que se libre una Orden de Embargo para el cobro de

indemnización por daños y perjuicios por parte del Demandado PDVSA Cerro Negro S.A.

("PDVSA CN") por el incumplimiento de su obligación contractual de indemnizar a Mobil CN

por los daños y perjuicios resultantes de la expropiación sin ninguna compensación de la inversión de Mobil CN en la República Bolivariana de Venezuela ("Venezuela"). El artículo 18.2 del Convenio de Asociación Cerro Negro (el "Convenio de Asociación") estipula que "toda disputa que surja o esté relacionada con este Convenio [de Asociación] será resuelto exclusiva y definitivamente por arbitraje. ... Excepto las partes acuerden lo contrario, los procedimientos de arbitraje bajo este Convenio se realizarán en la Ciudad de Nueva York ...." El arbitraje comenzará conforme a las Reglas de Arbitraje de la Cámara Internacional de Comercio ("ICC", por sus siglas en inglés). Con esta acción, Mobil CN pretende preservar, mientras se sustancie el arbitraje, los únicos activos conocidos dentro de los Estados Unidos de PDVSA CN, una corporación venezolana. Sin la reparación provisional solicitada, toda sentencia a la que pueda tener derecho Mobil CN será ineficaz.

## COMPETENCIA Y FUERO

2.      Se confiere a este Tribunal la competencia en razón de la materia por disposición del Título 28 del Código de Estados Unidos 28, Sección 1331 porque esta acción surge bajo las leyes de ese país, específicamente conforme al Capítulo 2 de la Ley Federal de Arbitraje ("Convención sobre el reconocimiento y ejecución de las sentencias arbitrales extranjeras"), *ver* Título 9 del Código de EE. UU., Sección 203 (2000).

3.      La jurisdicción sobre la persona del demandado corresponde a este Tribunal porque PDVSA CN aceptó someterse a arbitraje en la Ciudad de Nueva York, Estado de Nueva York.

4.      Se encuentra dentro de la competencia de este Tribunal la deuda o bienes que son propiedad de PDVSA CN.

5.      El fuero corresponde a este distrito en virtud de la Sección 204 del Título 9 del Código de EE. UU., ya que abarca el lugar designado en el acuerdo como lugar de arbitraje. Por

14.    Conforme al Convenio de Asociación y al Acuerdo de Reserva y Dedicación complementario, Lagoven (empresa a la que Venezuela encomendó el desarrollo de la zona de Cerro Negro), autorizó a PDVSA CN, Mobil CN y a Veba Orinoco explotar los yacimientos petrolíferos ubicados en la zona de Cerro Negro durante los 35 años del plazo de duración de la empresa.

## Obligación de PDVSA CN de indemnizar a Mobil CN

15.    En el Convenio de Asociación, PDVSA CN se comprometió a indemnizar a Mobil CN, en una suma establecida conforme al Acuerdo, por daños y perjuicios sufridos por Mobil CN como consecuencia de cualquier Acción Discriminatoria que causare un Impacto Negativo Sustancial, según se define en el Convenio de Asociación. Entre las Acciones Discriminatorias que causan un Impacto Negativo Sustancial se incluye la expropiación de los derechos de Mobil CN en la empresa conjunta Cerro Negro y otras medidas gubernamentales adversas que en general no se aplican a las sociedades anónimas y que restringen los flujos de caja de Mobil CN. *Ver* Baratz Decl., Ex. 1, Art. 15.1(b) (Convenio de Asociación); Ex. 16, (Acuerdo de Procedimientos Contables).

16.    El Acuerdo de Procedimientos Contables, que se adjunta al Convenio de Asociación, establece una fórmula para calcular el monto de indemnización adeudado por PDVSA CN por cualquier Acción Discriminatoria que pueda causar un Impacto Negativo Sustancial.

17.    Conforme al artículo 7.4 del Acuerdo de Procedimientos Contables, para calcular la indemnización que debe pagar PDVSA CN primero hay que determinar la diferencia entre el Flujo Neto de Caja de un año fiscal dado, teniendo en cuenta el impacto de la(s) Acción (Acciones) Discriminatoria(s), y el Flujo Neto de Caja correspondiente al mismo período sin considerar el impacto de esas medidas. La obligación de indemnizar surge

cuando esa diferencia supera el 5% del Flujo Neto de Caja del participante para ese año fiscal.

18.    La indemnización calculada tiene un techo: La obligación de PDVSA CN de indemnizar no puede superar la diferencia entre el Flujo de Caja Mínimo y el Flujo Neto de Caja Ajustado, según la definición de estos términos en el Convenio de Asociación.

19.    El Convenio de Asociación estipula ciertos pasos que se deben cumplir antes de que venza la obligación de PDVSA CN. Esos pasos han sido cumplimentados.

20.    PDVSA CN debe cumplir en buena fe con sus obligaciones estipuladas en el Convenio de Asociación.

## Las acciones discriminatorias del gobierno venezolano

21.    Desde el mes de octubre del 2004, Venezuela ha tomado una serie de medidas adversas contra Mobil CN que constituyen Acciones Discriminatorias bajo el Convenio de Asociación porque estas medidas son Acciones Gubernamentales, según se definen en el Convenio de Asociación, o cambios en la legislación venezolana que no se aplican a todas las compañías en Venezuela o que violan el Marco de Condiciones.

22.    Entre estas Acciones Discriminatorias cabe mencionar: (i) expropiación directa de los derechos de Mobil CN en el Convenio de Asociación y en la empresa conjunta Cerro Negro sin ninguna compensación; (ii) rechazo del Acuerdo de Reducción de Regalías e imposición del denominado impuesto de extracción (una regalía disfrazada); (iii) denegación del permiso de expandir el Proyecto de Cerro Negro bajo los términos y condiciones previamente acordados; (iv) aumentos en los impuestos sobre la renta a los participantes de operaciones empresariales en la Faja Petrolífera del Orinoco en violación del Marco de Condiciones; e (v) imposición de restricciones de producción y exportación a la empresa conjunta Cerro Negro en violación del Convenio de Asociación.

23.    El 26 de febrero de 2007, el Presidente Chávez de Venezuela publicó el Decreto Nº 5200 sobre la migración de empresas mixtas de los convenios de asociación de la Faja Petrolífera del Orinoco, como también los de exploración a riesgo y ganancias compartidas(el "decreto de nacionalización").

24.    El decreto de nacionalización ordenó, entre otras cosas, que las asociaciones estratégicas localizadas en la Faja Petrolífera del Orinoco, incluido Cerro Negro, se transformen ("migren") en empresas mixtas nuevas en los términos establecidos en la Ley Orgánica de Hidrocarburos, en las que PDVSA o una de sus subsidiarias tendría como mínimo un 60% de participación accionaria.

25.    Conforme al artículo 4 del decreto de nacionalización, los participantes de las denominadas asociaciones estratégicas localizadas en la Faja Petrolífera del Orinoco, como Mobil CN, tenían cuatro (4) meses (hasta el 26 de junio de 2007) para aceptar los términos no negociables bajo los cuales podrían participar en las nuevas empresas mixtas.

26.    Las empresas mixtas se establecerían y operarían de acuerdo con un marco legal diferente (la Ley Orgánica de Hidrocarburos) y con nuevos convenios contractuales que reemplazarían a los anteriores convenios de asociación. El nuevo régimen legal y contractual no solo redujo sustancialmente el activo neto sino que restringió radicalmente los derechos de las empresas privadas, como Mobil CN, participantes en esos proyectos.

27.    Además, por el artículo 3 del decreto de nacionalización, se exigió que el operador del Proyecto Cerro Negro entregara el control de todas las actividades y operaciones relacionadas con el proyecto a la Corporación Venezolana del Petróleo, S.A. ("CVP"), una subsidiaria en propiedad absoluta de PDVSA, (o a otra filial de PDVSA) antes del 30 de abril de 2007.

28.    En esa fecha, bajo coerción del decreto de nacionalización y con plena

reserva de derechos, Operadora Cerro Negro, S.A., una subsidiaria en propiedad absoluta de Mobil que operaba el Proyecto Cerro Negro, entregó a PDVSA Petróleo S.A., una subsidiaria de PDVSA, las operaciones y el control de todas las operaciones relacionadas con el Proyecto Cerro Negro.

29.    A fin de cumplir con el decreto de nacionalización, Mobil CN discutió con Venezuela los términos y condiciones de la participación potencial de Mobil CN en la nueva empresa mixta en control del Proyecto Cerro Negro.

30.    Al 26 de junio de 2007, Mobil CN se negó a aceptar los términos no negociables que Venezuela proponía, la cual no ofreció indemnización por tomar los derechos de Mobil CN bajo el Convenio de Asociación, como lo exige la ley aplicable.

31.    El artículo 5 del decreto de nacionalización establece que, si los participantes en asociaciones estratégicas, como Mobil CN, se niegan a aceptar los términos de las nuevas empresas mixtas antes de finalizar el período de cuatro meses contemplado en el artículo 4 (que venció el 26 de junio de 2007), "la República, a través de Petróleos de Venezuela S.A. o de cualquiera de sus subsidiarias designadas a tal efecto, asumirán en forma directa las actividades de las asociaciones".

32.    Al 27 de junio de 2007, Mobil CN fue privada de su participación en las actividades y la producción de la empresa conjunta Cerro Negro. En consecuencia, a partir de esa fecha, Venezuela expropió, sin compensación alguna, los intereses de Mobil CN en la empresa Cerro Negro, incluyendo la participación de Mobil CN en el Convenio de Asociación. Esta expropiación fue ratificada por la Asamblea Nacional en octubre del 2007.

### Incumplimiento de PDVSA CN del Convenio de Asociación Cerro Negro

33.    El 22 de junio de 2007, Mobil CN notificó por escrito a PDVSA CN y a

PDVSA, conforme al Convenio de Asociación, que las medidas precitadas constituyen Acciones Discriminatorias que pueden producir un Impacto Negativo Sustancial en el año fiscal 2007 y en los ejercicios fiscales futuros.

34.    El 25 y 27 de junio de 2007, Mobil CN notificó por escrito a PDVSA CN y PDVSA, conforme al Convenio de Asociación, que las medidas precitadas constituyen Acciones Discriminatorias que pueden producir un Impacto Negativo Sustancial en el año fiscal 2007 y en los ejercicios fiscales futuros, y reclamó el pago inmediato de indemnización como lo establecen los términos del Convenio de Asociación.

35.    El 6 de septiembre de 2006, en un esfuerzo para atenuar los daños y perjuicios como lo establece el Convenio de Asociación, Mobil CN y otras entidades relacionadas, presentaron una Petición de Arbitraje ante el Centro Internacional de Acuerdos de Diferencias Relativas a Inversiones para solicitar compensación por parte de Venezuela respecto de, entre otras cosas, las medidas descritas más arriba, incluyendo la expropiación de los intereses de Mobil CN en la empresa conjunta Cerro Negro.

36.    PDVSA CN ha reconocido que el decreto de nacionalización llevó a cabo una expropiación de los derechos de Mobil CN en Cerro Negro.

37.    PDVSA CN tiene la obligación de indemnizar a Mobil CN por cualquier Acción Discriminatoria que produzca un Impacto Negativo Sustancial.

38.    Como resultado de la expropiación de los derechos de Mobil CN en la empresa conjunta Cerro Negro que ejecutó Venezuela, Mobil CN ha sufrido una disminución seria en su Flujo Neto de Caja correspondiente al año 2007 y fue privada de todo Flujo Neto de Caja para los 28 años fiscales restantes del plazo acordado para el Proyecto Cerro Negro.

39.    Como resultado de las Acciones Discriminatorias, el Flujo Neto de Caja de

Mobil CN no guardará relación razonable con el Flujo de Caja Mínimo en el ejercicio fiscal 2007 o en ninguno de los 28 años fiscales futuros del plazo acordado para el Convenio de Asociación.

40.    A pesar del reconocimiento de la expropiación de los intereses de Mobil CN en la empresa conjunta Cerro Negro, y contrario a la obligación de cumplir con sus responsabilidades contractuales en buena fe, PDVSA CN no realizó los pasos contemplados en el artículo 15.1, párrafos (a) y (b) del Convenio de Asociación.

### Los activos dentro de esta jurisdicción – la cascada de dinero

41.    La empresa conjunta Cerro Negro se financió, en parte, con una financiación mediante emisión de obligaciones de $600.000.000 proporcionada por Cerro Negro Finance, Ltd. en 1998.

42.    Cerro Negro Finance, Ltd. es un vehículo constituido para un fin concreto en conformidad con las leyes de las Islas Caimanes con el propósito exclusivo de emitir bonospara financiar una parte de la empresa conjunta Cerro Negro.

43.    El bono original emitido en 1998 fue por $600.000.000.

44.    Se estima que la cantidad de bonos actualmente en circulación es de $538.000.000.

45.    El producto de los bonos se dividió en partes iguales entre Mobil CN y PDVSA CN para financiar la empresa conjunta Cerro Negro.

46.    Se protegieron los derechos de los tenedores de bonos por medio de un Contrato de Garantía Común, el cual exigía varias garantía reales como garantías subsidiarias y otras restricciones para usar y disponer de ciertos activos.

47.    La garantía y otros activos relevantes de esta medida fue una serie de cuentas creadas y mantenidas en bancos de la Ciudad de Nueva York, Estado de Nueva York. Mobil

CN y PDVSA CN debían tener en Nueva York (i) una cuenta reservada para desembolsos, (ii) una cuenta separada de ingresos operativos, (iii) una cuenta separada de distribución, (iv) una cuenta separada de productos de accidentes, (v) una cuenta separada para organización y métodos, y (vi) una cuenta separada de servicios de deuda. Además, Mobil CN tuvo que abrir una cuenta de reserva de servicios de deuda.

48.    Estas cuentas junto con otras que no estaban ubicadas en Nueva York fueron denominadas en forma conjunta como las Cuentas del Proyecto.

49.    El Contrato de Garantía Común estableció la "cascada de dinero".

50.    Bajo la cascada de dinero, los productos de las Cuentas del Proyecto se distribuyeron en un orden definido y para fines particulares. En general, las distribuciones primero iban a financiar el proyecto y luego, a reintegrar a los tenedores de deudas.

51.    Como parte de la garantía subsidiaria para garantizar el rescate de los bonos emitidos por Cerro Negro Finance, Ltd., Mobil CN aportó sus derechos en la cascada de dinero como garantía real.

52.    PDVSA CN garantizó a los tenedores de bonos de distintas maneras; envió instrucciones irrevocables al Banco de Nueva York, en calidad de administrador de valores, para restringir el uso de los fondos a los términos del Convenio de Garantía Común.

53.    No obstante, una vez que se pague a los tenedores de bonos, se levantarán las restricciones impuestas a la cascada de dinero, incluidas las instrucciones irrevocables.

54.    En consecuencia, PDVSA CN y Mobil CN tendrán acceso irrestricto a sus partes respectivas de la cascada de dinero.

55.    PDVSA hizo una Oferta de Compra de todos los bonos en circulación de Cerro Negro Finance, Ltd. antes del 31 de diciembre de 2007.

56.    Una vez que PDVSA compre los bonos en circulación, las cantidades

restantes en la cascada de dinero quedarán libres de restricciones. La parte de PDVSA CN

en la cascada de dinero (actualmente unos $300.000.000) es con probabilidad el único activo

de PDVSA CN disponible para satisfacer cualquier laudo arbitral.

57.    A la compra de PDVSA de los bonos en circulación, las instrucciones

irrevocables concluirán y PDVSA CN estará libre de transferir desde Nueva York su parte de

la cascada de dinero y disipar los fondos o tomar otra medida para hacer que los fondos

estén inaccesibles para cancelar cualquier laudo arbitral.

58.    El propósito de esta acción legal es embargar los derechos de PDVSA CN en

la cascada de de efectivo, para garantizar, al menos parcialmente, el pago del laudo que

Mobil CN probablemente obtenga en el arbitraje de ICC.

59.    Conforme a los términos de la Oferta de Compra, la consumación de la

oferta requiere la oferta válida de los bonos por parte de los tenedores que representan el

setenta y cinco por ciento (75%) del monto de capital global de todos los bonos en

circulación y el recibo del consentimiento de los tenedores de bonos para eliminar la

garantía real y terminar las instrucciones irrevocables. Más del noventa por ciento (90%) de

los tenedores de bonos han ofertado sus bonos conforme a los términos de la Oferta de

Compra.

60.    El 28 de diciembre de 2007 o alrededor de esa fecha, Venezuela o

PDVSA transferirán al Chase Manhattan Bank el dinero requerido para financiar la

compra de los bonos en circulación de Cerro Negro Finance, Ltd. que son licitados

conforme a los términos de la Oferta de Compra.

61.    Se estima que el monto total de fondos que se requieren para comprar

todos los bonos en circulación con arreglo a la oferta es de $538.000.000.

62.    El 28 de diciembre de 2007 o después de esa fecha, pero antes del 31 de

diciembre, PDVSA adquirirá cualesquier bonos en circulación de Cerro Negro Finance,

Ltd. que se liciten conforme a los términos de la Oferta de Compra.

63.    En conformidad con la Oferta de Compra, los únicos activos de PDVSA CN

son los que están relacionados con el Proyecto Cerro Negro. Después de que PDVSA

adquiera los bonos, los activos que en la actualidad se utilizan en la operación del Proyecto

Cerro Negro y los derechos para desarrollar las reservas petroleras relacionadas se

transferirán a una nueva "Empresa Mixta", con la que Mobil CN no tiene ninguna relación

contractual. El 83% de la nueva Empresa Mixta será de CVP y el 16 % de British Petroleum

plc, a través de Veba. Por consiguiente, tras el cierre de la Oferta de PDVSA para comprar

los bonos en circulación, la cascada de dinero será el único activo de PDVSA CN.

64.    Una vez que PDVSA adquiera los bonos, la cascada de dinero, que había

estado garantizando el rescate de los bonos, será liberada y probablemente la parte de

PDVSA CN sea transferida fuera del alcance de Mobil CN entre el 28 y el 31 de diciembre

de 2007.

## DECLARACIÓN I
## PARA ORDEN DE EMBARGO

## CONFORME A LA SECCIÓN 7502 (c) Y ART. 62

## DE LA LEY Y REGLAS DE PRÁCTICA CIVIL (C.P.L.R.) DE N.Y.

65.    Mobil CN vuelve a argumentar e incorpora los párrafos 1-64 de la

Demanda.

66.    Mobil CN iniciará el arbitraje ICC dentro de los 30 días después de que se

expida la Orden de Embargo, a menos que este plazo sea extendido por el Tribunal.

67.    Mobil CN tiene una acción legal contra PDVSA CN bajo la forma de

reclamaciones que se entablarán en el arbitraje ICC y en las que Mobil CN tiene derecho a

un fallo monetario presentado en un laudo arbitral definitivo.

68.    Es probable que Mobil CN tenga éxito en los méritos de sus reclamos de arbitraje porque el incumplimiento de los convenios por parte de PDVSA CN es evidente.

69.    Sin una orden de embargo, el laudo arbitral no será efectivo, entre otras razones, porque (1) la cascada de dinero es la única fuente viable de fondos para cumplir con un laudo en el arbitraje ICC; (2) la situación financiera de PDVSA CN hace que la recuperación sea poco probable porque los intereses de PDVSA CN en el proyecto de Cerro Negro están siendo transferidos a la nueva empresa mixta; (3) la parte de PDVSA CN de la cascada de dinero puede ser fácilmente — y es muy probable que así sea — transferida fuera del alcance de los acreedores; y (4) Mobil CN tendrá dificultad para hacer cumplir el laudo contra PDVSA CN fuera de esta jurisdicción.

70. La suma demandada a PDVSA CN supera todas las reconvenciones conocidas a Mobil CN.

## PETITORIO DE REPARACIÓN

POR TANTO, el Tribunal debe dictar sentencia a favor de Mobil CN y en contra

del Demandado:

      a.      librando una Orden de Embargo para gravar dentro de la jurisdicción de

este Tribunal, en cualquier momento antes de que se dicte el laudo arbitral definitivo, los bienes

sobre los cuales PDVSA CN tiene derechos y las obligaciones adeudadas a PDVSA CN de

modo que se cubra el monto especificado en la Orden de Embargo;

      b.      Ordenando a la Parte Demandada a pagar los honorarios de abogados

y costas asociados con esta acción; y

      c.      Adjudicando otras reparaciones que puedan ser justas en estas

circunstancias.

Fechado: Nueva York, Nueva York
27 de diciembre de 2007

Presentado con el debido respeto.

[firmado] _____

Michael C. Miller (MM-4632)
STEPTOE & JOHNSON LLP 750
Seventh Avenue, Suite 1900 New
York, New York 10019 tel: (212)
506-3900 fax: (212) 506-3950

Howard H. Stahl *(pro hac vice* solicitud pendiente)
Steven K. Davidson *(pro hac vice* solicitud pendiente)
Mark A. Moran *(pro hac vice* solicitud pendiente)
Michael J. Baratz *(pro hac vice* solicitud pendiente)
STEPTOE & JOHNSON LLP 1330 Connecticut
Avenue, N.W. Washington, D.C. 20036 tel: (202)
429-3000 fax: (202) 429-3902

*Abogado patrocinante de la parte actora*

Por el abogado patrocinante:

Toni D. Hennike
Luis Marulanda del Valle
Departamento Jurídico
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas 77002
713-656-6716 (teléfono)
713-656-3496 (telefax)

Charles A. Beach (CB-6791)
Departamento Jurídico
EXXON MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas 75039-2298
972-444-1466 (teléfono)
972-444-1435 (telefax)

# EXHIBIT C-3
# Part 2



**UNIVERSE**
TECHNICAL TRANSLATION

9225 Katy Freeway, Suite 400
Houston, Texas 77024 U.S.A.

Tel: 713.827.8800
Fax: 713.464.5511

Email: universe@pdq.net
www.universetranslation.com

## CERTIFICATION AND NOTARIZATION

THE UNDERSIGNED, having been duly sworn, hereby states and deposes that to the best of our knowledge, the translation of the following documents from English into Spanish are true and valid translations of the originals, on this 9th of January, 2008.

- **Complaint for Order of Attachment in Aid of International Arbitration Mobil CN v. PDVSA CN S.A.**
- **Summons in a civil action to: PDVSA CN**

Francisco Carrión

State of Texas
County of Harris

THE UNDERSIGNED NOTARY PUBLIC in and for the State of Texas hereby attests that the above Francisco Carrión did personally appear before her on the 9th of January, 2008 and, having been duly sworn, did execute this document, in witness thereof I hereby affix my signature.



Marion Rifkind

M. RIFKIND
Notary Public, State of Texas
My Commission Expires
JAN. 7, 2009



**UNIVERSE**
TECHNICAL TRANSLATION

9225 Katy Freeway, Suite 400
Houston, Texas 77024 U.S.A.

Tel: 713.827.8800
Fax: 713.464.5511

Email: universe@pdq.net
www.universetranslation.com

## CERTIFICATION AND NOTARIZATION

THE UNDERSIGNED, having been duly sworn, hereby states and deposes that to the best of our knowledge, the translation of the following documents from English into Spanish are true and valid translations of the originals, on this 9th of January, 2008.

- Complaint for Order of Attachment in Aid of International Arbitration Mobil CN v. PDVSA CN S.A.
- Summons in a civil action to: PDVSA CN

Francisco Carrión

State of Texas
County of Harris

THE UNDERSIGNED NOTARY PUBLIC in and for the State of Texas hereby attests that the above Francisco Carrión did personally appear before her on the 9th of January, 2008 and, having been duly sworn, did execute this document, in witness thereof I hereby affix my signature.

Marion Rifkind



M. RIFKIND
Notary Public, State of Texas
My Commission Expires
JAN. 7, 2009

Multilingual Resources For All International Projects

H o u s t o n  ·  L o n d o n  ·  M o s c o w  ·  B a

07

Despacho

95

Febrero

- 2008

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOBIL CERRO NEGRO, LTD.<br>Shirley House,<br>50 Shirley St.,<br>Nassau, New Providence,<br>Commonwealth of the Bahamas | )<br>)<br>)<br>)<br>)<br>)<br>) |
|                 Plaintiff, | )<br>) |
|      v. | )<br>) |
| PDVSA CERRO NEGRO S.A.<br>Avenida Veracruz con Calle Cali,<br>Edificio Pawa, Las Mercedes, Ciudad,<br>Venezuela | )<br>)<br>)<br>)<br>)<br>) |
|                 Defendant. | )<br>)<br>) |

JUDGE BATTS

07 CV 11590

Civil Action No. _____

FILED
U.S. DISTRICT COURT
2007 DEC 27 AM 11: 37
S.D. OF N.Y.

**COMPLAINT FOR ORDER OF ATTACHMENT**
**IN AID OF INTERNATIONAL ARBITRATION**

For its Complaint in this action, Plaintiff Mobil Cerro Negro, Ltd. ("Mobil CN") states as follows:

**NATURE OF ACTION**

1.    This is an action for an order of attachment pursuant to New York law and in aid of a multi-billion dollar international arbitration that Mobil CN will commence in the Southern District of New York within thirty (30) days after the Order of Attachment is issued to recover damages from Defendant PDVSA Cerro Negro S.A. ("PDVSA CN") for PDVSA CN's breach of its contractual obligation to indemnify Mobil CN for part of the damages resulting from the

expropriation without compensation of Mobil CN's investment in the Bolivarian Republic of

Venezuela ("Venezuela").    Article 18.2 of the Cerro Negro Association Agreement (the

"Association Agreement") provides that "[a]ny dispute arising out of or concerning this

[Association] Agreement shall be settled exclusively and finally by arbitration. . . . Unless

otherwise agreed by all parties to the arbitration, all arbitration proceedings under this

Agreement shall be conducted in New York City . . . ."  The arbitration will be commenced

pursuant to the Arbitration Rules of the International Chamber of Commerce ("ICC").  By this

action, Mobil CN seeks to preserve, pending arbitration, the only known assets within the United

States of PDVSA CN, a Venezuelan corporation.  Without the requested provisional relief, any

award to which Mobil CN may be entitled will be rendered ineffectual.

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331

because this action arises under the laws of the United States, specifically Chapter Two of the

Federal Arbitration Act ("Convention on the Recognition and Enforcement of Foreign Arbitral

Awards"), *see* 9 U.S.C. § 203 (2000).

3.      Defendant is subject to personal jurisdiction in this Court because PDVSA CN

agreed to submit to arbitration in New York, New York.

4.      There is within the jurisdiction of this Court debt or property belonging to

PDVSA CN.

5.      Venue is appropriate in this district pursuant to 9 U.S.C. § 204 because this

district embraces the place designated in the agreement as the place of arbitration.  In addition,

this district is one in which, save for the arbitration agreement between the parties, an action or

proceeding with respect to the controversy between the parties could have been brought.  The

action could have been brought in this district because, pursuant to 28 U.S.C. § 1391(d), an alien

may be sued in any district.

## THE PARTIES

6.    Plaintiff Mobil CN is a corporation organized and existing under the laws of the

Commonwealth of the Bahamas with a principal place of business at Shirley House, 50 Shirley

St., Nassau, New Providence, Commonwealth of the Bahamas.  Mobil CN is a wholly-owned

indirect subsidiary of Exxon Mobil Corporation.

7.    Defendant PDVSA CN (formerly known as Lagoven Cerro Negro, S.A.) is a

corporation organized and existing under the laws of Venezuela with its principal place of

business at Avenida Veracruz con Calle Cali, Edificio Pawa, Las Mercedes, Ciudad, Venezuela.

PDVSA CN's only known commercial interest is in the Cerro Negro Joint Venture.  PDVSA CN

is a wholly-owned subsidiary of PDVSA Petróleo, S.A., which in turn is a wholly-owned

subsidiary of Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of Venezuela,

which itself is wholly-owned by the Government of Venezuela.  PDVSA CN thus is a third-tier,

indirectly owned subsidiary of the Government of Venezuela.  PDVSA CN was created as an

ordinary Venezuelan "sociedad anónima" (corporation) to engage in a commercial joint venture

with Mobil and Veba Oil, a subsidiary of BP, two multi-national oil companies.  PDVSA CN is a

foreign corporation not qualified to do business within the state of New York.

## FACTUAL BACKGROUND

### The Genesis of the Cerro Negro Joint Venture

8.    In 1991, PDVSA, along with its wholly-owned operating subsidiary Lagoven,

S.A. ("Lagoven"), identified Mobil Corporation ("Mobil") as a candidate possessing both the

expertise and financial capacity to participate in a potential joint venture to develop extra-heavy crude oil fields in the Orinoco Oil Belt in Venezuela.

9.    To induce foreign oil companies to participate in Orinoco Oil Belt ventures, such as the Cerro Negro Joint Venture, PDVSA and Venezuela designed a series of financial incentives meant to make the projects more attractive to potential investors.

10.    Those financial incentives included:  (i) reduction of the applicable income-tax rate, which was granted by statute and incorporated in a "Framework of Conditions" approved by the Venezuelan Congress for the Cerro Negro Joint Venture; (ii) reduction of the applicable royalty, which was granted by means of a Royalty Reduction Agreement; and (iii) the right to expand the project, by individual decision or jointly with other participants, which was expressly incorporated in the Association Agreement.

### The Association Agreement

11.    On October 28, 1997, Lagoven Cerro Negro, S.A. ("Lagoven CN"), a Lagoven subsidiary, Mobil Producción e Industrialización de Venezuela, S.A. ("Mobil PIV"), and Veba Oel Venezuela Orinoco, GmbH ("Veba Orinoco") signed the Association Agreement, which established the Cerro Negro Association as an unincorporated joint venture (the "Cerro Negro Joint Venture") for a term of thirty-five years.

12.    On October 29, 1997, Mobil PIV assigned its rights in the Association Agreement to Mobil CN.

13.    On May 11, 1998, Lagoven CN changed its name to PDVSA CN.  Until the expropriation described below, the parties' percentage interests in the Cerro Negro Joint Venture were:  PDVSA CN – 41 2/3 %; Mobil CN – 41 2/3 %; and Veba Orinoco – 16 2/3 %.

- 4 -

14.     Under the Association Agreement and the companion Reservation and Dedication Agreement, Lagoven (which Venezuela entrusted with development of the Cerro Negro area), authorized PDVSA CN, Mobil CN, and Veba Orinoco to exploit the oil fields located in the Cerro Negro area during the 35-year life of the venture.

## PDVSA CN's Obligation to Indemnify Mobil CN

15.     In the Association Agreement, PDVSA CN undertook to indemnify Mobil CN, in an amount provided under the Agreement, for damages suffered by Mobil CN as a consequence of any Discriminatory Action that causes a Material Adverse Impact, as these terms are defined in the Association Agreement.  Discriminatory Actions causing a Material Adverse Impact include the expropriation of Mobil CN's interests in the Cerro Negro Joint Venture as well as other adverse governmental measures that do not apply to corporations in general and that curtail Mobil CN's cash flows.  *See* Baratz Decl., Ex. 1, Art. 15.1(b) (Association Agreement); Ex. 16, (Accounting Procedures Agreement).

16.     The Accounting Procedures Agreement, which is annexed to the Association Agreement, provides a formula to calculate the amount of indemnification owing by PDVSA CN for any Discriminatory Actions that have caused a Material Adverse Impact.

17.     According to Article 7.4 of the Accounting Procedures Agreement, to calculate the indemnification payable by PDVSA CN one must determine, first, the difference between the Net Cash Flow for a given fiscal year, taking into account the impact of the Discriminatory Action(s), and the Net Cash Flow for the same period without taking into account the impact of that (those) measure(s).  The obligation to indemnify arises whenever that difference exceeds 5% of the participant's Net Cash Flow for that fiscal year.

18.    The indemnification so calculated is limited by a cap: PDVSA CN's obligation to indemnify may not exceed the difference between the Threshold Cash Flow and the Adjusted Net Cash Flow, as these terms are defined in the Association Agreement.

19.    The Association Agreement provides that certain procedural steps be taken before PDVSA CN's obligation to indemnify becomes due. Those steps have been taken.

20.    PDVSA CN is required to discharge its obligations under the Association Agreement in good faith.

## The Discriminatory Actions of the Venezuelan Government

21.    Since October 2004, Venezuela has taken a series of adverse measures against Mobil CN that constitute Discriminatory Actions under the Association Agreement because these measures are Governmental Actions, as defined in the Association Agreement, or changes in Venezuelan law that either do not apply to all companies in Venezuela or violate the Framework of Conditions.

22.    Those Discriminatory Actions include: (i) direct expropriation of Mobil CN's interests in the Association Agreement and the Cerro Negro Joint Venture without compensation; (ii) repudiation of the Royalty Reduction Agreement and imposition of the so-called extraction tax (a disguised royalty); (iii) refusal to allow the expansion of the Cerro Negro Project under previously agreed terms and conditions; (iv) income-tax increases to participants in Orinoco Oil Belt ventures in violation of the Framework of Conditions; and (v) imposition of production and export curtailments to the Cerro Negro Joint Venture in violation of the Association Agreement.

23.    On February 26, 2007, President Chávez of Venezuela issued Decree No. 5200 on the Migration to Mixed Companies of the Association Agreements of the Orinoco Oil Belt, as well as of the Shared-Risk-and-Profit Exploration Agreements (the "Nationalization Decree").

24.     The Nationalization Decree ordered, among other things, that the strategic associations located in the Orinoco Oil Belt, including Cerro Negro, be transformed ("migrated") into new mixed companies under the Organic Law on Hydrocarbons, in which PDVSA or one of its subsidiaries would hold at least a 60% participation interest.

25.     According to Article 4 of the Nationalization Decree, participants in so-called strategic associations located in the Orinoco Oil Belt, such as Mobil CN, had four (4) months (until June 26, 2007) to accept non-negotiable terms under which they could participate in the new mixed companies.

26.     The mixed companies would be established and would operate under a different statutory framework (the Organic Law on Hydrocarbons) and new contractual arrangements that would replace the previous association agreements. The new statutory and contractual regime not only substantially reduced the equity but also radically curtailed the rights of private companies, such as Mobil CN, participating in such projects.

27.     Further, under Article 3 of the Nationalization Decree, the operator of the Cerro Negro Project was required to surrender control of all activities and operations related to the project to Corporación Venezolana del Petróleo, S.A. ("CVP"), a wholly owned subsidiary of PDVSA, (or another affiliate of PDVSA) no later than April 30, 2007.

28.     On that date, under compulsion of the Nationalization Decree and with full reservation of rights, Operadora Cerro Negro, S.A., a wholly-owned subsidiary of Mobil that operated the Cerro Negro Project, surrendered to PDVSA Petróleo S.A., a subsidiary of PDVSA, the operations and control of all activities related to the Cerro Negro Project.

- 7 -

29.    To comply with the Nationalization Decree, Mobil CN discussed with Venezuela terms and conditions for Mobil CN's potential participation in the new mixed company seizing control of the Cerro Negro Project.

30.    As of June 26, 2007, Mobil CN refused to accept the non-negotiable terms and conditions that Venezuela proffered, which failed to provide compensation for the taking of Mobil CN's rights under the Association Agreement as required by applicable law.

31.    Article 5 of the Nationalization Decree provides that, if participants in strategic associations, such as the Mobil CN, refused to accept the terms for new mixed companies by the end of the four-month period contemplated in Article 4 (which expired on June 26, 2007), "the Republic, through Petróleos de Venezuela S.A. or any of its subsidiaries that may be designated for the purpose, shall directly assume the activities of the associations."

32.    As of June 27, 2007, Mobil CN was deprived of its participation in the activities and production of the Cerro Negro Joint Venture. Accordingly, as of that date, Venezuela expropriated, without compensation, the interests of Mobil CN in the Cerro Negro Joint Venture, including Mobil CN's interests in the Association Agreement. This expropriation was ratified by the National Assembly in October 2007.

### PDVSA CN's Breach of the Cerro Negro Association Agreement

33.    On June 22, 2007, Mobil CN notified both PDVSA CN and PDVSA in writing, pursuant to the Association Agreement, that the measures described above constitute Discriminatory Actions that may result in a Material Adverse Impact in fiscal years 2007 and future fiscal years.

34.    On June 25 and June 27, 2007, Mobil CN notified both PDVSA CN and PDVSA in writing, pursuant to the Association Agreement, that the measures described above constitute

Discriminatory Actions that have caused a Material Adverse Impact in fiscal years 2007 and future fiscal years, and demanded prompt payment of indemnification under the terms of the Association Agreement.

35.    On September 6, 2006, in an effort to mitigate damages as required by the Association Agreement, Mobil CN, and other related entities, filed a Request for Arbitration with the International Centre for Settlement of Investment Disputes seeking compensation from Venezuela for, among other things, the measures described above, including the expropriation of Mobil CN's interests in the Cerro Negro Joint Venture.

36.    PDVSA CN has acknowledged that the Nationalization Decree has effected an expropriation of Mobil CN's interest in the Cerro Negro Joint Venture.

37.    PDVSA CN has an obligation to indemnify Mobil CN for any Discriminatory Action that causes a Material Adverse Impact.

38.    As a result of Venezuela's expropriation of Mobil CN's interest in the Cerro Negro Joint Venture, Mobil CN has suffered a severe impairment in its Net Cash Flow for Fiscal Year 2007 and has been deprived of any Net Cash Flow for the remaining 28 fiscal years of the agreed term for the Cerro Negro Project.

39.    As a result of Discriminatory Actions, Mobil CN's Net Cash Flow will bear no reasonable relationship to the Threshold Cash Flow for fiscal year 2007 or for any of the 28 future fiscal years of the agreed term of the Association Agreement.

40.    In spite of acknowledging the expropriation of Mobil CN's interests in the Cerro Negro Joint Venture, and contrary to the duty to perform its contractual obligations in good faith, PDVSA CN has failed to take the steps contemplated in Article 15.1, paragraphs (a) and (b) of the Association Agreement.

- 9 -

## The Assets Within This Jurisdiction -- The Cash Waterfall

41.     The Cerro Negro Joint Venture was financed, in part, through a $600,000,000 bond financing issued by Cerro Negro Finance, Ltd. in 1998.

42.     Cerro Negro Finance, Ltd. is a special purpose vehicle incorporated under the laws of the Cayman Islands for the sole purpose of issuing bonds to finance a portion of the Cerro Negro Joint Venture.

43.     The original bond issued in 1998 was for $600,000,000.

44.     The amount currently outstanding on the bonds is estimated to be $538,000,000.

45.     The proceeds of the bonds were divided equally between Mobil CN and PDVSA CN to finance the Cerro Negro Joint Venture.

46.     The bondholders' interests were protected by a Common Security Agreement, which mandated several security interests as collateral as well as other restrictions on the right to use and dispose of certain assets.

47.     The security and other assets relevant to this action was a series of designated accounts established and maintained at banks in New York, New York. Mobil CN and PDVSA CN were required to establish and maintain in New York (i) a segregated Disbursement Account, (ii) a segregated Operating Revenues Account, (iii) a segregated Distribution Account, (iv) a segregated Casualty Proceeds Account, (v) a segregated O&M Account, and (vi) a segregated Debt Service Account. Additionally, Mobil CN was required to establish a Debt Service Reserve Account.

48.     These accounts, as well as other segregated accounts not maintained in New York, were collectively referred to as the Project Accounts.

49.     The Common Security Agreement established the "cash waterfall."

50.     Under the cash waterfall, proceeds from the Project Accounts were distributed in a particular order and for particular purposes.  In general, distributions first went to fund the project and then, to repay the debt holders.

51.     As part of the collateral to guarantee the repayment of the bonds issued by Cerro Negro Finance, Ltd., Mobil CN pledged its rights in the cash waterfall as a security interest.

52.     PDVSA CN provided assurances to the bondholders in a different way; it issued irrevocable instructions to the Bank of New York, as security trustee, restricting the use of the funds to the terms of the Common Security Agreement.

53.     After the bondholders are paid off, however, the restrictions placed on the cash waterfall, including the irrevocable instructions, will be released.

54.     Consequently, PDVSA CN and Mobil CN will have unrestricted access to their respective portions of the cash waterfall.

55.     PDVSA has made an Offer to Purchase all of the outstanding bonds of Cerro Negro Finance, Ltd. on or before December 31, 2007.

56.     Once PDVSA purchases the outstanding bonds, the amounts remaining in the cash waterfall will be free of any restraints.  PDVSA CN's share of the cash waterfall (currently approximately $300,000,000) is likely PDVSA CN's sole asset available to satisfy any eventual arbitral award.

57.     Upon PDVSA's purchase of the outstanding bonds, the irrevocable instructions will terminate and PDVSA CN will be free to transfer its share of the cash waterfall from New York and to dissipate the funds or to take other action to make the funds inaccessible for satisfying any arbitral award.

- 11 -

58.    The purpose of this action is to attach PDVSA CN's interest in the cash waterfall, to secure, at least partially, payment of the award that Mobil CN is likely to obtain in the ICC arbitration.

59.    Under the terms of the Offer to Purchase, consummation of the offer requires the valid tender of the bonds from bondholders representing seventy five percent (75%) of the aggregate principal amount of all outstanding bonds and receipt of the bondholders' consent to eliminate the security interest in the cash waterfall and to terminate the irrevocable instructions. Over ninety percent (90%) of the bondholders have tendered their bonds pursuant to the terms of the Offer to Purchase.

60.    On or around December 28, 2007, Venezuela or PDVSA will transfer to the Chase Manhattan Bank monies required to finance the purchase of any outstanding bonds of Cerro Negro Finance, Ltd. that are tendered in accordance with the terms of the Offer to Purchase.

61.    The total amount of funds required to purchase all of the outstanding bonds pursuant to the offer is estimated to be $538,000,000.

62.    On or after December 28, 2007, but before or by December 31, 2007, PDVSA will purchase any outstanding bonds of Cerro Negro Finance, Ltd. that are tendered in accordance with the terms of the Offer to Purchase.

63.    According to the Offer to Purchase, PDVSA CN's only assets are those relating to the Cerro Negro Project. After PDVSA purchases the bonds, the assets currently utilized in the operation of the Cerro Negro Project and the rights to develop the related oil reserves are being transferred to a new "Empresa Mixta" or mixed company, with which Mobil CN has no privity. The new Empresa Mixta will be owned 83% by CVP and 16 % by British Petroleum plc, through

- 12 -

Veba. Consequently, following the closing of PDVSA's Offer to Purchase the outstanding

bonds, the cash waterfall will be PDVSA CN's sole asset

64.    Once PDVSA purchases the bonds, the cash waterfall, which had been securing

repayment of the bonds, will be released and PDVSA CN's share of the cash waterfall will most

likely be transferred outside the reach of Mobil CN between December 28 and December 31,

2007.

## COUNT I
## FOR ORDER OF ATTACHMENT
### PURSUANT TO N.Y. C.P.L.R. § 7502(c) AND N.Y. C.P.L.R. ART. 62

65.    Mobil CN realleges and incorporates Paragraphs 1-64 of the Complaint as if set

forth fully herein.

66.    Mobil CN will commence the ICC arbitration within 30 days of the granting of

the Order of Attachment, unless this deadline is extended by the Court.

67.    Mobil CN has a cause of action against PDVSA CN in the form of the claims to

be asserted in the ICC arbitration and those claims are ones in which Mobil CN is entitled to a

money judgment entered on a final arbitral award.

68.    It is probable that Mobil CN will succeed on the merits of its arbitration claims

because PDVSA CN's breach of the agreements is clear.

69.    Without an order of attachment, the arbitral award will be rendered ineffectual in

that, among other reasons, (1) the cash waterfall is the only viable source of funds to satisfy an

award in the ICC arbitration; (2) PDVSA CN's financial condition makes recovery unlikely

because PDVSA CN's interests in the Cerro Negro project are being transferred to the new

mixed company; (3) PDVSA CN's share of the cash waterfall easily can be — and most likely

- 13 -

will be — transferred out of the reach of creditors; and (4) Mobil CN will have difficulty enforcing the award outside of this jurisdiction against PDVSA CN.

70.    The amount demanded from PDVSA CN exceeds all counterclaims known to Mobil CN.

- 14 -

## PRAYER FOR RELIEF

WHEREFORE, the Court should enter judgment in Mobil CN's favor and against

Defendant:

        a.    Issuing an Order of Attachment to levy within this Court's jurisdiction, at

any time before the final arbitral award, upon such property in which the PDVSA CN has an

interest and upon such debts owing to PDVSA CN as will satisfy the amount specified in the

Order of Attachment;

        b.    Ordering Defendants to pay Mobil CN's attorneys fees and costs

associated with this action; and

        c.    Awarding all such other relief as may be just under the circumstances.

Dated:  New York, New York
        December 27, 2007

Respectfully submitted,

_____
Michael C. Miller (MM-4632)
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
tel: (212) 506-3900
fax: (212) 506-3950

Howard H. Stahl (*pro hac vice* application pending)
Steven K. Davidson (*pro hac vice* application pending)
Mark A. Moran (*pro hac vice* application pending)
Michael J. Baratz (*pro hac vice* application pending)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
tel: (202) 429-3000
fax: (202) 429-3902

*Counsel for Plaintiff*

- 15 -

Of Counsel:

Toni D. Hennike
Luis Marulanda del Valle
Law Department
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas 77002
713-656-6716 (telephone)
713-656-3496 (telefax)

Charles A. Beach (CB-6791)
Law Department
EXXON MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas 75039-2298
972-444-1466 (telephone)
972-444-1435 (telefax)

# EXHIBIT C-4

[Seal Bolivarian Republic of Venezuela
Supreme Court of Justice]

# Bolivarian Republic of Venezuela
## Eighth Court of Original Jurisdiction in Civil, Commercial and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas
Caracas, Eighteenth (18th) of February, 2008
Years 197 and 148

As this Letter Rogatory issued by the United States District Court for the Southern District of New York has been received and reviewed, after having been legally processed and delivered to this Court after the corresponding distribution, consider it entered, make a notation of it in the respective books, and to the extent that it is considered that it is not contrary to the public order, proper customs, or any express provision of the Law, it is accepted to the extent allowed by law. As a consequence, the Court orders the listing of the number of the summons and of the copy of the complaint which accompany the letter rogatory, which run from page 64 to 95 of this file, and delivers the letter rogatory to the Bailiff of this Court for purposes of carrying out the assigned task. Correct the page numbers and list the items indicated.

**Chief Judge,**

**[signature]**

**Dr. Carlos Spartalian Duarte**

**Court Clerk**

**[signature]**

**Attorney Lisbeth Rodriguez Gonzalez**

The order was executed on this same date.

**Court Clerk**

**[signature]**

**Attorney Lisbeth Rodriguez Gonzalez**

CSD/jlrg/maira.-

File: R-08-0090

*[64 sixty-four]*

**ENTERED IN THE DAILY RECORD 171**

**DATE: FEB. 18, 2008**



# República Bolivariana de Venezuela
## Juzgado Octavo de Primera Instancia en lo Civil, Mercantil y del Tránsito de la Circunscripción Judicial del Área Metropolitana de Caracas.

Caracas, dieciocho (18) de Febrero de 2008
Años 197 y 148

Por recibida y vista la presente Rogatoria, emanada del Tribunal de Primera Instancia de Estados Unidos para el Distrito Sur de Nueva York, luego de habérsele dado curso legal y remitido a este Tribunal previa la distribución correspondiente, désele entrada, anótese en los libros respectivos, y por cuanto considera que la misma no es contraria al orden público, a las buenas costumbres o alguna disposición expresa de la Ley, la Admite cuanto lugar en derecho. En consecuencia, ordena el desglose de la cedula de emplazamiento y de la copia de la demanda que acompañan la rogatoria, los cuales cursan a partir del folio 64 al 95 del presente expediente, y entrega de los mismos al Alguacil de este Tribunal a los fines de cumplir con la misión encomendada. Corríjase la foliatura y desglòsese lo indicado.-

**El Juez Titular,**

**Dr. Carlos Spartalian Duarte**

**La Secretaria**

**Abg. Lisbeth Rodríguez González**

En esta misma fecha se dio cumplimiento a lo ordenado

**La Secretaria**

**Abg. Lisbeth Rodríguez González**

CSD/Jlrg/maira.-
Exp: R-08-0090

DIARIZADO
FECHA: 18 FEB 2008

The Undersigned, **Atty. Lisbeth Rodriguez Gonzalez**, Clerk of the Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas, states that Official Letter No. 08-*0237* was issued. Caracas, twentieth (20th) of February, 2008.

197th and 148th years.

**Clerk of the Court,**

[signature]

**Atty. Lisbeth Rodriguez Gonzalez**

GYH/maira

File 08-0090

[stamp: Bolivian Republic of Venezuela
Eighth Court of Original Jurisdiction in Civil,
Commercial and Traffic Matters of the Judicial District
of the Metropolitan Area of Caracas ]

[*65 sixty-five*]                                    ENTERED IN THE DAILY RECORD 117

                                                     DATE: FEB. 20, 2008

Quien Suscribe, **Abog. Lisbeth Rodríguez Gonzalez**, Secretaria Acc del

Juzgado Octavo de Primera Instancia en lo Civil, Mercantil y del Transito de

la Circunscripción Judicial del Área Metropolitana de Caracas, hace constar

que se libró oficio No. 08-_0237_. Caracas, veinte (20) de Febrero de 2008.

Años 197° y 148°.

**La Secretaria Acc.**


**Abog. Lisbeth Rodríguez Gonzalez**
GYH/maira
Exp 08-0090



[blank page]

[stamp: BOLIVARIAN REPUBLIC OF VENEZUELA

EIGHTH COURT OF ORIGINAL JURISDICTION IN CIVIL, COMMERCIAL AND TRAFFIC MATTERS OF THE JUDICIAL DISTRICT OF THE METROPOLITAN AREA OF CARACAS]



# EXHIBIT C-5

[Seal Bolivarian Republic of Venezuela
Supreme Court of Justice]

# Bolivarian Republic of Venezuela
## Eighth Court of Original Jurisdiction in Civil, Commercial and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas

Caracas, Twentieth (20th) of February, Two Thousand and Eight (2008)
197th and 148th Years

**Official Letter No. 08-** _0237._-
**Mr./Ms.:**
**PDVSA Cerro Negro Joint Stock Company**
_Delivered at his office._

Dear Sir:

This letter is to greet you and to send you the Letter Rogatory attached hereto, issued by the United States District Court for the Southern District of New York, which is in case file No. R-08-0090 (nomenclature of this Court).

This delivery is made to you for all legal purposes.

**God and Federation**

**Chief Judge,**

[signature]

**Dr. Carlos Spartalian Duarte**

[stamp: Bolivarian Republic of Venezuela
Eighth Court of Original Jurisdiction in Civil, Commercial
and Traffic Matters of the Judicial District
of the Metropolitan Area of Caracas]

CSD/maira.-
Case File 08-0090

[_66 sixty-six_]

ENTERED IN THE DAILY RECORD 117

DATE: FEB. 20, 2008



# República Bolivariana de Venezuela
## Juzgado Octavo de Primera Instancia en lo Civil, Mercantil y del Tránsito de la Circunscripción Judicial del Área Metropolitana de Caracas.

Caracas, veinte (20) de Febrero del Dos Mil Ocho (2.008)
Años: 197° y 148°

**Oficio N° 08-** _0137_.-
**Ciudadano (a):**
**PDVSA Cerro Negro S.A.**
_Su despacho._

Me dirijo a usted, a los fines de saludarle y remitirle anexo al presente oficio rogatoria emanada del Tribunal de Primera Instancia de Estado Unidos para el Distrito Sur de Nueva York , la cual cursa en el expediente No. R- 08-0090 (nomenclatura de este Tribunal).

Remisión que se le hace a usted, los fines legales consiguientes.

**Dios y Federación**
**El Juez Titular,**

**Dr. Carlos Spartalian Duarte**
Juez Octavo de Primera Instancia en lo Civil, Mercantil
y del Tránsito de la Circunscripción Judicial
del Área Metropolitana de Caracas.

CSD/maira.
Exp. 08-0090

[blank page]

[stamp: BOLIVARIAN REPUBLIC OF VENEZUELA

EIGHTH COURT OF ORIGINAL JURISDICTION IN CIVIL, COMMERCIAL AND TRAFFIC MATERS OF THE JUDICIAL DISTRICT OF THE METROPOLITAN AREA OF CARACAS]



# EXHIBIT C-6

During office hours on (FEB 28 2008) Mr. **Dimar Rivero** appears before this Court in his capacity as Chief Bailiff of the Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas and states: the related document which is stated to be one (1) usable page is delivered by this act, a copy of Official Letter No. 08-0237, which was duly delivered on 02/25/08, at 2:29 p.m., as evidenced by the wet seal stamped on the letter. I make this deposit for legal purposes. It is complete. I conclude, this was read and being in compliance, they sign:

BAILIFF

[signature]

DIMAR RIVERO

COURT CLERK

[signature]
[stamp: Bolivarian Republic of Venezuela
Eighth Court of Original Jurisdiction in Civil, Commercial
and Traffic Matters of the Judicial District
of the Metropolitan Area of Caracas]

ATTY. LISBETH RODRIGUEZ

Case File: R-08-0090

*[(67) sixty-seven]*

ENTERED IN THE DAILY RECORD: illegible

DATE: 26 FEB 2008]

En horas de Despacho del día ( 2 6 FEB 2008        ),  comparece  por ante  este  Tribunal  el  ciudadano  **Dimar Rivero**,  en  su  carácter  de Alguacil  Titular  del  Juzgado  Octavo  de  Primera  Instancia  Civil, Mercantil  y  del  Transito  de  la  Circunscripción  Judicial  del  Area Metropolitana  de  Caracas  y  expone:  Consigno  en  este  acto  al expediente  con  el  cual  se  relaciona  constante  de  un  (01)  folio  útil, copia  del  oficio  N°  08-0237,  el  cual  fue  debidamente  entregado  en fecha  25/02/08,   siendo  las  2:29  p.m.,  según  se  evidencia  de  sello húmedo  estampado  en  el  mismo.  Consignación  que  hago  a  los  fines legales  consiguientes.   Es  todo.  Termino,  se  leyó  y  conformes  firman: EL  ALGUACIL,

DIMAR RIVERO

LA SECRETARIA ACC

ABG. LISBETH RODRIGUEZ

Exp: R-08-0090



DIARIZ_____   71

FECHA: ___ 2 6 FEB 2008

[Seal Bolivarian Republic of Venezuela
Supreme Court of Justice]

# Bolivarian Republic of Venezuela
## Eighth Court of Original Jurisdiction in Civil, Commercial and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas

Caracas, Twentieth (20th) of February, Two Thousand and Eight (2008)
197th and 148th Years

**Official Letter No. 08-** *0237*.-
**Mr./Ms.:**
**PDVSA Cerro Negro Joint Stock Company**
*Delivered at his office.*

Dear Sir:

This letter is to greet you and to send you the Letter Rogatory attached hereto, issued by the United States District Court for the Southern District of New York, which is in case file No. R-08-0090 (nomenclature of this Court).

This delivery is made to you for all legal purposes.

**God and Federation**

**Chief Judge,**

[stamp: Bolivarian Republic of Venezuela
Eighth Court of Original Jurisdiction in Civil, Commercial
and Traffic Matters of the Judicial District
of the Metropolitan Area of Caracas ]

[signature]

**Dr. Carlos Spartalian Duarte**

Eighth Court of Original Jurisdiction in Civil, Commercial
and Traffic Matters of the Judicial District
of the Metropolitan Area of Caracas

CSD/maira.-
Case File 08-0090

[illegible stamp]

*Jesus Perez*
*Calle Cali, Bldg.*
*PAWA, PDVSA, Los*
*Mercedes*

[68] sixty-eight]

# República Bolivariana de Venezuela

## Juzgado Octavo de Primera Instancia en lo Civil, Mercantil y del Tránsito de la Circunscripción Judicial del Área Metropolitana de Caracas.

Caracas, veinte (20) de Febrero del Dos Mil Ocho (2.008)
Años: 197° y 148°

Oficio N° 08-_0237_.-
Ciudadano (a):
**PDVSA Cerro Negro S.A.**
_Su despacho._

Me dirijo a usted, a los fines de saludarle y remitirle anexo al presente oficio rogatoria emanada del Tribunal de Primera Instancia de Estado Unidos para el Distrito Sur de Nueva York , la cual cursa en el expediente No. R- 08-0090 (nomenclatura de este Tribunal).

Remisión que se le hace a usted, los fines legales consiguientes.



**Dios y Federación**
**El Juez Titular,**

**Dr. Carlos Spartalian Duarte**
Juez Octavo de Primera Instancia en lo Civil, Mercantil
y del Tránsito de la Circunscripción Judicial
del Área Metropolitana de Caracas.

CSD/maira.
Exp. 08-0090

Calle Cali, Edf.
PAWA, PDVSA, Los
Mercedes.

[blank page]

[stamp: BOLIVARIAN REPUBLIC OF VENEZUELA

EIGHTH COURT OF ORIGINAL JURISDICTION IN CIVIL, COMMERCIAL AND TRAFFIC MATTERS OF THE JUDICIAL DISTRICT OF THE METROPOLITAN AREA OF CARACAS]



# EXHIBIT C-7

[Seal: Illegible]

# Bolivarian Republic of Venezuela
## Eighth Court of Original Jurisdiction in Civil, Commercial and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas
Caracas, Twenty-Eighth (28th) of February, Two Thousand and Eight (2008)
197th and 148th Years

In view of the document signed and dated on the twenty-sixth (26th) of February of two thousand and eight (2008), signed by Mr. **Dimar A. Rivero P.,** Bailiff of this Court, and executed as in this letter rogatory, this Court orders the return of the originals of these records, by an official letter to the Ministry of Popular Authority of Internal Relations and Justice. **Comply.**

**Chief Judge,**

[signature]

[stamp: Bolivarian Republic of Venezuela
Eighth Court of Original Jurisdiction in Civil,
Commercial and Traffic Matters of the Judicial District
of the Metropolitan Area of Caracas ]

**Dr. Carlos Spartalian Duarte**

**Court Clerk**

[signature]

**Attorney Lisbeth Rodriguez Gonzalez**

**The order in the above decision was executed on this same date.**

**Court Clerk**

[signature]

**Attorney Lisbeth Rodriguez Gonzalez**

CSD/LRG/Jose.-

Case File R-08-0090.-

*[sixty-nine -69-]*

**ENTERED IN THE DAILY RECORD No. 102**

**DATE: FEB. 28, 2008**



## República Bolivariana de Venezuela

Juzgado Octavo de Primera Instancia en lo Civil, Mercantil y
del Tránsito de la Circunscripción Judicial
del Área Metropolitana de Caracas

Caracas, veintiocho (28) de febrero de dos mil ocho (2008)
**Años: 197° y 149°**

Vista la diligencia suscrita en fecha veintiséis (26) de febrero de dos mil ocho (2008), suscrita por el ciudadano **Dimar A. Rivero P.,** Alguacil de este Juzgado, y cumplida como se encuentra la presente rogatoria, este Tribunal, ordena la devolución de las presentes actuaciones en original, mediante oficio al Ministerio del Poder Popular de Relaciones Interiores y Justicia.- **Cúmplase.-**

**El Juez Titular,**

**Dr. Carlos Spartalian Duarte.**

**La Secretaria Acc.,**

**Abg. Lisbeth Rodríguez González**

En esta misma fecha se dio fiel cumplimiento a lo ordenado en el auto que antecede.-

**La Secretaria Acc.,**

**Abg. Lisbeth Rodríguez González**

CSD/LRG/Jose.-
Exp: N° R-08-0090.-

[blank page]

[stamp: BOLIVARIAN REPUBLIC OF VENEZUELA

EIGHTH COURT OF ORIGINAL JURISDICTION IN CIVIL, COMMERCIAL AND TRAFFIC MATTERS OF THE JUDICIAL DISTRICT OF THE METROPOLITAN AREA OF CARACAS]



# EXHIBIT C-8

[Seal: Illegible]

# Bolivarian Republic of Venezuela
## Eighth Court of Original Jurisdiction in Civil, Commercial and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas

Caracas, Twenty-Eighth (28th) of February, Two Thousand and Eight (2008)
**197th and 149th Years**

Official Letter No. 08-*0293*
**Sir:**
**Minister of the Ministry of Popular Authority of Interior Relations and Justice.-**
*Delivered at his office.-*

I respectfully send you for purposes of your information, and as this Letter Rogatory issued by you has been performed, this Court enforcing the Letter Rogatory, I am returning the original with your results consisting of one Document of seventy (70) useful pages.

This is delivered to you for all legal purposes.

**God and Federation**

**Chief Judge,**

[stamp: Bolivarian Republic of Venezuela
Eighth Court of Original Jurisdiction in Civil, Commercial
and Traffic Matters of the Judicial District
of the Metropolitan Area of Caracas ]

[signature]

**Dr. Carlos Spartalian Duarte**

Eighth Court of Original Jurisdiction in Civil, Commercial
and Traffic Matters of the Judicial District
of the Metropolitan Area of Caracas

CSD/Jose.-                          **ENTERED IN THE DAILY RECORD No. 108**

**Case File R-08-0090.-**              **DATE: [illegible]**

*[Seventy – 70 -]*



# República Bolivariana de Venezuela

Juzgado Octavo de Primera Instancia en lo Civil, Mercantil y
del Tránsito de la Circunscripción Judicial
del Área Metropolitana de Caracas

Caracas, veintiocho (28) de febrero de dos mil ocho (2008)
**Años: 197° y 149°**

Oficio N° 08- _0293_
**Ciudadano:**
**Ministro del Ministerio del Poder Popular de Relaciones Interiores y Justicia.-**
_Su Despacho.-_

    Me es grato Dirijo a Usted, a los fines de hacer de su conocimiento, y cumplida como ha sido la presente Rogatoria emanada por Usted, este Tribunal dando cumplimento a la misma la devuelve en original con sus resultas, constante de una Pieza de setenta (70) folios útiles.-

    Remisión que se hace a usted, a los fines legales consiguientes.-

Dios y Federación
El Juez Titular,

**Dr. Carlos Spartalian Duarte**
Juez Octavo de Primera Instancia en lo Civil, Mercantil y
del Tránsito de la Circunscripción Judicial
del Área Metropolitana de Caracas

CSD/Jose.-
Exp: R-08-0090.-

[blank page]

[stamp: BOLIVARIAN REPUBLIC OF VENEZUELA

EIGHTH COURT OF ORIGINAL JURISDICTION IN CIVIL, COMMERCIAL AND TRAFFIC MATTERS OF THE JUDICIAL DISTRICT OF THE METROPOLITAN AREA OF CARACAS]



# EXHIBIT C-9



**UNIVERSE**
TECHNICAL TRANSLATION

9225 Katy Freeway, Suite 400
Houston, Texas 77024 U.S.A.

Tel: 713.827.8800
Fax: 713.464.5511

Email: universe@pdq.net
www.universetranslation.com

<u>CERTIFICATION AND NOTARIZATION</u>

THE UNDERSIGNED, having been duly sworn, hereby states and deposes that to the best of our knowledge, the translation of the following documents from Spanish into English are true and valid translations of the originals, on this 17th day of April, 2008.

Documents regarding:
Mobil Cerro Negro LTD. (Plaintiff) and PDSA Cerro Negro, Joint Stock Company (Defendant)
- File No. 08-0090 of the Judicial Authority of the Bolivarian Republic of Venezuela
- Document 0091, dated Jan. 29, 2008 to the Sixth Judge of the Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters in the Metropolitan Area of Caracas
- Proof of receipt by the Eighth Court of Original Jurisdiction in Civil, Commercial and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas
- Proof of receipt by the Eighth Court of Original Jurisdiction in Civil, Commercial and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas of the Letter Rogatory issued by the United States District Court for the Southern District of New York
- Declaration of issuance of Official Letter No. 08-0237 by Atty. Lisbeth Rodriguez Gonzalez, Clerk of the Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas
- [stamp: Bolivarian Republic of Venezuela, Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas]
- Official Letter No. 08- 0237, dated February 20, 2008, to PDVSA Cerro Negro Joint Stock Company enclosing the Letter Rogatory, issued by the United States District Court for the Southern District of New York
- [stamp: Bolivarian Republic of Venezuela, Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas]
- Proof of receipt by Mr. Dimar Rivero, Chief Bailiff of the Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas, of a copy of Official Letter No. 08-0237.
- Official Letter No. 08- 0237, dated February 20, 2008, to PDVSA Cerro Negro Joint Stock Company enclosing the Letter Rogatory, issued by the United States District Court for the Southern District of New York, with the notation Jesus Perez, Calle Cali, Bldg. PAWA, PDVSA, Los Mercedes
- [stamp: Bolivarian Republic of Venezuela, Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas]
- Order for the return of original records, by the Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas, dated February 28, 2008

- [stamp: Bolivarian Republic of Venezuela, Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas]
- Letter from the Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas to the Minister of the Ministry of Popular Authority of Interior Relations and Justice, regarding the return of original documents.
- [stamp: Bolivarian Republic of Venezuela, Eighth Court of Original Jurisdiction in Civil, Commercial, and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas]

Judy Moore

State of Texas
County of Harris

THE UNDERSIGNED NOTARY PUBLIC in and for the State of Texas hereby attests that the above Judy Moore did personally appear before her on the 17th day of April, 2008 and, having been duly sworn, did execute this document, in witness thereof I hereby affix my signature.

Marion Rifkind



M. RIFKIND
Notary Public, State of Texas
My Commission Expires
JAN. 7, 2009